Todd M. Schneider, SBN 158253
Joshua Konecky, SBN 182897
SCHNEIDER WALLACE
COTTRELL KONECKY WOTKYNS LLP
180 Montgomery Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 421-7100
Facsimile: (415) 421-7105

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD HOSE, on his own behalf, and on behalf of all others similarly situated,<br><br>       Plaintiffs,<br><br>    vs.<br><br>WIS HOLDINGS CORP., a Delaware corporation<br><br>and<br><br>WASHINGTON INVENTORY SERVICE, INC., d/b/a WIS INTERNATIONAL, a California corporation,<br><br>      Defendants. | Case No. **'14 CV 2869 WQH WVG**<br><br>**COLLECTIVE ACTION**<br><br>**COMPLAINT FOR VIOLATIONS OF THE FAIR LABOR STANDARDS ACT (FLSA), 29 U.S.C. §201, *et seq*.**<br><br>**JURY TRIAL DEMANDED** |

    Plaintiff Richard Hose, by and through his undersigned attorneys, hereby brings this Collective Action Complaint on behalf of all others similarly situated, against Defendants WIS Holdings Corp, and Washington Inventory Service, Inc., doing business as WIS International (collectively "Defendants" or "WIS"), and alleges as follows:

## I.    NATURE OF THE CASE

1.    This is a collective action under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), arising out of the failure of WIS to compensate its hourly, non-exempt inventory Auditors for work WIS suffers and permits them to perform for its own benefit as their employer.

2.    WIS employs Plaintiff and thousands of other similarly situated employees in the United States as auditors, inventory associates, and/or other functionally equivalent hourly positions (collectively "Auditors" and/or "the Collective"). These positions are not exempt from the overtime or minimum wage provisions of the FLSA. Nonetheless, as a matter of policy and practice, WIS fails to fully record and compensate the Auditors for all their hours worked. This uncompensated, off-the-clock work is integral and indispensable to the principal activities of the job. WIS's policy and practice has deprived the Collective of substantial amounts of wages which they have earned and to which they are entitled.

3.    By failing to maintain accurate records of all hours worked, failing to pay overtime wages, and even failing to pay minimum wage, WIS has operated and continues to operate in violation of the FLSA.

4.    Plaintiff, on behalf of himself and all others similarly situated, seeks compensation and credit for all unrecorded and uncompensated work time, including overtime, liquidated damages and/or all other relief permitted by law. Plaintiff requests reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## II.    JURISDICTION AND VENUE

5.    The FLSA authorizes private rights of action to recover damages for violation of the FLSA's wage and hour provisions. 29 U.S.C. § 216(b).

6.    This Court has federal question jurisdiction in this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the FLSA. The Court also has jurisdiction under 28 U.S.C. § 1332(a)(1), because the amount in controversy in this action exceeds $75,000, exclusive of interests and costs, and because the parties are residents of different states.

7.    Venue is proper under 28 U.S.C. §1391(b) and (c), because Defendant has its headquarters and principal place of business in this Judicial District.

### III.    PARTIES

8.    Plaintiff, Richard Hose, is a resident of Sherman, Texas in Grayson County. Plaintiff worked as an Auditor in the Dallas, Texas region and elsewhere between approximately March 2013 and November 2013.

9.    WIS employed Mr. Hose as an Auditor and Mr. Hose held this same job position since he began working for WIS in March 2013. WIS terminated Mr. Hose's employment in November 2013.

10.    The Collective Action members are persons who worked as Auditors for WIS in the United States at any time beginning three years before the filing of this Complaint.

11.    WIS Holdings Corp is a Delaware corporation with its principal place of business in San Diego, California. WIS Holdings Corp does business in the State of California and nationwide. WIS Holdings Corp's United States headquarters is located at 9265 Sky Park Court, Suite 1000, San Diego, CA 92123, which is within the jurisdiction of this Court.

12.    Washington Inventory Service is a California corporation with its principal place of business in San Diego, California. Washington Inventory Service, doing business as WIS International, does business in the State of California and nationwide. Washington Inventory Service's United States headquarters is located at 9265 Sky Park Court, Suite 1000, San Diego, CA 92123, which is within the jurisdiction of this Court.

13.    WIS Holdings Corp and WIS Inventory Service (collectively "WIS") at all relevant times have been engaged in the business of inventory counting services in the United States.

14.    Throughout this Complaint, any reference to "Defendants," "Defendant," or "WIS" is intended to refer to all Defendants jointly.

COLLECTIVE ACTION COMPLAINT
*Richard Hose v. WIS International, Inc.*

2

## IV.    FACTUAL ALLEGATIONS

15.    WIS is an international corporation that provides inventory/data collection and merchandising services to large retail stores across the United States.  WIS is the second-largest inventory services company worldwide, and has more than 200 offices worldwide.

16.    WIS was created in April of 2005 from the merging of two inventory businesses: (1) Western Inventory Service (founded in 1967, and Canada's largest inventory service in 2005), and (2) Washington Inventory Service (founded in 1953).

17.    WIS contracts with retail stores to count the stores' inventory.  WIS currently employs thousands of Auditors in the United States.

18.    All Auditors share a common job description.  The principal job duty of Auditors is to travel to retail stores and physically count the stores' inventories.

19.    WIS pays Auditors by the hour and classifies them as "non-exempt" employees who are entitled to minimum wage and overtime compensation when they work overtime as defined by the FLSA.

20.    Auditors ordinarily work at a different retail store every day of work, often far away from their homes.

21.    WIS directs and encourages Auditors to gather at predetermined meeting sites and travel together as teams with their supervisors to the job sites in a WIS-provided vehicle.  The group transportation is designed to benefit WIS by helping to ensure that its workforce arrives together in advance of the inventories and readies itself as a team to begin the inventories in a more efficient fashion than if the Auditors arrived individually.

22.    As a result, Auditors must regularly arise early in the morning to drive from their home to the meeting site in time to travel with the team of fellow Auditors and a supervisor on what is often a 2 or more hour journey to the job site.  They leave their personal vehicles at the meeting site while the team of Auditors and an audit supervisor travel to the job site in WIS-provided vehicles.

23.    WIS's policy states that it will compensate Auditors at minimum wage for time spent traveling in the WIS-provided vehicle, but only after the first hour of travel time. WIS's policy states that it will not compensate them at all for the first hour of travel time. In addition, WIS does not keep accurate records of the time employees spend traveling to and from the job sites.

24.    After arriving at the inventory sites, Auditors are required to attend regular pre-shift meetings called "crew briefings" before the start of the inventories. WIS's policy is that the Auditor's compensable time begins at the start of these crew briefings. On the relatively few occasions where there is no crew briefing, the Auditor's compensable time begins when the team begins counting the inventory.

25.    WIS requires Auditors to arrive at the job site at least fifteen minutes before the crew briefing to unload and set up their equipment. In fact, because Auditors travel together in a WIS-provided vehicle, they often arrive as a group well in advance of the fifteen minute deadline— sometimes as much as an hour or more in advance of the crew briefings. The geographic and logistical constraints prevent Auditors from using the time they spend waiting for their own benefit. Nonetheless, WIS does not pay Auditors for the time they are waiting at the site for the crew briefings and inventory counts to begin. Nor does WIS keep accurate records of the time Auditors spend waiting after arriving at the site and before actually being clocked-in or credited for their work time.

26.    During the uncompensated wait-time at the beginning of the shift, WIS also requires its Auditors to engage in an array of productive, work-related tasks. These tasks include: unloading equipment (including, but not limited to, computers, printers, and ladders) from the WIS-provided vehicle; receiving and preparing their electronic scanners used for counting the inventory; setting up the equipment inside the store; and booting up the computer operating systems. WIS does not pay its Auditors for this work.

27.    WIS's policy is to pay "crew briefing" time at minimum wage and to pay counting time at a higher hourly rate. However, WIS does not contemporaneously or individually record the

amount of time the Auditors spend in the crew briefings, or the time that the crew briefings and the inventory counting begins. Instead, WIS predetermines the time that the Auditors will be credited for the crew briefings and uniformly applies that time to the Auditors as a group regardless of the amount of time actually spent in the crew briefings. In fact, Auditors actually begin their counting work before the predetermined crew briefing time ends. As a result, WIS compensates Auditors at a rate lower than their regular rate while they perform their regular inventory counting duties.

28. WIS's policy and practice is for the Auditors to be off-the-clock after completing the inventory counts. However, this does not account for the time Auditors must spend shutting down and repacking their work gear and equipment, and returning them to designated stock rooms or the company-provided vehicles—a process that routinely takes 10-20 minutes or more. All this time is off-the-clock and uncompensated as well.

29. Auditors also must wait additional time off-the-clock for their supervisors to conduct "wrap-up" tasks and meetings. These "wrap-up" tasks include: verifying the work performed by the Auditors during the day; completing paperwork; inputting the Auditors' work time for payroll purposes; printing voluminous reports showing the details of the inventories; submitting these voluminous reports to WIS's corporate headquarters and management personnel at the client retail store; and meeting with the retail store managers regarding discrepancies between the day's count and the stores' inventory estimates. Auditors, most of whom are beholden to company transportation, must wait for their supervisors to complete this wrap up process, including the meetings with the retail store managers, before they can leave. During this waiting time, the Auditors also are subject to being called back by their supervisors for assistance. In fact, Auditors frequently perform additional scanning and counting while off-the-clock as a result of information gained during the "wrap-up" process and meetings with the retail managers. Also during this time, WIS requires Auditors to remove inventory tags previously attached to store shelves during the physical inventory counts. The wrap-up meetings and tasks often result in 1-2 hours of off-the-clock time for the Auditors.

COLLECTIVE ACTION COMPLAINT
*Richard Hose v. WIS International, Inc.*

30. WIS often does not provide a physical time clock at the job sites or in the company-provided vehicles. WIS relies on its audit supervisors to keep track of the Auditors' hours worked at job sites where no physical time clock is present, and during travel time. The audit supervisors do not have a process for tracking the Auditors' time individually or accurately, but instead record the compensable time as estimates for the group as a whole. Moreover, WIS rewards audit supervisors for faster overall inventory counts, and disciplines them for slower overall inventory counts. As a result of this policy, audit supervisors regularly underreport the working hours of Auditors.

31. For some inventories, WIS provides a timekeeping mechanism that allows Auditors to clock themselves in and out, although not until after performing the pre-shift work described above, and before performing the post-shift work described above. Even then, WIS often locates the time clock such a long distance from the entrance of the large retail stores (where the Auditors are performing their pre-shift activities and otherwise waiting for the opportunity to clock-in) that the Auditors must walk for several more minutes after their pre-shift set-up and waiting time just to clock in. This is the case even if the crew briefing and inventory counting takes place closer to the entrance. At the end of the day, the Auditors must again spend additional time off-the-clock walking from the time-clocks at the back of the stores to the exit, in addition to the other time spent packing up their equipment as described above. Also, because of the large number of Auditors at the work site, the first Auditors who clock out must often wait significant time off-the-clock for the remaining Auditors to clock out, before they can all leave the work site together in the company-provided vehicles. WIS does not compensate its Auditors for this additional walking and waiting time at the start or end of the shift.

32. Between the compelled travel time in WIS-provided vehicles, the pre-inventory preparation time, the post-inventory clean-up time, the time spent waiting for the audit supervisor to conduct their wrap-up activities, and the additional inventory tasks that often occur after the wrap-up, the Auditors routinely work a significant number of hours off-the-clock each week.

33.    Because the Auditors regularly worked over forty hours per week, their uncompensated time qualifies as overtime compensation under the FLSA.

34.    Because the Auditors regularly worked many hours per week without compensation, their hourly rates often fell below the minimum wage rate mandated by the FLSA.

35.    WIS knew and/or acted with reckless disregard that its timekeeping policies and procedures caused its Auditors to not be compensated for all hours worked, but nonetheless fails to change its policies and provide its Auditors with the wages to which they are entitled by law.  WIS has been put on notice of the unlawfulness of its policies, and yet it has proceeded with a uniform policy of failing to compensate its Auditors for all hours worked in the face of analogous challenges made in other prior and pending lawsuits.  In fact, WIS has demonstrated a pattern of paying millions of dollars to settle previous litigation on this very issue, rather than bringing its policies and practices into compliance with applicable law.

36.    WIS also mislead the Auditors into believing that they are properly compensated. Throughout all relevant times, WIS has assured the Auditors that they are being properly compensated.  WIS also has failed to provide information to the Auditors regarding their rights under the FLSA.

37.    WIS, in the past and currently, fails to compensate its Auditors for all hours worked.

38.    WIS is engaged in commerce.

39.    The Auditors are either (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

40.    The Auditors are employees whose job duties do not meet any of the exemptions set forth in the FLSA.  Therefore, their jobs are, in fact and law, not exempt from the minimum wage and overtime requirements of the FLSA.

41.    WIS directed and/or suffered and permitted Auditors to work in excess of forty (40) hours per week throughout the course of their employment.

COLLECTIVE ACTION COMPLAINT
*Richard Hose v. WIS International, Inc.*

42.     WIS fails to pay the Auditors a minimum wage and overtime pay at a rate of one and one-half times their regular rate for hours worked in excess of forty (40) hours during a workweek.

## V.    COLLECTIVE ALLEGATIONS

43.     Plaintiffs bring all counts herein as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b), on behalf of themselves and a proposed Collective of similarly situated employees defined as:

> "All individuals currently or formerly employed by WIS as an Auditor, inventory associate, or other equivalent hourly position in the United States at any time from three years before the filing of this Complaint through resolution of this action, and: (a) who did not file a timely consent to join form in *Berte v. WIS Holding Corp, et al.*, Case No. 3:07-cv-01932, or (b) who filed a timely consent to join form in *Berte,* but whose claims here nonetheless accrued after the settlement period in that case (*i.e.,* after March 24, 2014)."

44.     Plaintiffs, individually, and on behalf of other similarly situated employees defined above, seek relief on a collective basis challenging WIS's policy and practice of failing to compensate its hourly, non-exempt Auditors for work Defendant suffers and permits them to perform for its own benefit, including overtime and minimum wage compensation.  The number and identity of other similarly situated persons yet to opt-in and consent to be party-plaintiffs may be determined from the records of WIS, and potential opt-ins may be easily and quickly notified of the pendency of this action.

## COUNT I
### VIOLATION OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201, et seq. FAILURE TO PAY MINIMUM WAGES

45.     Plaintiffs, on behalf of themselves and all others similarly situated, reallege as if fully set forth, each and every allegation set forth herein.

46.     At all times relevant to this action, WIS was an "employer" under the FLSA, 29 U.S.C. § 203(d), subject to the provisions of 29 U.S.C. § 201, *et seq.*

47.     At all times relevant to this action, the Auditors were "employees" of WIS within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

48.     The FLSA requires that employers whose employees are engaged in commerce, engaged in the production of goods for commerce, or employed in an enterprise engaged in

COLLECTIVE ACTION COMPLAINT
*Richard Hose v. WIS International, Inc.*

commerce or in the production of goods for commerce pay employees at least the minimum wage for all time worked. 29 U.S.C. § 206(a).

49.    At all times relevant to this action, WIS has been subject to the requirements of the FLSA because it is an enterprise engaged in commerce and its employees are engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 206(a)(1).

50.    At all times relevant to this action, the Auditors have been entitled to the rights, protections, and benefits provided under the FLSA because they are engaged in commerce or employed in an enterprise engaged in commerce, within the meaning of the FLSA, 29 U.S.C. §§ 201, *et seq.*

51.    At all times material herein, the federal minimum wage has been $7.25/hour.

52.    Plaintiff and all similarly situated employees are victims of a uniform and company-wide compensation policy that systematically denies Auditors their statutorily mandated minimum wages. WIS failed to pay the Auditors the minimum wages required by 29 U.S.C. § 206 because WIS required the Auditors to perform work without pay, which caused their regular rate for all hours worked to fall below the minimum wage rate mandated by the FLSA. This uniform policy, in violation of the FLSA, has been applied to all Auditors employed by WIS throughout the United States.

53.    The Collective is entitled to the full statutory minimum wages required by 29 U.S.C. §§ 206 for all periods in which they worked for WIS in the three years preceding the filing of this Complaint, along with all applicable penalties, liquidated damages, and other relief.

54.    Plaintiff and all similarly situated employees are victims of a uniform and company-wide compensation policy that systematically denies Auditors their statutorily mandated minimum wages. This uniform policy, in violation of the FLSA, has been applied to all Auditors employed by WIS throughout the United States.

55.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a). WIS knew or showed reckless disregard for whether its conduct

was prohibited by the FLSA.  Plaintiff and all similarly situated employees are therefore entitled to all damages for the limitations period beginning three years preceding the filing of this Complaint, plus periods of equitable tolling.

56.    The FLSA provides that a private action may be brought by an employee or employees for the payment of federal minimum wages and for an equal amount in liquidated damages in any court of competent jurisdiction.  29 U.S.C. § 216(b).  Moreover, Plaintiffs may recover attorneys' fees and costs incurred in enforcing their rights.  *Id.*

57.    Employers subject to the FLSA must "make, keep, and preserve" accurate records of all hours worked and the wages, hours, and other conditions and practices of employment.  29 U.S.C. § 211(c).  It is unlawful for any person to violate § 211(c).  29 U.S.C. § 215(a)(5).

58.    29 C.F.R. § 516.2 and 29 C.F.R. § 825.500 further require that every employer shall maintain and preserve payroll or other records containing, without limitation, the total hours worked by each employee each workday and total hours worked by each employee each workweek.

59.    WIS has failed to maintain records accurately, as required by the aforementioned statutes and regulations, and failed to furnish the Auditors statements accurately showing the hours they worked during the relevant time period.

60.    Where an employer's records are inaccurate or inadequate, employees need only produce sufficient evidence to show the amount and extent of the work as a matter of just and reasonable inference in order to prove they were improperly compensated.  *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946).  If an employer is unable to rebut the reasonableness of this inference, the court may award damages to the employee, even if the result "be only approximate."  *Id.*

61.    The Collective is entitled to their minimum wages plus an additional equal amount in liquidated damages, costs, and reasonable attorneys' fees.  29 U.S.C. § 216(b).

COLLECTIVE ACTION COMPLAINT
*Richard Hose v. WIS International, Inc.*

## COUNT II
### VIOLATION OF THE FAIR LABOR STANDARDS ACT,
### 29 U.S.C. § 201, et seq. FAILURE TO PAY OVERTIME WAGES

62.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

63.    The FLSA requires that employers whose employees are engaged in commerce, engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce pay employees overtime wages at one and one-half their regular rate for hours worked in excess of forty (40) hours during a workweek.  29 U.S.C. § 207.

64.    WIS violated the FLSA by failing to pay Auditors for all time worked, including overtime pay, because WIS required its Auditors to perform work without being compensated, and Auditors regularly work in excess of forty (40) hours per week.

65.    Plaintiff and all similarly situated employees are victims of a uniform and company-wide compensation policy that systematically denies Auditors their statutorily mandated overtime premium pay.  This uniform policy, in violation of the FLSA, has been applied to all Auditors employed by WIS throughout the United States.

66.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).  WIS knew or showed reckless disregard for whether its conduct was prohibited by the FLSA.  Therefore, Plaintiff and all similarly situated employees are entitled to all damages owed for the limitations period beginning three years preceding the filing of this Complaint, plus periods of equitable tolling.

67.    Plaintiff and other similarly situated employees are entitled to recover an award in the amount of their unpaid overtime compensation.

68.    Plaintiff and other similarly situated employees are entitled to recover an additional award of liquidated damages in an amount equal to the amount of unpaid overtime pay, and/or prejudgment interest at the applicable rate.  29 U.S.C. § 216(b).

69.     Employers subject to the FLSA must "make, keep, and preserve" accurate records of all hours worked and the wages, hours, and other conditions and practices of employment.  29 U.S.C. § 211(c).  It is unlawful for any person to violate § 211(c).  29 U.S.C. § 215(a)(5).

70.     29 C.F.R. § 516.2 and 29 C.F.R. § 825.500 further require that every employer shall maintain and preserve payroll or other records containing, without limitation, the total hours worked by each employee each workday and total hours worked by each employee each workweek.

71.     WIS has failed to maintain records accurately, as required by the aforementioned statutes and regulations, and failed to furnish the Auditors with statements accurately showing the hours they worked during the relevant time period.

72.     Where an employer's records are inaccurate or inadequate, employees need only produce sufficient evidence to show the amount and extent of the work as a matter of just and reasonable inference in order to prove they were improperly compensated.  *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946).  If an employer is unable to rebut the reasonableness of this inference, the court may award damages to the employee, even if the result "be only approximate."  *Id.*

73.     The Auditors are entitled to their unpaid overtime wages plus an additional equal amount in liquidated damages, costs, and reasonable attorneys' fees.  29 U.S.C. § 216(b).

**COUNT III**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT,**
**29 U.S.C. § 201, et seq. FAILURE TO COMPENSATE FOR ALL HOURS WORKED**

74.     Plaintiffs, on behalf of themselves and all others similarly situated, reallege as if fully set forth, each and every allegation set forth herein.

75.     The FLSA requires that employers whose employees are engaged in commerce, engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce pay employees overtime wages at one and one-half their regular rate for hours worked in excess of forty (40) hours during a workweek.  29 U.S.C. § 207.

76.    The FLSA further requires that employers compensate employees for all straight time compensation at the employees' regular rate of pay for non-overtime hours worked, in addition to paying employees overtime wages at one and one-half their regular rate for hours worked in excess of forty (40) hours during the workweek.

77.    WIS requires that Plaintiffs regularly work in excess of forty (40) hours per week.

78.    At all times relevant to this action, WIS has engaged, and continues to engage, in a willful policy, pattern, or practice of requiring or permitting the Auditors to perform work without compensation, in the form of spending time and conducting activities for the benefit of WIS and that is an integral and indispensable part of the principal activities for which the Auditors are employed.

79.    As a result, WIS has failed to compensate the Auditors for all hours worked, in violation of the FLSA, 29 U.S.C. §§ 206, 207, and 215(a), and 29 C.F.R. § 778.315.

80.    Plaintiff, on behalf of himself and the Collective, seeks damages in the amount of their respective unpaid hours worked, plus liquidated damages, as provided by the FLSA, 29 U.S.C. § 216(b), and such other legal and equitable relief as the Court deems just and proper.

81.    Plaintiff, on behalf of himself and the Collective, seeks recovery of his attorneys' fees and costs of action from WIS, as provided by the FLSA, 29 U.S.C. § 216(b).

### VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the proposed Collective he seeks to represent in this action, requests the following relief:

a)    For an order certifying that all Counts in this Complaint may be maintained as a collective action pursuant to 29 U.S.C. § 216(b) and that prompt notice of this action be issued to potential members of the Collective, apprising them of the pendency of this action, and permitting them to assert their FLSA claims;

b)    For an order equitably tolling the statute of limitations for the potential members of the Collective;

c)    For an order awarding Plaintiff and the Collective compensatory and statutory

---

damages, including lost wages, earnings, and all other sums of money owed to Plaintiff and members of the Collective, together with interest on these amounts;

d) For an order awarding Plaintiff and the Collective liquidated damages as provided under the FLSA;

e) For an order directing WIS to identify, locate and restore to all current and former Auditors the restitution they are due for lost wages, earnings, and other sums of money, together with interest on these amounts.

f) For pre- and post-judgment interest;

g) For an award of reasonable attorneys' fees as provided by the FLSA;

h) For all costs of suit; and

i) For such other and further relief as this Court deems just and proper

Respectfully submitted,

Dated:  December 3, 2014

SCHNEIDER WALLACE
COTTRELL KONECKYWOTKYNS LLP

By:        _____/s/ Joshua Konecky_____
JOSHUA KONECKY
Attorney for Plaintiff Richard Hose and the Proposed
Collective

COLLECTIVE ACTION COMPLAINT
*Richard Hose v. WIS International, Inc.*

14

## __DEMAND FOR JURY TRIAL__

1

2    Plaintiff Richard Hose, by and through his attorney, hereby demands a jury trial on all claims

3  and issues for which Plaintiff and the Collective are entitled to a jury.

4    Respectfully submitted,

5
Dated:  December 3, 2014
6

7    SCHNEIDER WALLACE
COTTRELL KONECKY WOTKYNS LLP
8

9
By:    _____ /s/ *Joshua Konecky*_____
10    JOSHUA KONECKY
Attorney for Plaintiff Richard Hose and the Proposed
11    Collective

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

COLLECTIVE ACTION COMPLAINT
*Richard Hose v. WIS International, Inc.*

15