1  Joshua Konecky, SBN 182897
   Nathan Piller, SBN 300569
2  SCHNEIDER WALLACE
   COTTRELL KONECKY WOTKYNS LLP
3  2000 Powell Street, Suite 1400
   Emeryville, CA 94608
4  Telephone:  (415) 421-7100
   Facsimile:  (415) 421-7105

5  Attorneys for Plaintiffs

6

7              **UNITED STATES DISTRICT COURT**

8             **SOUTHERN DISTRICT OF CALIFORNIA**

9

10 RICHARD HOSE, on his own behalf, and on      Case No. 14-cv-2869 WQH (RBB)
   behalf of all others similarly situated,
11                                              **PLAINTIFF'S MEMORANDUM OF**
                    Plaintiffs,                 **POINTS AND AUTHORITIES IN**
12                                              **OPPOSITION TO DEFENDANT'S**
             vs.                                **MOTION TO COMPEL ARBITRATION**
13                                              **AND TO DISMISS OR,**
   WASHINGTON INVENTORY SERVICE,               **IN THE ALTERNATIVE, TO STAY**
14 INC., d/b/a WIS INTERNATIONAL, a
   California corporation,
15                                              Hearing Date:  February 15, 2016
                                               Time:          [to be determined]
16                  Defendant.                  Courtroom:     [to be determined]

17                                              **NO ORAL ARGUMENT UNLESS**
18                                              **REQUESTED BY THE COURT**

19

20

21

22

23

24

25

26

27
   ───────────────────────────────────────────────────────────
       PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
             DEFENDANT'S MOTION TO COMPEL ARBITRATION
             *Richard Hose, et al. v. WIS International, Inc., et al.*

# TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................................... 1

II.  BACKGROUND ........................................................................................................... 4

III. ARGUMENT.................................................................................................................. 8

   a.   The goal of the FAA is to give effect to the intent of contracting parties, not to privilege arbitration over other important rights............................................................... 8

   b.   The Court must decide whether the Dispute Resolution Agreements are valid contracts . 9

   c.   Judicial acceptance of electronic signatures presumes the maintenance of adequate safeguards to ensure authenticity and integrity ............................................... 10

   d.   WIS has not carried its evidentiary burden to show that the opt-in party plaintiffs actually signed the "Agreements" ....................................................................... 11

   e.   WIS has not shown that the opt-in party plaintiffs intended to sign the "Agreements"... 14

   f.   WIS also has not authenticated the electronic business records it claims are "signed" contracts.......................................................................................................... 15

   g.   The FAA does not govern the dispute because the opt-in party plaintiffs fall into a specific FAA exemption................................................................................... 17

        i. The opt-in party plaintiffs are exempt from the FAA as employees who transport goods and people in interstate commerce....................................................... 18

        ii. WIS has waived its right to compel arbitration because the FAA does not apply ....... 20

   h.   This action should not be stayed, even assuming arguendo one or more of the 13 individuals at issue in WIS's motion are compelled to arbitrate their claim.................. 20

   i.   The Court's ruling on WIS' motion has no bearing on the scope of any collective the Court may conditionally certify at a later date ............................................... 21

IV.  CONCLUSION ............................................................................................................ 23

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL ARBITRATION
*Richard Hose, et al. v. WIS International, Inc., et al.*

i

1

## <u>TABLE OF AUTHORITIES</u>

2

**Federal Cases**

3

*Arnold v. DirectTV, Inc.*, 2012 WL 6026472 (E.D. Mo. Dec. 4, 2012)...............................................22

4

*AT & T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) ..............................................................9

5

*Avago Technologies U.S., Inc. v. Venture Corp.*, 2011 WL 7479163, (N.D. Cal. May 23, 2011) ...... 2

6

*Bd. of Trustees of City of Delray Beach Police & Firefighters Ret. Sys. v. Citigroup Global Markets,*

7

   *Inc.*, 622 F.3d 1335 (11th Cir.2010) ..............................................................................................9

8

*Berte v. WIS Holdings Corp, et al.*, (S.D. Cal.), Case No. 3:07-cv-01932 L (NLS).......................4, 6

9

*Chavez, et al. v. WIS Holdings Corp, et al.,* (S.D. Cal.), Case No. 3:07-cv-01932 ...........................4

10

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126 (9th Cir.2000)...................................11

11

*Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001) ................................................................18

12

*Clark Bros. Sales Co. v. Dana Corp.*, 77 F. Supp. 2d 837 (E.D. Mich. 1999) ...............................10

13

*Collins v. Taco Bell Corp.*, 2013 WL 3984252 (C.D. Cal. July 31, 2013) ....................................8, 9

14

*Comer v. Micor, Inc.*, 436 F.3d 1098 n. 11 (9th Cir.2006) ..............................................................9

15

*Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114 (9th Cir. 2008)......................................................9

16

*Daniely v. Great-W. Healthcare*, 2007 WL 4730654 (N.D. Ga. June 8, 2007)..............................13

17

*Daugherty v. Encana Oil & Gas (USA), Inc.*, 838 F. Supp. 2d 1127 (D. Colo. 2011) ....................21

18

*Deatrick v. Securitas Security Services USA, Inc.*, 2014 WL 5358723 (N.D. Cal., Oct. 20, 2014) ..22

19

*Delmore v. Ricoh Americas Corp.*, 667 F. Supp. 2d 1129 (N.D. Cal. 2009)...................................10

20

*Fields v. Legacy Health Sys.*, 413 F.3d 943 (9th Cir.2005) .............................................................2

21

*Gage, et al. v. WIS Holdings Corp, et al.*, (N.D. Il.), Case No 1:13-cv-03538..................................5

22

*Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287 (2010)...................................................9

23

*Harden v. Roadway Package Systems, Inc.*, 249 F.3d 1137 (9th Cir. 2001) ..............................18, 20

24

*Harden, et al. v. WIS Holdings Corp, et al.*, (W.D. Mo.), Case No. 2:07-cv-04076 ..........................5

25

*In re Van Dusen*, 654 F.3d 838 (9th Cir. 2011) ............................................................................17

26

*In re Vee Vinhnee*, 336 B.R. 437 (B.A.P. 9th Cir. 2005) ...................................................15, 16, 17

27

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL ARBITRATION
*Richard Hose, et al. v. WIS International, Inc., et al.*

ii

*In re: Carrsow-Franklin*, 524 B.R. 33 (Bankr. S.D.N.Y. 2015) ........................................... 17

*Janiga v. Questar Capital Corp.,* 615 F.3d 735 (7th Cir.2010) ............................................ 8

*Jones-Mixon v. Bloomingdale's, Inc.*, 2014 WL 2736020 (N.D. Cal. June 11, 2014) ..................... 12

*Langston v. 20/20 Companies, Inc.,* 2014 WL 5335734 (C.D. Cal. Oct. 17, 2014) ......................... 11

*Lloyd v. J.P. Morgan Chase & Co.*, 2014 WL 2109903 (S.D.N.Y. Apr. 1, 2014) ........................... 22

*Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534 (D. Md. 2007) ....................................... 16

*Mohamed v. Uber Techs., Inc.*, 109 F.Supp.3d 1185 (N.D. Cal. June 9, 2015) ................................ 9

*Pearson v. United Debt Holdings, LLC*, 2015 WL 4960315 (N.D. Ill. Aug. 19, 2015) ................... 17

*Rambus, Inc. v. Infineon Techs. AG*, 348 F. Supp. 2d 698 (E.D. Va. 2004) .................................. 17

*Rent–A–Center, W., Inc. v. Jackson,* 561 U.S. 63 n. 1 (2010) ........................................... 10

*Shaia v. Harvest Management Sub LLC*, 306 F.R.D. 268 (N.D. Cal., Apr. 13, 2015) ..................... 21

*Sylvester v. Wintrust Fin. Corp.,* 2013 WL 5433593 (N.D. Ill. Sept. 30, 2013)......................... 21, 22

*Todd, et al. v. WIS Holdings Corp, et al.,* (E.D.N.Y.), Case No. 13-cv-2754 ............................... 5

*Veliz v. Cintas Corp.*, 2004 WL 2452851 (N.D. Cal. Apr. 5, 2004)...................................... 19

**State Cases**

*Blanton v. Womancare, Inc.*, 38 Cal. 3d 396, (1985)..................................................... 11

*Discover Bank v. Superior Court*, 36 Cal. 4th 148 (2005)................................................ 20

*Garrido v. Air Liquide Indus. U.S. LP,* 2015 WL 3487225 (Cal. Ct. App. June 3, 2015)................. 19

*Gentry v. Superior Court*, 42 Cal. 4th 443 (2007) ...................................................... 20

*J.B.B. Inv. Partners, Ltd. v. Fair*, 232 Cal. App. 4th 974 (2014) ...................................... 14

*Ruiz v. Moss Bros. Auto Grp.*, 232 Cal. App. 4th 836 (2014)............................................ 11, 12, 14

*Sully-Miller Contracting Co. v. Gledson/Cashman Constr., Inc.*, 103 Cal. App. 4th 30 (2002)....... 10

**Federal Statutes**

9 U.S.C. § 1 ................................................................................................. 18

9 U.S.C. § 2 ................................................................................................. 9, 11

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL ARBITRATION
*Richard Hose, et al. v. WIS International, Inc., et al.*

iii

15 U.S.C. § 7006(5) ................................................................................................ 14

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL ARBITRATION
*Richard Hose, et al. v. WIS International, Inc., et al.*

iv

# I.      **INTRODUCTION**

Defendant Washington Inventory Service, Inc., d/b/a WIS International's ("Defendant" or "WIS") motion to compel arbitration must be denied because there is insufficient evidence that the employees actually reviewed or signed the "Dispute Resolution Agreement" that purportedly requires them to waive their right to bring their non-waivable minimum wage and overtime claims in Court.  In fact, WIS has failed to produce any actual signature from any individual indicating his or her assent to the so-called Agreement.  Rather, for each employee alleged to have assented to arbitration, WIS has simply presented a two page exhibit containing (1) a one-page print out of the company's template "Agreement," followed by (2) an entirely separate, second page that simply has the employee's typed name, a date, and a "Signature ID."  The "Signature ID" is not an actual signature (electronic or otherwise), but an alpha-numeric code that could have been generated from anywhere.   Nor is there any signature or even a signed initial on the first page of the exhibit–the one actually containing the "Agreement."

WIS's witness purporting to authenticate the "Agreements," Gabe Mazzarolo, admitted in deposition that he did not himself access or print either the page containing the template Agreement or the separate page containing the Signature ID.  Instead, he simply received the two pages already compiled together by someone else, who he could not specifically identify.  Needless to say, Mr. Mazzarolo has never actually observed an employee review, sign or communicate assent to the Dispute Resolution Agreement. Nor does WIS's motion contain evidence from any other witness as to the alleged "Agreements."  In contrast, affidavits submitted by the employees themselves state they have no recollection of ever having been presented with an arbitration agreement or agreeing to arbitration.

Unlike handwritten signatures, electronic Signature IDs do not demonstrate assent on their face.  Rather, because of the inherent malleability of electronic media, the authenticity of electronic signatures and the integrity of the documents bearing them depend on the reliability of the security mechanisms and storage procedures maintained by their proponents.  Any judicial acceptance of

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL ARBITRATION
*Richard Hose, et al. v. WIS International, Inc., et al.*

1

electronic signatures presumes that adequate structural safeguards are in place to prevent abuse. Indeed, the applicable legal standards reflect the need for safeguards above and beyond what is required to authenticate a handwritten signature.  Under California law, for instance, proponents must demonstrate that their security procedures are effective enough to ensure that the electronic signature could have been placed on the document in question *only* by the alleged signatory, and by no one else.  Proponents *also* must show that the alleged signatory actually intended to make a binding legal commitment by performing the electronic "act" in question.  On top of that, proponents must demonstrate a secure chain of custody showing that the documents purportedly bearing the electronic "signatures" are the same ones originally generated by the electronic process.

Here, WIS's showing falls well short of this high standard.  Indeed, WIS's entire argument relies on a conclusory description of its password verification process, the very evidentiary showing that the California Court of Appeal[1] held to be insufficient just over a year ago.  Tellingly, even when granted an opportunity in deposition to provide additional detail and cure the evidentiary deficiencies in his declaration, WIS's witness testified that he was not aware of any additional evidence demonstrating the authenticity of the electronic signatures that was not already set out in his threadbare declaration.  Worse, Mr. Mazzarolo admitted that any number of WIS employees may access the Dispute Resolution Agreements on a "need to know" basis, and could not confirm

---

[1] WIS concedes that California law applies to questions of contract validity, having applied California law to such questions in its own motion, *see* Defendant's MPA iso Motion to Compel [ECF 57-1] ("D's Brief") at 5:17-18; 9:1-5.  Moreover, this Court sits in diversity (though there is also federal question jurisdiction), and should therefore apply the substantive law of California, the forum state. *See Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 (9th Cir. 2005) (reasoning that federal courts sitting in diversity must look to the law of the forum state to determine controlling substantive law).  Application of California's substantive choice of law rules shows that California contract law should apply because neither party asserts that a foreign jurisdiction's laws should apply or that a foreign jurisdiction's interests would be "significantly advance[d]" by application of its own laws. *See Avago Technologies U.S., Inc. v. Venture Corp.*, 2011 WL 7479163, at *3 (N.D. Cal. May 23, 2011).  Moreover, California has a strong interest in enforcing its own contract laws because WIS is headquartered in California and presumably drafted the "Agreement" templates in California.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL ARBITRATION
*Richard Hose, et al. v. WIS International, Inc., et al.*

2

whether or not the documents had been accessed or altered since they were purportedly "executed." Nor could Mr. Mazzarolo identify the specific location where the "Agreements" are stored or any procedure maintained by WIS for auditing its storage mechanisms for the integrity of stored information.

As a result, WIS's motion to compel arbitration must fail for several reasons pertaining to just the contract formation deficiencies. First, WIS has failed to meet its burden to prove that the Signature IDs resulted from the acts of the employees. Second, even assuming WIS's system generates Signature IDs based on the act of the employee, WIS fails to show that any employee *intended* that act to apply to the Dispute Resolution Agreement, as opposed to something else shown during the onboarding process. Third, WIS has not established a secure chain of custody showing that the documents now presented in support of WIS' motion are the same ones originally generated, as required by the Ninth Circuit's test for authenticating electronic business records. For each of these reasons, WIS fails to demonstrate contract formation or the existence of a valid contract.

Aside from the authentication and chain of custody deficiencies, WIS's motion must be denied for the additional threshold reason that the Inventory Associates fall into a specific exemption to the Federal Arbitration Act (FAA) that applies to employees who transport goods and people across state lines. There is no dispute that the Inventory Associates spend considerable time transporting equipment and other Inventory Associates across state lines as part of their job. Yet, the FAA simply does not apply to such employees. Given that WIS has moved to compel arbitration under the FAA, its motion should be denied regardless of whether the dubious Signature IDs could be construed as an authentic act of the employee and even assuming this act was intended to express assent to the specific "Agreement."

Finally, even assuming arguendo that one or more of the 13 employees at issue could be compelled to arbitrate their claims, WIS's wholly unsupported argument that the entire action should be stayed pending the outcomes of a handful of individual arbitrations must be rejected. Indeed, there are more than 47,000 unnamed members of the putative collective who are not at issue in

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL ARBITRATION
*Richard Hose, et al. v. WIS International, Inc., et al.*

3

1   WIS's motion, nearly 12,000 of which WIS admits are not covered by the "Agreement" because

2   they were employed before WIS itself purports to have rolled it out (including the Named Plaintiff,

3   Richard Hose).  Even if one or more of the 13 individuals actually at issue in WIS's motion were

4   compelled to arbitrate their claims, it would make no sense to delay resolution for the tens of

5   thousands of individuals (including the Named Plaintiff) whose claims WIS is not even seeking to

6   send to arbitration in its motion.

7   **II.    BACKGROUND**

8          Initially filed on December 4, 2014, this case challenges uniform policies maintained by WIS

9   for recording the hours worked by, and compensation owed to, its Inventory Associates.  Inventory

10  Associates are low wage, hourly employees who count products on the shelves of the retail stores

11  that retain WIS to audit their inventory.  Plaintiff alleges that the timekeeping and compensation

12  policies WIS maintains for them result in the systematic underreporting of hours and underpayment

13  of wages, including the denial of overtime and minimum wage, for time spent on (a) set up activities

14  before starting the inventory counts, (b) wrap up activities after the counts, and (c) transporting

15  people and equipment for the benefit of WIS both before and after the scheduled shifts.  A more

16  detailed discussion of the specific policies and their impact on the Inventory Associates is set forth

17  in Plaintiff's Memorandum of Points and Authorities In Support of Plaintiff's Motion to Facilitate

18  Notice Pursuant to 29 U.S.C. § 216(b) [ECF 62].

19         Before the filing of this case, WIS was the subject of several other class and individual cases

20  alleging it was systematically denying overtime to its Inventory Associates in California and across

21  the country.[2]  As in this case, the gravamen of the claims there was WIS's failure to accurately

22  ─────────────────

23  [2] In 2010, WIS entered into a class settlement for overtime and related claims on behalf of its
    California auditors, arising out of the same kind of off-the-clock work at issue in this case. *Chavez,*

24  *et al. v. WIS Holdings Corp, et al.,* (S.D. Cal.), Case No. 3:07-cv-01932, ECF Doc 152-3 (class
    action settlement).  In 2014, WIS settled similar claims under the Fair Labor Standards Act (FLSA)

25  for auditors who opted-in to the collective action in 2011 and early 2012—now three or more years
    ago. *Berte v. WIS Holdings Corp, et al.,* (S.D. Cal.), Case No. 3:07-cv-01932 L (NLS), ECF Doc

26  281-2 (consolidated with *Chavez, supra*) (FLSA collective action settlement).  WIS also has
    resolved other similar overtime claims on an individual (and confidential) basis. *See Harden, et al.*

27

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL ARBITRATION
*Richard Hose, et al. v. WIS International, Inc., et al.*

4

1    record the time Inventory Associates spend performing work and traveling for the benefit of WIS

2    before and after the inventory counting itself.   After years of litigation, WIS has settled each of

3    these cases for money, but specifically denied any liability or wrongdoing, and did not agree to

4    change its policies on a going forward basis.

5           Following these lawsuits, WIS implemented the forced arbitration program at issue in this

6    case.  According to the witness WIS presented to authenticate the program, former Vice President of

7    Information Technology Gabe Mazzarolo, WIS now presents all its employees with the opportunity

8    to review a "Dispute Resolution Agreement" on the company's intranet and requires them to accept

9    or opt-out[3] of the Agreement by entering a network password on the site that acts as a proxy for their

10   electronic signature. *See* Declaration of Gabe Mazzarolo ("Mazzarolo Decl.") [ECF 57-3] at ¶¶ 5-10.

---

13   *v. WIS Holdings Corp, et al.*, (W.D. Mo.), Case No. 2:07-cv-04076, ECF Doc 74; *Gage, et al. v. WIS Holdings Corp, et al.*, (N.D. Il.), Case No 1:13-cv-03538, ECF Doc 23; *Todd, et al. v. WIS Holdings Corp, et al.*, (E.D.N.Y.), Case No. 13-cv-2754, ECF Doc 28.

[3] While the arbitration "Agreement" contains an "opt-out" provision ostensibly permitting Inventory Associates to continue working without giving up their rights, the opt-out process is unnecessarily cumbersome and appears designed to discourage Inventory Associates, assuming they actually receive and review the Agreement, from preserving their rights. Contrary to the description in Mr. Mazzarolo's declaration, *id.* at ¶ 6, Inventory Associates cannot decide to opt-out when first presented with the Dispute Resolution Agreement.  Instead, they must have their Signature ID on the "Agreement" generated simply to complete hiring paperwork and begin work. *Id.* at ¶ 10; Exhibit 3 to Mazzarolo Decl.  Only after Inventory Associates finish the hiring paperwork may they then send an opt-out request, which can only be accomplished via fax within the 14 days following their "acceptance" of the terms of the "Agreement." *See* Exhibit 1 to Mazzarolo Decl. at ¶ 3. The fax requirement is peculiar, given that the WIS intranet platform purportedly allows Inventory Associates to agree to the terms of the Dispute Resolution Agreements on the spot, via online communication.  WIS has not provided any rationale for refusing to provide an "opt-out" mechanism on the same online platform.  In addition, the Dispute Resolution Agreements provide that Inventory Associates who begin work before submitting an "opt-out" form have waived their right to opt-out, even if they begin work within 14 days of "signing" the hiring paperwork.  *See id.* Thus, even assuming an Inventory Associate was prepared to comply with the cumbersome opt-out process, he or she would have to make the decision to opt-out and get access to an opt-out form and fax machine before starting work.

---

27

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL ARBITRATION
*Richard Hose, et al. v. WIS International, Inc., et al.*

5

1    Mr. Mazzarolo testified WIS began doing this on November 11, 2013. *Id.* at ¶ 5.[4]  WIS argues that

2    approximately 35,000 of the 47,000 members of the proposed collective have executed the

3    "Agreement," and that nearly 12,000 members are not covered by the "Agreement." *See* Exhibit 1 to

4    the Declaration of Nathan Piller in Opposition to Defendant's Motion to Compel ("Piller Decl."),

5    Defendants' Objections and Responses to Plaintiffs' Second Set of Interrogatories, at 3:8-18.  Of

6    course, only the claims of the 13 individuals named in WIS's motion are at issue here. *See*

7    Mazzarolo Decl. at 12; Defendant's MPA iso Motion to Compel [ECF 57-1] ("D's Brief") at 1:7-11

8    (seeking to compel 13 employees to arbitrate their claims).

9           As Mr. Mazzarolo describes it, Inventory Associates view and are prompted to accept the

10    "Agreement" on a screen, as part of the "overall flow" of the employee onboarding process. *See*

11    Mazzarolo Decl. at ¶ 6; Exhibit 2 to the Piller Decl., Deposition of Gabe Mazzarolo ("Mazzarolo

12    Depo.") at 14:3-18.  Exhibit 1 of Mr. Mazzarolo's Declaration shows an exemplar of the screen with

13    what can safely be characterized as a tiny type setting.  While Mr. Mazzarolo could not confirm the

14    actual type setting that is viewed, he did testify that employees may view it on a company laptop or

15    a smart phone. Mazzarolo Depo. at 36:17-37:1; 98:12-14.  Mr. Mazzarolo explains that the

16    Inventory Associates must choose a password, which generates the Signature ID. Mazzarolo Decl. at

17    ¶ 8-10.  The password, however, is also used to perform other tasks wholly unrelated to signing

18    documents, such as confirming work schedules and payroll. *Id.* at ¶ 9; Mazzarolo Depo. at 14:19-

19    15:5.  In addition, Mr. Mazzarolo has not witnessed employees actually reviewing the Dispute

20    Resolution Agreements, and could not confirm that employees actually review and understand their

21    terms. Mazzarolo Depo. at 20:20-21:1; 25:20-26:4.

22           Once an Inventory Associate has theoretically "executed" the "Agreement," the computer

23    system "creates a PDF" of the document "that shows the employee's electronic signature," but it is

24    unclear from WIS' evidence where such PDFs are maintained and whether they may be altered by

---

[4] This is approximately four months after WIS settled *Berte v. WIS Holdings Corp, et al.*, (S.D. Cal.), Case No. 3:07-cv-01932 L (NLS). *See* note 2, *supra*.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL ARBITRATION
*Richard Hose, et al. v. WIS International, Inc., et al.*

6

individuals with access to WIS's databases. Mazzarolo Decl. at ¶ 11.  Indeed, Mr. Mazzarolo testified that any number of individuals in WIS' human resources group may have access to the Dispute Resolution Agreements on a "need to know" basis. Mazzarolo Depo. at 80:1-81:9; 82:4-84:11.  WIS provides no facts to demonstrate that individuals with access cannot alter the documents from their original state. *Id*. at 84:4-11.

WIS also presents little factual support for its contention that the "signed" Dispute Resolution Agreements are the original documents it claims them to be. Indeed, WIS has provided no description of its document storage systems or the chain of custody of its electronic records.  Rather, WIS has stated in a conclusory manner that its electronic system "creates a PDF" of the Dispute Resolution Agreements once they are executed, and that "WIS' databases maintain acknowledgement records of employees who electronically signed the [Dispute Resolution Agreement]." Mazzarolo Decl. at ¶ 4.  Thus, it is unclear whether and how the documents WIS has attached to Mr. Mazzarolo's Declaration were actually "created" by the system.

This uncertainty is compounded by Mr. Mazzarolo's testimony that he did not personally access and print out the purportedly authentic Dispute Resolution Agreements attached to his Declaration, but rather worked "with counsel" to direct some unidentified individual or group of individuals—none of whom have provided testimony in this case—to retrieve them. Mazzarolo Depo. at 38:6-40:7.  Indeed, there is little evidence that the page containing the Dispute Resolution Agreement is even linked to the page containing the Signature ID, or that the page containing the Signature ID resulted from the initial act of the employee to begin with.

Even assuming the documents were generated by WIS's system, the company has neglected to provide evidence regarding how it stores and maintains its electronic records, or of any processes it may have in place to ensure that the electronic records are not altered in any way after their creation.  Indeed, Mr. Mazzarolo was not aware of where the Dispute Resolution Agreements are stored, *id*. at 79:8-18, nor could he identify any procedure or even an informal process used by WIS to audit its storage mechanisms for the integrity of stored information. *Id*. at 91:1-11.  The only

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL ARBITRATION
*Richard Hose, et al. v. WIS International, Inc., et al.*

7

1    mechanism Mr. Mazzarolo could identify that WIS uses to maintain the integrity of the documents is

2    storing them as PDF files. *Id.* at 85:12-24.  But again, Mr. Mazzarolo could not confirm that the

3    PDFs attached to his declaration had not been altered or rearranged from the originals. Mazzarolo

4    Depo. at 93:7-23.

5            Given the lack of formality in the theoretical execution process and the myriad of questions

6    raised by WIS's conclusory descriptions of its own systems, it should come as no surprise that the

7    opt-in party plaintiffs who have submitted declarations in opposition to WIS's motion, and whose

8    claims WIS now seeks to send to arbitration, do not recall signing the Dispute Resolution

9    Agreements. *See, e.g.*  Declaration of Calvin J. White ("White Decl.") at ¶¶ 24-29; Declaration of

10   James Smith ("Smith, J. Decl.") at ¶¶ 28-30; Declaration of Timothy Payton ("Payton Decl.") at ¶¶

11   23-26; Declaration of Karen Snellgrove ("Snellgrove Decl.") at ¶¶ 32-35; Declaration of Paul

12   O'Dell ("O'Dell Decl.") at ¶¶ 28-31; Declaration of Candace Taylor ("Taylor Decl.") at ¶¶ 6-10;

13   Declaration of Meka Smith ("Smith, M. Decl.") at ¶¶ 6-10.  Nevertheless, WIS now seeks to hold

14   the opt-in party plaintiffs to an "Agreement" that it cannot show ever existed, and worse, that

15   appears calculated as a means to insulate it from accountability for its unlawful timekeeping and

16   compensation policies.

17   **III.    ARGUMENT**

18

19           a.   **The goal of the FAA is to give effect to the intent of contracting parties, not to privilege arbitration over other important rights**

20           "Although it is often said that there is a federal policy in favor of arbitration, federal law

21   places arbitration clauses on equal footing with other contracts, not above them." *Collins v. Taco*

22   *Bell Corp.*, 2013 WL 3984252, at *3 (C.D. Cal. July 31, 2013) (quoting *Janiga v. Questar Capital*

23   *Corp.*, 615 F.3d 735, 740 (7th Cir.2010)).  Indeed, the "liberal federal policy" regarding arbitration

24   "is inapposite" to the issue of "the existence of a valid, written agreement to arbitrate in contract."

25   *See Collins*, 2013 WL 3984252, at *3 (citing *Comer v. Micor, Inc.*, 436 F.3d 1098, 1104 n. 11 (9th

26   Cir.2006)).  This is because of the "fundamental principle that arbitration is a matter of contract." *AT*

27

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL ARBITRATION
*Richard Hose, et al. v. WIS International, Inc., et al.*

8

*& T Mobility LLC v. Concepcion,* 563 U.S. 333, 339 (2011); *see also Bd. of Trustees of City of Delray Beach Police & Firefighters Ret. Sys. v. Citigroup Global Markets, Inc.,* 622 F.3d 1335, 1342 (11th Cir.2010)* ("Contrary to the suggestion of [movant], we resolve this issue without a thumb on the scale in favor of arbitration because the 'federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties.'"). In other words, the goal of the FAA is to give effect to the intent of contracting parties, not to contrive an intent to arbitrate where none exists. The first question in this inquiry is whether the parties intended to enter into a contract to arbitrate their disputes in the first place.

### b. The Court must decide whether the Dispute Resolution Agreements are valid contracts

A party seeking to compel arbitration under the FAA must show: (1) the existence of a valid, written agreement to arbitrate in a contract; and (2) that the agreement to arbitrate encompasses the dispute at issue. *Cox v. Ocean View Hotel Corp.,* 533 F.3d 1114, 1119 (9th Cir. 2008); *see also* 9 U.S.C. § 2. "It is 'well settled' that the existence of a valid, written agreement to arbitrate in a contract is an issue for court, not an arbitrator, to decide." *Collins,* 2013 WL 3984252, at *2 (quoting *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 295 (2010)).

WIS argues that the Court cannot decide whether the Dispute Resolution Agreements are valid contracts because the parties "clearly and unmistakably" agreed that the arbitrator would decide arbitrability. *See* Defendant's Memorandum in support of Motion to Compel Arbitration [ECF 57-1] ("D's Brief"), at 7:19-5. WIS puts the cart before the horse. Indeed, the Court need not determine whether the parties have delegated the threshold issues of validity and enforceability to the arbitrator because Plaintiffs never assented to the terms of the Dispute Resolution Agreements in the first place. When a party challenges the formation of a contract for lack of assent, the Court must decide the question of formation before any "delegation" to an arbitrator may be considered. *See Mohamed v. Uber Techs., Inc.*, 109 F.Supp.3d 1185, 1194-95 (N.D. Cal. June 9, 2015) (citing *Rent–A–Center, W., Inc. v. Jackson,* 561 U.S. 63, 68, 70 n. 1 (2010)). Thus, the Court—not an

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL ARBITRATION
*Richard Hose, et al. v. WIS International, Inc., et al.*

9

arbitrator—must decide the issue of whether the opt-in party plaintiffs assented to the Dispute Resolution Agreements in the first place.

### c.  Judicial acceptance of electronic signatures presumes the maintenance of adequate safeguards to ensure authenticity and integrity

It is a fundamental principle of contract law that a contract must be supported by objective evidence of assent to be deemed valid. *See Clark Bros. Sales Co. v. Dana Corp.*, 77 F. Supp. 2d 837, 851 (E.D. Mich. 1999) ("…under well-established principles of contract law, no enforceable obligation arises without mutual assent, and this mutual assent must be demonstrated through objective evidence…").   Handwritten signatures are objective evidence of assent, *see Delmore v. Ricoh Americas Corp.*, 667 F. Supp. 2d 1129, 1139 (N.D. Cal. 2009), and for that reason are often required by statute as evidence of express consent to particularly consequential contracts, such as settlement agreements. *See, e.g. Sully-Miller Contracting Co. v. Gledson/Cashman Constr., Inc.*, 103 Cal. App. 4th 30, 37 (2002) (reasoning that signatures are required on settlement agreements under California law because "settlement is such a serious step that it requires the client's knowledge and express consent.").

While electronic signatures can be evidence of assent under some circumstances, safeguards are necessary to ensure their authenticity and integrity.  For example, The National Archives and Records Administration has issued formal guidance to government agencies stating that they should "ensure that records that include electronic signatures are created and maintained in a secure environment that protects the records from unauthorized alteration or destruction." *See* Exhibit 3 to the Piller Decl., Records Management Guidance for Agencies Implementing Electronic Signature Technologies, at page 10.  Prestigious academic institutions that have recently embraced electronic signature technologies as a means of communicating assent have followed suit by ensuring that appropriate safeguards are in place. *See, e.g.* Exhibit 4 to the Piller Decl., Yale University's Electronic Signatures and Records Policy (approving use of electronic signatures "so long as their use meets legal and security requirements" and mandating that electronic signature services "have

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION
*Richard Hose, et al. v. WIS International, Inc., et al.*

10

appropriate security procedures that can accurately attribute electronic records or electronic signatures to the individuals that created them[.]").  Indeed, even WIS appears to understand the importance of actual handwritten signatures over electronic Signature IDs in that it does not accept Signature IDs for purposes of opting-out of the "Agreement." *See* Exh. 1 to Mazzarolo Decl. at ¶ 3.

In other words, the electronic medium presents security concerns that behoove large entities like WIS to maintain robust safeguards that protect the integrity of electronically stored documents, particularly with regard to documents of significant consequence.  Form documents drafted by the stronger party and purporting to waive a weaker signatory's Constitutional right to a jury trial—like the Dispute Resolution Agreements at issue here—are precisely the sort of documents that require such caution. *See Blanton v. Womancare, Inc.*, 38 Cal. 3d 396, 411 (1985) (reasoning that "[t]he right to trial by jury, in both civil and criminal matters" is "fundamental and 'should be zealously guarded by the courts.'") (internal citations omitted).

### d.   WIS has not carried its evidentiary burden to show that the opt-in party plaintiffs actually signed the "Agreements"

The party asserting the existence of an arbitration agreement bears the burden of proving that a valid agreement to arbitrate exists. *Langston v. 20/20 Companies, Inc.,* 2014 WL 5335734, at *3 (C.D. Cal. Oct. 17, 2014) (citing *Chiron Corp. v. Ortho Diagnostic Sys., Inc.,* 207 F.3d 1126, 1130 (9th Cir.2000)); *see also* 9 U.S.C. § 2.  Here, the opt-in party plaintiffs have testified that they do not recall signing or electronically verifying the Dispute Resolution Agreements, and contend that they never entered into a contract to arbitrate their claims against WIS. *See, e.g.* White Decl. at ¶¶ 24-29; Smith, J. Decl. at ¶¶ 28-30; Payton Decl. at ¶¶ 23-26; Snellgrove Decl. at ¶¶ 32-35; O'Dell Decl. at ¶¶ 28-31; Taylor Decl. at ¶ 7; Smith, M. Decl. at ¶¶ 6-10. Where a party specifically challenges the authenticity of an alleged signature on a document, the party seeking to enforce the alleged contract bears the burden of proof to authenticate the signature. *See Ruiz v. Moss Bros. Auto Grp.*, 232 Cal. App. 4th 836, 845 (2014).  The proponent of the signature must "produce evidence sufficient to

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL ARBITRATION
*Richard Hose, et al. v. WIS International, Inc., et al.*

11

support a finding that the [signatures are] what the proponent claims [them to be]." Fed. R. Evid. 901.

To demonstrate that an electronic signature is authentic, the proponent must produce evidence showing that the electronic signature appearing on the document resulted from the "act of" the alleged signatory. *See Ruiz*, 232 Cal. App. 4th at 843-44. To satisfy this burden, proponents must show that the electronic signature appearing on the document in question could have been placed on the document only by the alleged signatory, and by no one else. *Id*. at 844. As here, the defendant in *Ruiz* produced a page with the plaintiff's alleged signature, a date and time stamp, and a sworn declaration stating that its electronic systems require signatories to log in using a unique identification and password in order to access the agreements. *Id*. The Court held this was insufficient to show that the "signatures" appearing on the pages resulted from the "act of" the alleged signatory. *Id*. This showing "left a critical gap" between evidence of the defendant's unique password and login system designed for generating electronic signatures on one hand, and the conclusion that the electronic signature was "the act of" the alleged signatory on the other. *Id*.

Here, WIS's attempt to authenticate the opt-in party plaintiffs' alleged "signatures" fails for the same reason as in *Ruiz*. WIS has presented generic printouts of what it claims are the original "Agreements," followed by pages bearing what WIS contends are the electronic "signatures" of the opt-in party plaintiffs. *See* Exhibits 4-16 to the Mazzarolo Decl. Like in *Ruiz*, WIS has relied on a general description of its password login system to support the conclusion that only the opt-in party plaintiffs could have produced the "signatures." *Id*. at ¶¶ 7-9. Under *Ruiz*, merely explaining that "each employee is required to log into the company's HR system, using his or her 'unique login ID and password,' to review and sign [the contract]" is not enough to show that the "signatures" were the "acts" of the opt-in party plaintiffs. *See Ruiz*, 232 Cal. App. 4th at 844; *cf. Jones-Mixon v. Bloomingdale's, Inc.*, 2014 WL 2736020, at *5 (N.D. Cal. June 11, 2014) (reasoning that the authenticity of an electronic signature may be shown by "the efficacy of any security procedure applied" and finding electronic signature authentic where the plaintiff "was required to twice enter

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION
*Richard Hose, et al. v. WIS International, Inc., et al.*

12

her Social Security number, birth date and zip code, and would not have been able to electronically sign if the information was not matched correctly."). As discussed above, Mr. Mazzarolo admitted that he could not provide any additional evidence demonstrating the authenticity of the electronic signatures to cure the deficiencies in his declaration. Mazzarolo Depo. at 94:12-22.

Even assuming, *arguendo*, that the "signatures" *were* generated by the "act" of some individual, WIS has not provided a sufficient factual basis to demonstrate that the opt-in party plaintiffs were the specific individuals who "signed" the documents. Instead, WIS has asserted in a conclusory manner that the company's electronic systems only permit individuals using a unique login and password to view the Dispute Resolution Agreements and electronically sign them. *See* Mazzarolo Decl. at ¶¶ 7-9. Yet Mr. Mazzarolo concedes that he and any number of other WIS personnel may access the Dispute Resolution Agreements on a "need to know" basis. Mazzarolo Depo. at 80:1-81:9; 82:4-84:11. WIS fails to show that an employee with access did not use such access to create, alter or rearrange the electronic signature pages attached to Mr. Mazzarolo's declaration.

Try as it might, WIS cannot rely on the mere appearance of the item it seeks to authenticate, particularly given that it is seeking to enforce electronic contracts. *See Daniely v. Great-W. Healthcare*, 2007 WL 4730654, at *3 (N.D. Ga. June 8, 2007) (reasoning that "[t]he requirement that there be something more than the appearance of the item is particularly important with respect to documents that can be easily altered, such as those generated by computer."). In any event, even the *appearance* of the Dispute Resolution Agreement printouts does not support WIS's position. Indeed, the "Agreements" and purported signature pages attached to Mr. Mazzarolo's declaration are presented on two separate pages, without any demonstrated link. Mr. Mazzarolo could not provide any foundation or verification to establish his contention that these two separate pages— which were admittedly compiled and sent to Mr. Mazzarolo by someone else—are even part of the same "PDF" file. Mazzarolo Depo. at 38:6-40:7; 44:10-46:18.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL ARBITRATION
*Richard Hose, et al. v. WIS International, Inc., et al.*

13

Thus, WIS has not demonstrated that the Signature IDs "could only have been placed" on the Dispute Resolution Agreements "by a person using [the] 'unique login ID and password.'" *See Ruiz*, 232 Cal. App. 4th at 844.

### e. WIS has not shown that the opt-in party plaintiffs intended to sign the "Agreements"

WIS' showing is deficient for the additional reason that it has not shown that the opt-in party plaintiffs intended to execute the "Agreements." Indeed, parties seeking to enforce documents on the basis of electronic signatures also must produce evidence demonstrating "that the person printing his or her name intended to execute the document." *J.B.B. Inv. Partners, Ltd. v. Fair*, 232 Cal. App. 4th 974, 992 (2014); *see also* Federal E-Sign Act, at 15 U.S.C. § 7006(5) (specifically providing that electronic signatures must be "executed or adopted by a person <u>with the intent to sign the record</u>" to be valid) (emphasis added). To establish intent to electronically execute a document, the proponent must show that the parties intended an electronic act to constitute a legally binding agreement, which can be "determined from the context and surrounding circumstances, including the parties' conduct." *See J.B.B. Inv. Partners, Ltd.*, 232 Cal. App. 4th at 989-990.

Here, WIS has apparently inferred such intent from the alleged password verification process, *see* Mazzarolo Decl. at ¶¶ 8-12, but for the same reasons set forth in the foregoing, it has failed to demonstrate that the "signatures" it has produced were actually generated from the password verification process. In any event, the opt-in party plaintiffs have testified that they do not recognize the documents WIS alleges that they signed, so WIS cannot establish that they "intended" to execute them. *See, e.g.* Smith, J. Decl. at ¶ 29; White Decl. at ¶ 27; Payton Decl. at ¶ 24; Snellgrove Depo. at ¶ 29; O'Dell Decl. at ¶ 32.

Moreover, WIS admits that the same password verification process from which it infers intent is also used to perform various other tasks on the same intranet platform that are wholly unrelated to signing documents, such as confirming work schedules and payroll, Mazzarolo Decl. at ¶ 9, and that the same process is used to "sign" documents other than the so called "Dispute Resolution

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL ARBITRATION
*Richard Hose, et al. v. WIS International, Inc., et al.*

14

Agreements." *See* Mazzarolo Depo. at 14:19-15:5.  It should come as no surprise that Mr. Mazzarolo could not confirm that employees using the password verification process intended their password entry to communicate assent to the terms of the Dispute Resolution Agreement, as opposed to completing an unrelated task or to communicate assent to some other "agreement" for which the same password entry is also required. *See id.* at 40:13-41:19.  This showing does not pass muster under California law.

### f. <u>WIS also has not authenticated the electronic business records it claims are "signed" contracts</u>

The Ninth Circuit has articulated a clear test for authenticating electronic business records under the Federal Rules of Evidence, which requires proponents to show there were no breaks in the electronic chain of custody that could have altered the record from its original state. *In re Vee Vinhnee*, 336 B.R. 437, 444 (B.A.P. 9th Cir. 2005) ("The primary authenticity issue in the context of business records is on what has, or may have, happened to the record in the interval between when it was placed in the files and the time of trial. In other words, the record being proffered must be shown to continue to be an accurate representation of the record that originally was created.").  This burden cannot be satisfied by mere references to storage systems or conclusory statements about the electronic chain of custody.  Rather, the proponent must provide evidence of how records databases are controlled and managed in a manner sufficient to show that the records in question could not have been changed since their creation. *See id.* at 445 ("The logical questions extend beyond the identification of the particular computer equipment and programs used. The entity's policies and procedures for the use of the equipment, database, and programs are important. How access to the pertinent database is controlled and, separately, how access to the specific program is controlled are important questions. How changes in the database are logged or recorded, as well as the structure and implementation of backup systems and audit procedures for assuring the continuing integrity of the database, are pertinent to the question of whether records have been changed since their creation.").

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL ARBITRATION
*Richard Hose, et al. v. WIS International, Inc., et al.*

15

Here, Mr. Mazzarolo merely states that "WIS' system created a PDF" of the "Agreements" it contends were signed by each opt-in, without describing WIS's electronic records storage process and demonstrating that the records are accurate representations of the records that were originally created. *See* Mazzarolo Decl. at ¶¶ 13-23. Indeed, any individual with access to the system can presumably generate a document and print it out. The fact that a document has been generated from WIS's system does not mean it is the document WIS contends it is. Merely stating that documents have been pulled from computer storage without showing that the documents pulled accurately represent the originals does not pass muster under controlling authority. *See In re Vee Vinhnee*, 336 B.R. at 444 (reasoning that in determining whether an electronic business record has been properly authenticated, "the focus is not on the circumstances of the creation of the record, but rather on the circumstances of the preservation of the record during the time it is in the file so as to assure that the document being proffered is the same as the document that originally was created."); *see also Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 557 (D. Md. 2007) (acknowledging "growing recognition that more care is required to authenticate [computer stored records and data] than traditional 'hard copy' records."); *see id*. at 559 (advising litigants that "[i]f it is critical to the success of your case to admit into evidence computer stored records, it would be prudent to plan to authenticate the record by the most rigorous standard that may be applied.").

Furthermore, WIS's only evidence regarding its storage procedures is a conclusory statement in Mr. Mazzarolo's declaration that "WIS' databases maintain acknowledgement records of employees who electronically signed the DRA." Mazzarolo Decl. at ¶ 4. As discussed above, Mr. Mazzarolo could not provide additional detail in deposition. Despite his position as the Vice President of Information Technology for the whole company, Mr. Mazzarolo admitted that he did not know specifically where the "Agreements" are stored and that he was not aware of any procedure maintained by WIS for auditing its storage mechanisms for document integrity. Mazzarolo Depo. at 79:8-18 ("outside of telling you that it's on the network environment I really can't – I can't be more specific than that."); 91:1-11. Mr. Mazzarolo further admitted that

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION
*Richard Hose, et al. v. WIS International, Inc., et al.*

16

Defendant regularly presents other electronic documents to its employees using the same Signature ID platform, but that there is no computer log or database linking any particular "Signature ID" to the "Dispute Resolution Agreement," as opposed to any the other documents that may have been presented through the same process. *Id*. at 91:25-93:10.

This does not come close to meeting the evidentiary standard articulated by the Ninth Circuit. *See In re Vee Vinhnee*, 336 B.R. at 445; *see also In re: Carrsow-Franklin*, 524 B.R. 33, 50 (Bankr. S.D.N.Y. 2015) (reasoning that a creditor failed to establish the authenticity of an electronic business record where its declarant's testimony did not meet the test set forth in *In re Vee Vinhnee*); *Rambus, Inc. v. Infineon Techs. AG*, 348 F. Supp. 2d 698, 703 (E.D. Va. 2004) (declining to authenticate electronic records where the electronic record custodian lacked knowledge of the proponent's recordkeeping practices, and failed to assert that the records were made by regularly conducted activity as regular practice).

The Court should deny WIS' motion on this basis alone. *See Pearson v. United Debt Holdings, LLC*, 2015 WL 4960315, at *2 (N.D. Ill. Aug. 19, 2015) (reasoning that "[t]he failure to properly authenticate evidence is sufficient to preclude the Court from considering it, even if the evidence would have been admissible but for the failure to authenticate.").

### g. <u>The FAA does not govern the dispute because the opt-in party plaintiffs fall into a specific FAA exemption</u>

Even assuming, *arguendo*, that valid contracts had been formed between WIS and the opt-in party plaintiffs, WIS's motion should be denied because the opt-in party plaintiffs are exempt from the FAA as transportation employees engaged in interstate commerce.[5]  Because WIS has moved to

---

[5] The FAA's applicability is a threshold question for the Court, not the arbitrator. *See In re Van Dusen*, 654 F.3d 838, 846 (9th Cir. 2011). Moreover, the "Agreement" has a class action waiver that would not be valid or enforceable under certain state laws if the FAA did not apply. *See* Section g(ii), *infra*. At the same time, the "Agreement" expressly provides that issues regarding the enforceability of this very provision are questions for the Court. *See* Exhibit 1, at ¶ 1, Mazzarolo Decl.

---

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL ARBITRATION
*Richard Hose, et al. v. WIS International, Inc., et al.*

17

compel arbitration under the FAA, and the FAA does not apply, WIS has waived its right to move to compel under any state law.

### i. *The opt-in party plaintiffs are exempt from the FAA as employees who transport goods and people in interstate commerce*

Section 1 of the FAA excludes from the Act's coverage "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. Here, it is undisputed that the documents at issue are contracts of employment because the opt-in party plaintiffs have been employees of WIS. *See* Mazzarolo Decl. at ¶ 12.

The Supreme Court has held that this exemption is limited to the contracts of employment of "transportation workers." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 109, 119 (2001). Here, the record shows that opt-in party plaintiffs are "transportation workers" within the meaning of Section 1 and the Supreme Court's decision in *Circuit City*. The statutory language is clear that transportation workers are those individuals "engaged in foreign and interstate commerce." 9 U.S.C. § 1. The Ninth Circuit has not articulated a test for determining whether a worker is "engaged in foreign and interstate commerce" within the meaning of the FAA, but it has held that individuals who cross state lines are "engaged in interstate commerce" for purposes of triggering the exemption. *Harden v. Roadway Package Systems, Inc.*, 249 F.3d 1137, 1140 (9th Cir. 2001).[6]

Here, WIS admits that the Inventory Supervisors and Inventory Associates "must travel across state lines to provide WIS' services to clients in different locations." Mazzarolo Decl. at ¶ 3; *see also* D's Brief at 5:20-24 ("Here, each Opt-in was employed by WIS to count goods for large retailers

---

[6] Other Circuits look to whether the individual is "actually engaged in the movement of goods in interstate commerce." *See Int'l Bhd. of Teamsters Local Union No. 50 v. Kienstra Precast, LLC*, 702 F.3d 954, 956 (7th Cir. 2012); *Lenz v. Yellow Transp., Inc.*, 431 F.3d 348, 351 (8th Cir. 2005). Even if the Court were inclined to apply this test, the opt-in party plaintiffs are engaged in the movement of goods in interstate commerce because their basic job duties involve transporting equipment used to count goods, as well as Inventory Associate passengers, across state lines. *See* D's Brief, at 2:14-18; Mazzarolo Decl. at ¶ 3; *see also* White Decl. at ¶¶ 5-12; Smith, J. Decl. at ¶¶ 5-9; Payton Decl. at ¶¶ 5-8; Snellgrove Decl. at ¶¶ 5-6; O'Dell Decl. at ¶¶ 5-6; Taylor Decl. at ¶ 5; Smith, M. Decl. at ¶ 5.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL ARBITRATION
*Richard Hose, et al. v. WIS International, Inc., et al.*

18

that sell products throughout the U.S… Accordingly, the agreement to arbitrate between WIS and each of the Opt-ins unquestionably involves commerce[.]").  Moreover, the opt-in party plaintiffs have testified that their job duties involve extensive travel with other Inventory Associates and Supervisors, transporting equipment necessary for counting inventory, and transporting other Inventory Associates as passengers, all while regularly crossing state lines. *See, e.g.* White Decl. at ¶¶ 5-12; Smith, J. Decl. at ¶¶ 5-9; Payton Decl. at ¶¶ 5-8; Snellgrove Decl. at ¶¶ 5-6; O'Dell Decl. at ¶¶ 5-6.

While the Inventory Associates might not work in an area that is traditionally considered part of the "transportation industry" per se, it is not necessary for an individual to be directly involved in the transportation industry to be covered by the exemption. *See Garrido v. Air Liquide Indus. U.S. LP,* 2015 WL 3487225, at *2-3 (Cal. Ct. App. June 3, 2015) (citing *Veliz v. Cintas Corp.*, 2004 WL 2452851, at *7 (N.D. Cal. Apr. 5, 2004)) (reasoning that the term "transportation industry" is "not rigid" and that it may not be necessary for an employee to work in the transportation industry to be covered by the exemption, so long as their work involves the transportation of goods across state lines); *see also Veliz*, 2004 WL 2452851 at *7 (identifying the question of whether a worker is employed in the transportation industry as merely one factor to consider in the "transportation worker" analysis).  Moreover, even if individuals do not transport "goods," they may still be considered "transportation workers." *See Willbanks v. Atlas Air Worldwide Holdings, Inc. et al.*, Final Decision and Order on Interlocutory Appeal, Department of Labor Administrative Review Board, attached as Exhibit 5 to the Piller Decl., at page 8 (reasoning that "there is ultimately no basis for limiting the exclusion from FAA mandatory arbitration to only employees engaged in the interstate [] transportation of cargo or goods" where the individual engages in the transportation of passengers across state lines).  For all the above reasons, the opt-in party plaintiffs are exempt from the FAA.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION
*Richard Hose, et al. v. WIS International, Inc., et al.*

19

*ii.   WIS has waived its right to compel arbitration because the FAA does not apply*

WIS has moved to compel arbitration solely under the FAA, not under any state law. *See* D's Brief at 5:6-24 ("The FAA governs the agreement to arbitrate").  Thus, WIS has waived its right to compel arbitration by relying entirely on the FAA where the FAA is inapplicable, and failing to seek to compel arbitration under state laws. *See Harden*, 249 F.3d at 1140-42 (reversing order compelling arbitration because the exemption under Section 1 of the FAA applied and the defendant had relied wholly on the FAA as the basis to compel arbitration, failing to cite California Arbitration Act). Indeed, the Dispute Resolution Agreements themselves provide that "[a]rbitration under this Agreement is governed by the Federal Arbitration Act[.]" *See* Exhibit 1, at ¶ 1, Mazzarolo Decl.

Moreover, even assuming, arguendo, that WIS had not waived its right to compel arbitration under state law, there is no analysis of whether this "Agreement" would be enforceable under any particular state law.  For example, the "Agreement" contains a class action waiver. *See id.* at ¶ 2. Yet class action waivers of the sort at issue here are unconscionable and unenforceable under some state laws. *See, e.g. Discover Bank v. Superior Court*, 36 Cal. 4th 148, 163 (2005), *overturned on preemption grounds* (recognizing California public policy prohibiting enforcement of adhesive, exculpatory class action waivers in arbitration agreements); *Gentry v. Superior Court*, 42 Cal. 4th 443, 463 (2007), *abrogated on preemption grounds* (holding that class arbitration waivers are unconscionable where a class proceeding would be a more effective practical means of vindicating the rights of affected employees).

**h.   This action should not be stayed, even assuming arguendo one or more of the 13 individuals at issue in WIS's motion are compelled to arbitrate their claims**

WIS grossly overreaches by arguing in the alternative that "all civil court proceedings" should be stayed pending arbitration of the 13 opt-in party plaintiffs' claims. *See* D's Brief at 13:18-24. Indeed, WIS does not, nor could it cite any authority supporting the proposition that all civil proceedings in an FLSA collective action should be stayed even assuming some opt-in party plaintiffs' claims are subject to mandatory arbitration.  Indeed, courts faced with the precise

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL ARBITRATION
*Richard Hose, et al. v. WIS International, Inc., et al.*

20

circumstance before this Court consistently allow the collective claims to proceed in court without even dismissing the claims of the individuals who it finds have agreed to arbitration. *See, e.g. Sylvester v. Wintrust Fin. Corp.,* 2013 WL 5433593, at *9 (N.D. Ill. Sept. 30, 2013) (permitting collective claims to proceed in court without dismissing the claims of those individuals referred to mandatory arbitration); *Daugherty v. Encana Oil & Gas (USA), Inc.*, 838 F. Supp. 2d 1127, 1130 (D. Colo. 2011) (same).

Moreover, WIS has identified over 47,000 members of the proposed collective whose claims are not at issue in the motion to compel, including nearly 12,000 individuals who WIS admits are not covered by the "Agreement" at all. *See* Exhibit 1 to the Piller Decl., Defendants' Objections and Responses to Plaintiffs' Second Set of Interrogatories, at 3:8-18.  Staying this action would serve no purpose other than to delay resolution for what may amount to thousands of individuals whose status with respect to arbitration is not before this Court.  In addition, Named Plaintiff Richard Hose's claims are not subject to arbitration.  It makes no sense to stay all civil proceedings when there are thousands of individuals whose claims could be held up during the arbitrations of a handful of individuals, and where the class representative has not given up his right to a jury trial.

### i. The Court's ruling on WIS's motion has no bearing on the scope of any collective the Court may conditionally certify at a later date

Even if the Court finds the "Agreements" to be valid, WIS cannot use such a finding to preclude unnamed members of the putative collective from participating in this case.  Indeed, courts in this Circuit have consistently held that the enforceability of arbitration agreements signed by putative members of a proposed FLSA collective is a question to be resolved at the decertification stage, not a motion to compel arbitration of the claims of a subset of the putative collective. *See, e.g. Shaia v. Harvest Management Sub LLC*, 306 F.R.D. 268 (N.D. Cal., Apr. 13, 2015) ("The question whether certain employees are precluded from participating as members of the collective action by virtue of the arbitration/settlement agreements is not properly before the court at this first stage of the certification."); *Deatrick v. Securitas Security Services USA, Inc.*, 2014 WL 5358723 (N.D. Cal.,

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL ARBITRATION
*Richard Hose, et al. v. WIS International, Inc., et al.*

21

Oct. 20, 2014) (reasoning that "Defendant's arguments concerning the dispute resolution agreement have little to no bearing at this point in the litigation because they relate to whether 'disparate factual and employment settings' exist with respect to the putative class members and to 'the various defenses available to the defendant with respect to each plaintiff'" and holding that these inquiries are "reserved for the second stage of the certification process.") (citations omitted).

Moreover, the Courts presented with the issue of the scope of who should receive notice of an FLSA collective action have routinely held that notice should go out to individuals who have signed arbitration agreements, even where the same agreement had been enforced against similarly situated individuals. *Sylvester v. Wintrust Fin. Corp.*, 2013 WL 5433593, at *9 (N.D. Ill. Sept. 30, 2013) (including individuals who signed arbitration agreement in scope of collective of individuals to whom notice will be sent, because "[w]ithout being presented with the circumstances surrounding the manner of formation of an actual agreement, it will not prejudge the enforceability of other arbitration clauses."); *Lloyd v. J.P. Morgan Chase & Co.*, 2014 WL 2109903, at *2 (S.D.N.Y. Apr. 1, 2014) (holding that there is "no legal obstacle" to providing notice to all members of the collective "without regard to whether they had signed an arbitration agreement" because members of the collective "who were not parties to the action at the time of [the order compelling arbitration] could not be bound by it."); *Arnold v. DirectTV, Inc.*, 2012 WL 6026472, at *3 (E.D. Mo. Dec. 4, 2012) (permitting notice to be sent to individuals subject to arbitration agreements).  For the reasons stated above, the Court's ruling on this motion should have no bearing on the scope of any collective the Court may conditionally certify at a later date.

///
///
///
///
///
///

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL ARBITRATION
*Richard Hose, et al. v. WIS International, Inc., et al.*

22

**IV.    <u>CONCLUSION</u>**

     For all the reasons stated in the foregoing, the Court should deny WIS's motion in its entirety.

                                                               Respectfully submitted,

Dated:  February 1, 2016

                                         SCHNEIDER WALLACE
                                         COTTRELL KONECKY WOTKYNS LLP

                        By:     */s/ Joshua Konecky*_____
                               JOSHUA KONECKY
                               Attorney for Plaintiffs

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL ARBITRATION
*Richard Hose, et al. v. WIS International, Inc., et al.*

23

## CERTIFICATE OF SERVICE

I hereby certify that on February 1, 2016, I electronically filed the foregoing document with the Clerk of the Court using the Court's CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.

/s/ *Joshua G. Konecky*
Joshua G. Konecky (SBN 182897)
SCHNEIDER WALLACE
COTTRELL KONECKY WOTKYNS LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
Facsimile: (415) 421-7105
jkonecky@schneiderwallace.com

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL ARBITRATION
*Richard Hose, et al. v. WIS International, Inc., et al.*

24