# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD HOSE, on his own behalf, and on behalf of all other similarly situated,<br><br>Plaintiff,<br>v.<br>WASHINGTON INVENTORY SERVICES, INC., d/b/a WIS INTERNATIONAL, a California corporation,<br><br>Defendant. | CASE NO. 14cv2869-WQH-AGS<br><br>ORDER |

HAYES, Judge:

The matters before the Court are the Motions to Compel Arbitration (ECF Nos. 172, 176), and the Motion for Summary Judgment (ECF No. 179) filed by Defendant Washington Inventory Service, Inc.

On December 4, 2014, Plaintiff Richard Hose initiated this action by filing the Collective Action Complaint pursuant to the Fair Labor Standards Act ("FLSA") on behalf of himself and others similarly situated. (ECF No. 1). This action arises from Plaintiff's former employment as an Inventory Associate for Defendant, who employs "thousands" of people as "auditors, inventory associates, and/or other functionally equivalent hourly positions (collectively 'Auditors')" to travel to retail stores and count the inventory in those stores. (ECF No. 82 at ¶ 2). On January 29, 2015, Plaintiff filed a notice of Consent to Join Suit as Party Plaintiff. (ECF No. 4). On May 29, 2015,

Plaintiff filed a first amended complaint. (ECF No. 26). On March 14, 2016, Plaintiff filed a Second Amended Complaint, which is the operative complaint in this action. (ECF No. 82). The Second Amended Complaint asserts three claims for FLSA violations: (1) failure to pay minimum wages; (2) failure to pay overtime wages; and (3) failure to compensate for all hours worked; and three common law claims: (1) breach of contract; (2) breach of covenant of good faith and fair dealing; and (3) unjust enrichment. The Second Amended Complaint requests an order certifying that the Complaint be maintained as a collective action pursuant to 29 U.S.C. § 216(b), an order equitably tolling the statute of limitations for the potential members of "the Collective," compensatory and statutory damages, liquidated damages, restitution, pre-and post-judgment interest, attorneys' fees, and costs. *Id.* at 27-28.

On June 7, 2016, the Court issued an order granting Plaintiff's motion for conditional certification under the FLSA. (ECF No. 94). On June 14, 2016, the Court issued an order approving the parties' class definition and joint notice of collective action. (ECF No. 97). On August 30, 2016, the Court issued an order granting Defendant's motion to compel arbitration as to thirteen opt-in Plaintiffs, directing that their claims proceed to arbitration, and staying those claims in favor of arbitration. (ECF No. 119).

On February 24, 2017, Defendant filed the Motion to Compel Arbitration. (ECF No. 172). On March 20, 2017, Plaintiff filed a response in opposition. (ECF No. 174). On March 27, 2017, Defendant filed a reply. (ECF No. 175).

On April 4, 2017, Defendant filed the second Motion to Compel Arbitration. (ECF No. 176). On April 24, 2017, Plaintiff filed a response in opposition. (ECF No. 177). On May 1, 2017, Defendant filed a reply. (ECF No. 178).

On May 8, 2017, Defendant filed the Motion for Summary Judgment. (ECF No. 179). On May 22, 2017, Plaintiff filed a response. (ECF No. 180). On May 26, 2017, Defendant filed a reply. (ECF No. 181).

///

**MOTIONS TO COMPEL ARBITRATION (ECF Nos. 172, 176)**

Defendant filed two Motions to Compel Arbitration: Defendant filed the Motion to Compel Arbitration of the claims of 13,221 opt-in Plaintiffs on February 24, 2017 (ECF No. 172), and Defendant filed the Motion to Compel Arbitration of the claims of 609 additional opt-in Plaintiffs on April 4, 2017 (ECF No. 176). Defendant contends that the opt-in Plaintiffs at issue in both motions are subject to the same three arbitration agreements. *See* ECF No. 172-1 at 11; ECF No. 176-1 at 11 (stating that the opt-in Plaintiffs in both motions e-signed the agreement in one of three ways: through the WIS Intranet, through the Taleo on-boarding system, and through Ultipro, an on-boarding system that Defendant began using in or about late 2014). In its first Motion to Compel Arbitration, Defendant contends that it "anticipates filing a subsequent motion with respect to a few additional opt-ins after it completes a further search for [Dispute Resolution Agreements]." (ECF No. 172-1 at 7 n.1). Defendant contends that this entire action should be stayed pending the resolution of *Morris v. Ernst & Young, LLP*, 834 F.3d 975 (9th Cir. 2016), *cert granted*, 137 S. Ct. 809 (Jan. 13, 2017). In its opposition to Defendant's second Motion to Compel Arbitration, Plaintiff contends that "[t]he motion to which this opposition responds seeks arbitration of another 609 individuals under identical grounds, for a total of 13,830 individual arbitrations. It is unclear why [Defendant] filed two separate motions[.]" (ECF No. 177 at 7 n.1). The Court has reviewed the parties' briefing on both Motions to Compel Arbitration and addresses the motions together in this Order.

**I. Legal Standard**

Under the Federal Arbitration Act ("FAA"), arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such

agreement." 9 U.S.C. § 4. The "[FAA] 'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985)). "The FAA therefore calls on courts to 'rigorously enforce agreements to arbitrate.'" *Samson v. NAMA Holdings, LLC*, 637 F.3d 915, 923 (9th Cir. 2011) (quoting *Dean Witter*, 470 U.S. at 221). An arbitration agreement "is subject to the FAA" if it is "a contract evidencing a transaction involving commerce[.]" *Chiron*, 207 F.3d at 1130; 9 U.S.C. § 2.

"[I]n deciding whether to compel arbitration, a court must determine two 'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)). "Because of the federal policy in favor of arbitration, ambiguities regarding the scope of arbitrable issues are to be resolved in favor of arbitration." *Boardman v. Pac. Seafood Group*, 822 F.3d 1011, 1019 (9th Cir. 2016).

**II. Discussion**

**A. Existence of a Valid Agreement to Arbitrate**

The DRAs are subject to the FAA because they are each "a contract evidencing a transaction involving commerce[.]" 9 U.S.C. § 2; *see Chiron*, 207 F.3d at 1130. Plaintiff does not contest the existence of the DRAs in its opposition to the pending Motions to Compel Arbitration. Brenda Vaughn, the Director of Employment Practices in Defendant's Human Resources Department, states in her declaration that she "personally oversaw the search of [Defendant's] secure servers, or the secure servers [Defendant] was provided access to, in order to determine if any of the Opt-Ins who opted in since December 5, 2015 electronically signed a [DRA]." (Vaughn Decl. at ¶ 3; ECF No. 172-4 at 2). Vaughn attaches to her declaration the names of 5,147 opt-in

Plaintiffs that signed the Intranet version of the DRA, 92 opt-in Plaintiffs that signed the Taleo version of the DRA, and 7,982 opt-in Plaintiffs that signed the Ultipro version of the DRA. *See* ECF No. 172-4 at 9-125, 138-140, 189-370.[1] The Court finds that "there is an agreement to arbitrate between the parties[.]" *Brennan*, 796 F.3d at 1130.

To decide whether to compel opt-in Plaintiffs to arbitration pursuant to the DRAs, the Court must also determine "whether a valid agreement to arbitrate exists[.]" *Chiron*, 207 F.3d at 1130. Plaintiff contends that there are three reasons why the DRAs should not be enforced: (1) the DRAs are unenforceable following the Court of Appeals' decision in *Morris*; (2) the DRAs prohibit opt-in Plaintiffs from vindicating substantive rights under the FLSA; and (3) DRAs signed after December 4, 2014 should not be enforced due to a pending litigation clause in those agreements.

### i. Validity of the DRAs Following *Morris*

Defendant contends that this Court should compel each of the opt-in claims to individual arbitration because several of the opt-in Plaintiffs signed a version of the Dispute Resolution Agreement ("DRA") previously reviewed and approved by this Court in a prior order. Defendant contends that the opt-in Plaintiffs it seeks to compel to arbitration in these motions did not opt-out, and that the opt-in Plaintiffs seek to bring claims in this action arising out of their employment with Defendant. Defendant contends that the DRAs provided each signatory an opportunity to opt-out of its terms within fourteen days of signing the DRAs, and that none of the opt-in Plaintiffs chose to opt-out of the DRAs. Plaintiff contends that the DRAs are unenforceable following the Court of Appeals' decision in *Morris*, and the existence of an 'opt-out' clause in the DRAs does not permit their enforcement.

In *Morris*, the defendant moved to compel arbitration in response to the plaintiffs' putative class action brought under the FLSA. 834 F.3d at 979. The

---

[1] In her declaration included in Defendant's second Motion to Compel Arbitration, Vaughn attaches the names of the one additional opt-in Plaintiff that signed the Intranet version of the DRA, 16 additional opt-in Plaintiffs that signed the Taleo version of the DRA, and 592 additional opt-in Plaintiffs that signed the Ultipro version of the DRA. *See* ECF No. 176-2 at 9, 14, 45-60.

plaintiffs contended that the arbitration agreement they had signed, which included a concerted action waiver preventing the plaintiffs' from bringing claims against the defendant in a class action, violated the National Labor Relations Act ("NLRA"). *Id.* The Court of Appeals found that the arbitration agreement's concerted action waiver violated the NLRA and was unenforceable because it "prevent[ed] concerted activity by employees in arbitration proceedings, and . . . prevent[ed] the initiation of concerted legal action anywhere else." *Id.* at 983-84. The Court of Appeals concluded that "the NLRA establish[es] the right of employees to pursue work-related legal claims, and to do so together." *Id.* at 982. The Court of Appeals stated, "The NLRA precludes contracts that foreclose the possibility of concerted work-related legal claims. An employer may not condition employment on the requirement that an employee sign such a contract." *Id.* at 990.

The Court of Appeals distinguished the arbitration agreement at issue in *Morris* from the arbitration agreement at issue in *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072 (9th Cir. 2014). The Court of Appeals stated that "there was no § 8 violation in *Johnmohammadi* . . . because the employee there could have opted out of the individual dispute resolution agreement and chose not to." *Id.* at 982 n.4. In *Johnmohammadi*, the arbitration agreement agreed to by the plaintiff "informed her that she agreed to resolve all employment-related disputes through arbitration unless she returned an enclosed form within 30 days electing, as the form put it, 'NOT to be covered by the benefits of Arbitration.' [The plaintiff] did not return the opt-out form." 755 F.3d at 1074. The Court of Appeals found that there was no "basis for concluding that [the defendant] interfered with or restrained [the plaintiff] in the exercise of her right to file a class action. If she wanted to retain that right, nothing stopped her from opting out of the arbitration agreement." *Id.* at 1075-76.

In this case, Vaughn attaches to her declaration copies of the DRAs signed by opt-ins Plaintiffs. The Intranet DRA signed by 5,147 opt-ins includes a section titled "Class Collective and Representative Action Waiver" which states,

> Both you and the Company agree to bring any dispute in arbitration on an individual basis only, and not on a class, collective, or private attorney general representative basis. There will be no right or authority for any dispute to be brought, heard or arbitrated as a class, collective, representative or private attorney general action, or as a member in any purported class, collective, representative or private attorney general proceeding[.]

(ECF No. 172-4 at 127).[2] *See also* ECF No. 176-2 at 11 (copy of Intranet DRA from second Motion to Compel Arbitration includes Class, Collective and Representative Action Waiver).

The Class Collective and Representative Action Waiver Section in each version of the DRA at issue restricts Plaintiff's "substantive right to pursue concerted work-related legal claims" similar to the waiver contained in the arbitration agreement in *Morris*. *Morris*, 834 F.3d at 983. *See id.* at 983-984 ("§ 7 and § 8 [of the NLRA] make the terms of the concerted action waiver unenforceable. The 'separate proceedings' clause prevents concerted activity by employees in arbitration proceedings, and the requirement that employees only use arbitration prevents the initiation of concerted legal action anywhere else."); *see also Bui v. Northrop Grumman Sys. Corp.*, CASE NO. 15cv1397-WQH-WVG, 2016 WL 7178921, at *4 (S.D. Cal. Dec. 9, 2016) (Hayes, J.) (finding arbitration clause agreed to by the plaintiff to be "similarly restrictive" of the plaintiff's ability to bring a concerted action as the agreement invalidated in *Morris*).

However, the DRAs in this case contain an opt-out clause. In each version of the DRA at issue in the Motions to Compel Arbitration, the DRA includes the following section:

> **3. Employee's Right to Opt Out of Arbitration. Arbitration is not a mandatory condition of your employment at the Company, and therefore you may submit a form stating that you wish to opt out and not be subject to this Agreement.** If you report to work after you receive this Agreement, you have accepted the terms of this Agreement. However, you have 14 days after you receive this Agreement to opt out of

---

[2] The Intranet version of the DRA, the Taleo version of the DRA and the Ultipro version of the DRA in both Motions to Compel Arbitration also include the Class Collective and Representative Action Waiver Section. *See* ECF No. 172-4 at 142, 390; ECF No. 176-2 at 11, 16, 80.

>this Agreement, whether you remain employed as of that time or even if you are no longer employed as of that time. To opt out of arbitration you must submit a signed and dated statement on an Opt Out Form ("Form") that can be obtained from the Company's Intranet under Forms/Human Resources/Recruiting/Arbitration Agreement Opt Out Form, or you can prepare your own form slating that you are opting out of this Agreement. In order to be effective, the signed and dated Form or other opt out notice that you prepare must be faxed to WIS International Arbitration Agreement Opt Out at (866) 529-2540 within 14 days of your receipt of this Agreement. If you timely opt out as provided in this Section 3, you will not be subject to any adverse employment action as a consequence of that decision and may pursue available legal remedies without regard to this Agreement. You have the right to consult with counsel of your choice concerning this Agreement. A copy of the Arbitration Agreement can be obtained from the Company's Intranet under Forms/Human Resources/Recruiting/Arbitration Agreement.

(ECF No. 172-4 at 127).[3] In her declaration, Vaughn states that

>As described in Section 3 of each version of the DRA, WIS provided employees with the opportunity to opt out of the DRA. Through the DRA, WIS notified employees of a dedicated fax number and email address where s/he could send an Opt Out Form. I personally checked the documents sent to the dedicated fax number and email address and WIS has no record any of the opt-ins listed on Exhibits 1, 3 or 6 opting out of the DRA.

(Vaughn Decl. at ¶ 13; ECF No. 172-4 at 6).

In *Johnmohammadi*, the Court of Appeals found that the plaintiff was not prevented from opting out because the agreement provided the plaintiff with thirty days to return an enclosed form electing to opt-out from the agreement, and "no threats of termination or retaliation were made to influence her decision" of whether to submit an opt-out form. 755 F.3d at 1074; *see also id.* at 1076 (finding that "[the defendant] merely offered [the plaintiff] a choice: resolve future employment-related disputes in court, in which case she would be free to pursue her claims on a collective basis; or resolve such disputes through arbitration, in which case she would be limited to pursuing her claims on an individual basis. In the absence of any coercion influencing the decision, we fail to see how asking employees to choose between those two options can be viewed as interfering with or restraining their right to do anything.").

---

[3] The Intranet version of the DRA, Taleo version of the DRA and the Ultipro version of the DRA in both Motions to Compel Arbitration also include the Employee's Right to Opt Out of Arbitration Section. *See* ECF No. 172-4 at 142, 390; ECF No. 176-2 at 11, 16, 80.

District courts in this circuit have applied the Court of Appeals' reasoning in both *Morris* and *Johnmohammadi* to conclude that an arbitration agreement does not violate the NLRA when it provides employees with a meaningful opportunity to opt-out of the agreement. *See Bonner v. Michigan Logistics Inc.*, — F. Supp. 3d —, No. CV–16–03662–PHX–GMS, 2017 WL 1407675, at *8 (D. Ariz. Apr. 20, 2017) (stating, "Other courts have found that *Morris* does not bar concerted action waivers when such a 30–day opt out period is provided[,]" and concluding that arbitration agreement with concerted action waiver and thirty-day opt-out provision was enforceable under the NLRA); *Echevarria v. Aerotek, Inc.*, Case No. 16-cv-04041-BLF, 2017 WL 24877, at *2 (N.D. Cal. Jan. 3, 2017) ("Courts in this district have applied *Morris* and *Johnmohammadi* to find that class action waivers contained in arbitration agreements are unenforceable where the employer does not provide employees with a meaningful opportunity to opt out of the arbitration agreement."); *Gonzalez v. Ceva Logistics U.S., Inc.*, Case No. 16-cv-04282-WHO, 2016 WL 6427866, at *5 (N.D. Cal. Oct. 31, 2016) (stating that "the Ninth Circuit has consistently upheld agreements where employers provide a clear, even if potentially burdensome, process for opting out[,]" but concluding that the arbitration agreement at issue violated the NLRA because "[the defendant] has not shown that its arbitration agreement presented applicants with the same meaningful opportunity to opt out" as the plaintiff in *Johnmohammadi*).

The opt-out clause in this case provided employees with fourteen days to submit an opt-out form. The opt-out clause allowed employees to fill out and submit an opt-out form from the Intranet, or to submit an opt-out form prepared by the employee. The DRA stated that an employee could submit an opt-out form via fax or email, and stated that submitting an opt-out form would not subject the employee to any adverse employment action. The Court finds that Plaintiff's contentions that the opt-out procedure is "irrational, confusing, unnecessarily cumbersome, and appears designed to discourage its workers from preserving their rights" are unsupported by the facts and relevant law. (ECF No. 174 at 24). *See Mohamed v. Uber Techs.*, 848 F.3d 1201,

1210-12 (9th Cir. 2016) (remanding with instructions to enforce arbitration clause that required employees to opt-out either in person or by overnight delivery service, and stating, "[w]hile we do not doubt that it was more burdensome to opt out of the arbitration provision by overnight delivery service than it would have been by e-mail, the contract bound Uber to accept opt-outs from those drivers who followed the procedure it set forth. There were some drivers who did opt out and whose opt-outs Uber recognized. Thus, the promise was not illusory."); *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199-1200 (9th Cir. 2002) (affirming order to enforce arbitration clause providing employees with thirty days to decide to opt-out); *see also McElrath v. Uber Techs., Inc.*, Case No.16-cv-07241-JSC, 2017 WL 1175591, at *3 (N.D. Cal. Mar. 30, 2017) ("Here, the class action waiver's prohibition against concerted activity cannot be reconciled with *Morris*. As in *Morris*, the [arbitration a]greement does not provide any opportunity for a prospective employee to opt-out, and was instead a mandatory condition of Plaintiff's employment.").

Plaintiff further contends that this Court should defer to and rely on the National Labor Relations Board's ("NLRB's") decision in *On Assignment Staffing Servs., Inc.*, 362 N.L.R.B. No. 189 (2015), *review granted, decision reversed by On Assignment v. NLRB*, No. 15-60642, 2016 WL 3685206 (5th Cir. June 6, 2016) to find the DRA is unenforceable. In *On Assignment*, the NLRB ruled that an arbitration agreement containing a ten-day opt-out procedure violated the NLRA, and stated that the agreement's opt-out procedure improperly

> requires that employees choose one of two options. They can become bound by the unlawful Agreement--and forever waive their Section 7 rights--by doing nothing. Or employees can notify the Respondent that they have elected to opt out of the unlawful Agreement and thus, retain the ability to exercise rights fundamental to the [NLRA].

*On Assignment*, 362 N.L.R.B. at *5-7.

Plaintiff contends that the opt-out clause in this case cannot be enforced based on the NLRB's decision. The NLRB's decision in *On Assignment* was ultimately appealed to and reversed by the Fifth Circuit, and courts in this circuit have applied

*Johnmohammadi* and *Morris*, even after the *On Assignment* decision was issued, to conclude that an arbitration agreement with an opt-out clause may be enforced so long as employees are given a reasonable opportunity to opt-out. *See Mohamed*, 848 F.3d at 1211-12; *Bonner*, 2017 WL 1407675, at *8; *Galvan v. Michael Kors USA Holdings, Inc.*, Case No. CV 16-07379-BRO (AFMx), 2017 WL 253985, at *9 (C.D. Cal. Jan. 19, 2017) (concluding that arbitration agreement was enforceable under the NLRA despite *Morris* because "Plaintiff was not required to sign the Arbitration Agreement as a condition of employment; rather a 30-day opt-out period was in place."). The Court declines to apply *On Assignment* in this action.

The Court finds that the opt-out clause provided opt-out Plaintiffs with a meaningful opportunity to opt-out of the DRAs. The Court concludes that the Court of Appeals' decision in *Morris* does not prevent the enforcement of the DRAs.

### ii. The DRAs Prohibit Employees from Vindicating Substantive Rights

Plaintiff contends that the DRAs are not valid because they have "the unlawful object of precluding thousands of its low-wage workers from vindicating their substantive rights to minimum wage and overtime under the FLSA." (ECF No. 174 at 15). Plaintiff contends that the opt-in Plaintiffs would suffer "extreme administrative and financial barriers to any effective vindication of the FLSA claims of the 13,221 members of the collective" if they are forced to arbitrate their claims on an individual basis. *Id.* at 16.

The Supreme Court has stated that it may "invalidate, on 'public policy' grounds, arbitration agreements that 'operat[e] . . . as a prospective waiver of a party's right to pursue statutory remedies.'" *Am. Exp. Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2310 (2013) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985)). An arbitration clause will be enforced "so long as the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum[.]" *Mitsubishi*, 473 U.S. at 637.

In *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79 (2000), the

Supreme Court rejected a challenge to the enforcement of an arbitration agreement where the plaintiff contended that she was "unable to vindicate her statutory rights in arbitration" because "the arbitration agreement's silence with respect to costs and fees creates a 'risk' that she will be required to bear prohibitive arbitration costs if she pursues her claims in an arbitral forum[.]" *Green Tree*, 531 U.S. at 90. The Supreme Court stated that "[t]he 'risk' that [the plaintiff] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement[,]" and "[t]o invalidate the agreement on that basis would undermine the 'liberal federal policy favoring arbitration agreements.'" *Id.* at 91 (quoting *Moses H. Cone Mem'l Hospital*, 460 U.S. 1, 24 (1983)). The Supreme Court stated that when "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Id.* at 92. In *Green Tree*, the Supreme Court rejected the plaintiff's challenge because her claim that arbitration costs would be prohibitive was based on "unfounded assumptions[,]" "unsupported statements," and a "speculative" risk "that [the plaintiff] will be saddled with prohibitive costs[.]" *Id.* at 90 n.6, 91.

The Court finds that Plaintiff's contentions concerning the potential cost of arbitration to be "too speculative to justify the invalidation of an arbitration agreement." *Id.* at 91. The Court determines that finding the DRAs to be invalid on this ground "would undermine the 'liberal federal policy favoring arbitration agreements.'" *Id.* (quoting *Moses H. Cone*, 460 U.S. at 24). The Court declines to invalidate the DRAs on the basis of the potentially prohibitive cost of arbitrating the opt-in Plaintiffs' claims on an individual basis. *See also Am. Exp. Co.*, 133 S. Ct. at 2309 (finding that Congress's approval of Federal Rule of Civil Procedure 23, setting forth the rules governing class action matters in federal court, did not "establish an entitlement to class proceedings for the vindication of statutory rights.").

### iii. Enforcement of DRAs Signed After December 4, 2014

Defendant contends that several of the opt-in Plaintiffs it seeks to compel to

1  arbitration signed a version of the DRA that notified the individual of the existence of
2  this action and that if they did not opt-out, they could not participate in this action.
3  Plaintiff contends that several DRAs should not be enforced because a number of opt-in
4  Plaintiffs signed a version of the DRA that contained a clause exempting this action
5  from the agreement to arbitrate. Plaintiff contends that the approximately 317 opt-in
6  Plaintiffs who signed DRAs containing this clause after December 4, 2014, when
7  Plaintiff filed the complaint in this action, should not be compelled to arbitration. (ECF
8  No. 177 at 16 n.7).

9  Joshua G. Konecky, one of the attorneys of record for Plaintiffs in this action,
10 states in his declaration that approximately 300 DRAs[4] with signature dates after
11 December 4, 2014 contain a Pending Litigation Section that is the same or similar to the
12 following:

> This Agreement, however, shall not apply to litigation between you and the company pending in a state or federal court as of the date of your receipt of this Agreement in which you and the Company are named parties or in which you are a putative class member or actual class member.

16 (Konecky Decl. at ¶ 7; ECF No. 174-1 at 3). Defendant contends that the above section
17 only applies when a plaintiff is a putative class member or actual class member.
18 Defendant contends this action did not become a collective action until Plaintiff filed
19 an opt-in form on January 29, 2015, and this action did not become a putative class
20 action until the Second Amended Complaint was filed on March 14, 2016.

21 The Supreme Court has stated, "The FAA directs courts to place arbitration
22 agreements on equal footing with other contracts, but it 'does not require parties to
23 arbitrate when they have not agreed to do so.'" *E.E.O.C. v. Waffle House, Inc.*, 534
24 U.S. 279, 293 (2002) (quoting *Volt Info. Sciences, Inc. v. Bd. of Trustees*, 489 U.S. 468,
25 478 (1989)). "[T]he FAA merely requires enforcement of what the parties have agreed
26 to[.]" *Volt*, 489 U.S. at 485. "While ambiguities in the language of the agreement

---

[4] In its opposition to the second Motion to Compel Arbitration, filed after the Konecky declaration, Plaintiff contends it has discovered an additional seventeen DRAs signed after December 4, 2014. *See* ECF No. 177 at 16 n.7.

should be resolved in favor of arbitration . . . we do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." *Waffle House*, 534 U.S. at 294.

Plaintiff commenced this action by filing a collective action complaint on December 4, 2014. (ECF No. 1). Plaintiff filed a first amended collective action complaint on May 29, 2015. (ECF No. 26). Plaintiff filed the Second Amended Collective and Class Action Complaint on March 14, 2016. (ECF No. 82). The Pending Litigation Section contained in the DRAs signed after December 4, 2014 identified in the Konecky declaration applies to "pending" litigation where the employee is "a putative class member or actual class member." (Konecky Decl. at ¶ 7; ECF No. 174-1 at 3). Defendant concedes that this action became "a putative class action [on] March 14, 2016 when the Second Amended Complaint was filed[.]" (ECF No. 178 at 6 n.6).

While the Court interprets the DRAs with the Supreme Court's instruction that "ambiguities in the language of the agreement should be resolved in favor of arbitration," the Court cannot "override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract[.]" *Waffle House*, 534 U.S. at 294. In the Second Amended Complaint, Plaintiff brought claims "as a class action on behalf of himself and all others similarly situated pursuant to Federal Rule of Civil Procedure 23[,]" consisting of "[a]ll individuals currently or formerly employed by WIS as an Auditor, inventory associate, or other equivalent hourly position in the United States at any time during the applicable statutes of limitations." (ECF No. 82 at ¶ 60). The Court determines that there is no ambiguity as to the Pending Litigation Section in the DRAs.

Pursuant to Defendant's concession that this action became "a putative class action [on] March 14, 2016 when the Second Amended Complaint was filed[,]" the Court concludes that as of March 14, 2016 this action was pending and the employees who signed the DRAs after that date were putative class members. (ECF No. 178 at 6

n.6); *see* Konecky Decl. at ¶ 7; ECF No. 174-1 at 3; *Waffle House*, 534 U.S. at 294. Based on the plain language of the DRAs and "what the parties have agreed to," the Court denies the Motions to Compel Arbitration as to opt-in Plaintiffs who signed a DRA on or after March 14, 2016[5] that contains the Pending Litigation Section identified in the Konecky declaration (Konecky Decl. at ¶ 7; ECF No. 174-1 at 3), and which does not specifically exclude this action.[6] *Volt*, 489 U.S. at 485.

### B. Whether the Arbitration Agreements Cover this Dispute

To determine whether an arbitration agreement encompasses a particular dispute, courts must "look first to whether the parties agreed to arbitrate a dispute, not to general policy goals, to determine the scope of the agreement." *Waffle House*, 534 U.S. at 294. The Court of Appeals has stated that "'where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that [a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Int'l Alliance v. InSync Show Prods., Inc.*, 801 F.3d 1033, 1042 (9th Cir. 2015) (quoting *AT&T Techs., Inc. v. Comms. Workers of Am.*, 475 U.S. 643, 650 (1986) (quotation marks omitted)).

In this case, the DRAs state that "Employee and Company agree that any dispute or controversy covered by this Agreement or arising out of, relating to, or concerning the validity, enforceability or breach of this Agreement . . . shall be resolved by binding arbitration[.]" (ECF No. 172-4 at 127, 142, 390; ECF No. 176-2 at 11, 16, 80). The

---

[5] In its opposition to the second Motion to Compel Arbitration, Plaintiff includes several DRAs signed after March 14, 2016 that each contain a Pending Litigation Section identical to the language in the Konecky declaration (Konecky Decl. at ¶ 7; ECF No. 174-1 at 3). *See* ECF No. 177-4 at 4-6, 9-15.

[6] Defendant contends that some versions of the DRA contain a Pending Litigation Section stating that agreeing to the DRA prevent would prevent the employee from "participat[ing] in the *Hose* lawsuit either as a plaintiff or as a class member." (ECF No. 172-1 at 13 n.10); *see also* Vaughn Decl. at ¶ 8; ECF No. 172-4 at 4-5. Based on the record of this case, the Court does not decide whether the claims of any opt-in Plaintiffs who signed a version of the DRA specifically prohibiting the employee from participating in this action (i.e., "the *Hose* lawsuit") are compelled to arbitration.

Second Amended Complaint asserts FLSA and other common law claims against Defendant based on "the failure of WIS to compensate Plaintiff and other similarly situated hourly, non-exempt inventory Auditors for work WIS has suffered and permitted them to perform for its own benefit as their employer." (ECF No. 82 at ¶ 1). The Court concludes that the plain language of the DRAs encompasses this dispute.

**III. Conclusion**

Therefore, the Court GRANTS IN PART and DENIES IN PART the Motions to Compel Arbitration (ECF Nos. 172, 176). The Motions to Compel are DENIED as to opt-in Plaintiffs who signed a DRA on or after March 14, 2016 that contains a Pending Litigation Section that is the same or similar to the section identified in the Konecky declaration (Konecky Decl. at ¶ 7; ECF No. 174-1 at 3). The Motions to Compel are GRANTED as to all other opt-in Plaintiffs.[7]

**MOTION FOR SUMMARY JUDGMENT (ECF No. 179)**

Defendant contends that 465 of the opt-in Plaintiffs overtime claims under the FLSA are without merit because the undisputed material facts establish that they are barred by the applicable statute of limitations. In response, Plaintiff does not oppose the Defendant's Motion for Summary Judgment as to 464 of the 465 opt-in Plaintiffs. Plaintiffs contend that one opt-in Plaintiff, Latoya Smith, has an overtime claim under the FLSA that is not barred by the statute of limitations. In support, Plaintiff submits a declaration by Latoya Smith stating that her last day with Defendant was sometime in August 2014, which does not fall outside of the statute of limitations. *See* Smith Decl. at ¶ 4; ECF No. 180-2 at 2). In its reply, Defendant requests that the Court "defer judgment on Ms. Latoya Smith's time-barred claims while the parties meet and confer in an attempt to resolve the issue." (ECF No. 181 at 2).

Pursuant to Plaintiff's non-opposition and after reviewing the parties' briefing

---

[7] The Court declines to issue a stay of this entire action pending the Supreme Court's decision in *Morris*. Defendant has not demonstrated that it will be forced to litigate claims that will later be sent to arbitration in the absence of a stay. *See Clinton v. Jones*, 520 U.S. 681, 708 (1997) ("The proponent of a stay bears the burden of establishing its need.").

1  on the Motion for Summary Judgment, the Court DENIES the Motion as to Latoya
2  Smith and GRANTS the Motion as to the remaining 464 opt-in Plaintiffs without
3  prejudice, with leave to refile.

**CONCLUSION**

IT IS HEREBY ORDERED that the Motions to Compel Arbitration filed by Defendant (ECF Nos. 172, 176) are GRANTED IN PART and DENIED IN PART. The Motions are DENIED as to any opt-in Plaintiffs who signed a DRA on or after March 14, 2016 that contains a Pending Litigation Section that is the same or similar to the section identified in the Konecky declaration (Konecky Decl. at ¶ 7; ECF No. 174-1 at 3). The Motions are GRANTED as to all other opt-in Plaintiffs named in the Motions to Compel Arbitration (ECF Nos. 172, 176), and pursuant to 9 U.S.C. § 3, the claims of these opt-in Plaintiffs are STAYED in favor of arbitration. Pursuant to 9 U.S.C. § 4, the parties are directed to proceed to arbitration in accordance with the terms of the DRAs.

IT IS FURTHER ORDERED that the Motion for Summary Judgment filed by Defendant (ECF No. 179) is GRANTED IN PART and DENIED IN PART. The Motion is DENIED as to Latoya Smith without prejudice, with leave to refile. The Motion is GRANTED as to the remaining 464 opt-in Plaintiffs identified in the Motion for Summary Judgment.

DATED: July 19, 2017

**WILLIAM Q. HAYES**
United States District Judge