Todd M. Schneider, SBN 158253
Joshua Konecky, SBN 182897
Leslie H. Joyner SBN 262705
Nathan Piller, SBN 300569
SCHNEIDER WALLACE
COTTRELL KONECKY WOTKYNS LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
Telephone:  (415) 421-7100
Facsimile:  (415) 421-7105

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD HOSE, on his own behalf, and on behalf of all others similarly situated, | Case No. 3:14-cv-02869-WQH-AGS |
| Plaintiffs, | **COLLECTIVE AND CLASS ACTION** |
| vs. | **THIRD AMENDED COMPLAINT FOR VIOLATIONS OF:** |
| WASHINGTON INVENTORY SERVICE, INC., d/b/a WIS INTERNATIONAL, a California corporation, RETAIL SERVICES WIS, CORPORATION, a Delaware Corporation; and CENTRE LANE PARTNERS, LLC, a New York Limited Liability Company. | **(1) THE FAIR LABOR STANDARDS ACT (FLSA), 29 U.S.C. §201, *et seq*.; and** |
| | **(2) COMMON LAW** |
| Defendants. | **JURY TRIAL DEMANDED** |

Plaintiff Richard Hose, by and through his undersigned attorneys, hereby brings this Collective Action Complaint on behalf of all others similarly situated, against Defendants Washington Inventory Service, Inc., doing business as WIS International; Retail Services WIS Corporation; and Centre Lane Partners, LLC (collectively "Defendants" or "WIS"), and alleges as follows:

# I.    NATURE OF THE CASE

1.    This is a collective action under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"); and a class action brought under Federal Rules of Civil Procedure, Rule 23, arising out of the failure of WIS to compensate Plaintiff and other similarly situated hourly, non-exempt inventory Auditors for work WIS has suffered and permitted them to perform for its own benefit as their employer.  As a result of the systematic off-the-clock work, Plaintiff and other similarly situated Auditors regularly have worked more than 40 hours per week without receiving overtime compensation for numerous workweeks during their employment.  During many workweeks, the number of hours worked while off-the-clock has been so substantial that the average hourly rate (net pay in a workweek divided by the total hours worked during the workweek) for Plaintiff and other Auditors also has fallen below the minimum wage.

2.    WIS employs Plaintiff and thousands of other similarly situated employees in the United States as auditors, inventory associates, and/or other functionally equivalent hourly positions (collectively "Auditors" and/or "the Collective").  These positions are not exempt from the overtime or minimum wage provisions of the FLSA.   Nonetheless, as a matter of policy and practice, WIS has failed to compensate Plaintiff and the other similarly situated Auditors minimum wage and overtime because it has systematically failed to fully record and compensate them for all their hours worked.  This uncompensated, off-the-clock work is integral and indispensable to the principal activities of the job.  WIS's policy and practice has deprived Plaintiff and the Collective of substantial amounts of wages, including overtime and minimum wage, which they have earned and to which they are entitled.

3.    Plaintiff and the other similarly situated Auditors in the United States have regularly worked in excess of 40 hours per week.  For many of these weeks, Plaintiff and the Auditors actually recorded 40 or more hours on WIS's timesheets,

but then had to work off-the-clock for additional hours beyond the recorded time.  For example, the pay stubs currently in Mr. Hose's possession indicate that he recorded more than 40 hours of work during the following weeks:   July 26 through August 1, 2013; August 23-29, 2013; September 6-12, 2013; September 27, 2013 through October 3, 2013; and October 4-10, 2013.  These are only examples based on the pay stubs currently in Mr. Hose's possession—there are numerous other weeks as well.  Regardless, this recorded time did not include the time that Mr. Hose spent on several categories of tasks that he and the other Auditors routinely performed while off-the-clock as a result of WIS's general operating practices and procedures, as described more fully below.  The off-the-clock hours therefore included uncompensated overtime hours.

4.   During other weeks, Plaintiff and the Auditors were scheduled for and recorded less than 40 hours in the week, but nonetheless worked substantial additional hours off-the-clock, resulting in total work hours exceeding 40 in the week.   As just one example, the pay stubs currently in Mr. Hose's possession indicate that he worked 71.6 hours during the two-week pay period covering August 30, 2013 through September 12, 2013.  Again, this recorded time did not include the 12-28 hours per week of time that Mr. Hose spent on several categories of tasks that he and the other Auditors routinely performed while off-the-clock as a result of WIS's general operating practices and procedures, as described more fully below.  Thus, even during weeks in which Plaintiff and the other Auditors recorded less than 40 hours of work, their total hours exceeded 40 in the week.  Not only would the overtime hours go completely uncompensated, but the "gap" hours – the hours worked between the recorded hours and 40 hours in a week – also went uncompensated.

5.   Because Plaintiff and the Auditors regularly worked 12-28 hours off-the-clock per week, their regular hourly rates of pay during several weeks dipped below

the applicable federal minimum wage rate of $7.25 per hour.  As just one example, the pay stubs currently in Mr. Hose's possession indicate that he recorded 61.1 hours and was compensated with $482.21 during the pay period covering September 13-26, 2013.  This works out to an hourly rate of $7.89.  During that pay period, Mr. Hose worked 7 inventories, and estimates that he worked at least 4 hours per inventory off-the-clock.  This works out to 28 hours of unpaid, off-the-clock work.  When combined with the 61.1 hours of recorded time, Mr. Hose actually worked approximately 89.1 hours during this two-week pay period.  Accordingly, Mr. Hose's effective hourly rate during that pay period (his net pay of $482.21 divided by his 89.1 total hours of work) was just $5.41 per hour, which fell well below the applicable federal minimum wage rate of $7.25 per hour.

6.     By failing to maintain accurate records of all hours worked, failing to pay overtime wages, and even failing to pay minimum wage, WIS has operated and continues to operate in violation of the FLSA.

7.     Plaintiff, on behalf of himself and all others similarly situated, seeks compensation and credit for all unrecorded and uncompensated work time, including overtime, liquidated damages and/or all other relief permitted by law.  Plaintiff requests reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## II.     JURISDICTION AND VENUE

8.     The FLSA authorizes private rights of action to recover damages for violation of the FLSA's wage and hour provisions.  29 U.S.C. § 216(b).

9.     This Court has federal question jurisdiction in this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the FLSA.  The Court also has jurisdiction under 28 U.S.C. § 1332(a)(1), because the amount in controversy in this action exceeds $75,000, exclusive of interests and costs, and because the parties are residents of different states.

10.     Venue is proper under 28 U.S.C. §1391(b) and (c), because Defendant has its headquarters and principal place of business in this Judicial District.

### III.   PARTIES

11.     Plaintiff, Richard Hose, is a resident of Sherman, Texas in Grayson County.  Plaintiff worked as an Auditor in the Dallas, Texas region and elsewhere between approximately March 2013 and November 2013.

12.     WIS employed Mr. Hose as an Auditor and Mr. Hose held this same job position since he began working for WIS in March 2013.  WIS terminated Mr. Hose's employment in November 2013.

13.     The Collective Action members, including Plaintiff, are persons who have worked as Auditors for WIS in the United States at any time beginning three years before the filing of this Complaint.

14.     Defendant Washington Inventory Service is a California corporation with its principal place of business in San Diego, California.  Washington Inventory Service, doing business as WIS International, does business in the State of California and nationwide.  Washington Inventory Service's United States headquarters is located at 9265 Sky Park Court, Suite 1000, San Diego, CA 92123, which is within the jurisdiction of this Court.

15.     Defendant Retail Services WIS, Inc. is a Delaware Corporation. Retail Services WIS was formed on or around April 11, 2017.

16.     Defendant Centre Lane Partners, LLC is a New York Limited Liability Corporation. Centre Lane Partners is a New York-based private equity firm engaged in credit and distressed investing, corporate finance, mergers & acquisitions, restructuring and operations. According to Bloomberg, "[t]he firm typically invests between $5 million to $100 million in equity and between $5 million to $20 million in debt. It seeks to invest in companies with sales value between $20 million to $500

million and EBITDA (Earnings Before Interest, Taxes, Depreciation and Amortization) up to $50 million that have leading market positions and sustainable competitive advantages in their respective niches. It prefers to take a majority stake." Centre Lane Partners' headquarters is located at One Grand Central Place, 60 East 42nd Street, Suite 1250, New York, NY 10165.Defendant Washington Inventory Service and Defendant Retail Services WIS at all relevant times have been engaged in the business of inventory counting services in the United States.

17.   Throughout this Complaint, any reference to "Defendants," "Defendant," or "WIS" is intended to refer to all Defendants jointly.

## IV.   FACTUAL ALLEGATIONS

### A. Background, schedules and pay rates

18.   WIS is an international corporation that provides inventory/data collection and merchandising services to large retail stores across the United States.  WIS is the second-largest inventory services company worldwide, and has more than 200 offices worldwide.

19.   WIS was created in April of 2005 from the merging of two inventory businesses: (1) Western Inventory Service (founded in 1967, and Canada's largest inventory service in 2005), and (2) Washington Inventory Service (founded in 1953).

20.   WIS contracts with retail stores to count the stores' inventory.  WIS has employed thousands of Auditors—including Mr. Hose—in the United States.

21.   All Auditors—including Plaintiff—have shared a common job description.  The principal job duty of Auditors is to travel to retail stores and physically count the stores' inventories.

22.   WIS has paid Auditors—including Plaintiff—by the hour and has classified them as "non-exempt" employees who are entitled to minimum wage and overtime compensation when they work overtime as defined by the FLSA.

23.   All Auditors—including Plaintiff—receive standardized employee handbooks from WIS when they begin work.  All auditors—including Plaintiff—must acknowledge their receipt of the handbooks.

24.   In the standardized employee handbooks, WIS has set forth its commitment to compensate its employees for all "time worked," which it defines as "all time that an employee is required to perform work for the company."

25.   WIS has compensated Plaintiff and its other Auditors at the federal minimum wage rate for time spent traveling and attending crew briefings that occur prior to the inventory counts, and at or slightly above the minimum wage for time spent counting inventory.  For example, the pay stubs currently in Mr. Hose's possession indicate that WIS compensated him at a rate of $7.25 per hour for time spent traveling and attending crew briefings, and at a rate of $8.50 per hour for time spent counting inventory.

26.   Auditors ordinarily work at a different retail store every day of work, often far away from their homes.  For example, Mr. Hose's home location was in Sherman, Texas, but on several occasions he was required to make a 325 mile journey to Lubbock, Texas, to perform his auditing work for WIS.

27.   Plaintiff and the other Auditors have worked over 40 hours in a week on numerous occasions.  In many of the weeks in which Plaintiff and the other Auditors have worked over 40 hours, they actually recorded over 40 hours merely in on-the-clock work.  This recorded time, however, did not include the numerous off-the-clock hours WIS required and/or suffered and permitted them to work each week, as described in more detail below.  These hours are all uncompensated overtime hours. During other weeks, Plaintiff and the other similarly situated Auditors recorded fewer than 40 hours in on-the-clock work, but because of the numerous off-the-clock hours WIS has required and/or suffered and permitted them to work each week, they

actually worked over 40 hours during several of those weeks.  These off-the-clock hours are also uncompensated.

28.    Even during weeks in which Plaintiff and the other Auditors have worked fewer than 40 hours, WIS still has failed to compensate them for all their work time, as described in more detail below.  As a result, WIS has appreciated the benefit of the labor provided by the Auditors without paying them for the full value of these services. By failing to compensate Plaintiff and the other Auditors for all the hours it requires them to work, WIS has breached the terms of its standardized agreements with Plaintiff and the other Auditors, which are memorialized in the standardized handbooks and policies that WIS posts on the company's intranet.

**B. Off-the-clock work, including time estimates**

29.    WIS has directed and encouraged its Auditors—including Mr. Hose—to gather at predetermined meeting sites and travel together as teams with their supervisors to the job sites in a WIS-provided vehicle.  The group transportation is designed to benefit WIS by helping to ensure that its workforce arrives together in advance of the inventories and readies itself as a team to begin the inventories in a more efficient fashion than if the Auditors arrived individually.

30.    As a result, Auditors—including Mr. Hose—have been required to arise early in the morning to drive from their home to the meeting site in time to travel with the team of fellow Auditors and a supervisor on what is often a 2 or more hour journey to the job site.  They have had to leave their personal vehicles at the meeting site while the team of Auditors and a supervisor travel to the job site in WIS-provided vehicles.

31.    WIS's policy is that it will compensate Auditors at minimum wage for time spent traveling in the WIS-provided vehicle, but only after the first hour of travel time.  WIS's policy is that it will not compensate them at all for the first hour of travel

time.  This travel time is substantial.  For instance, the pay stubs currently in Mr.

Hose's possession indicate that during the two-week pay period covering May 10-23,

2013, he recorded over 16 hours of time traveling with the audit team in the WIS-

provided vehicle, not including the unrecorded travel time of up to 2 or more hours

per inventory.  In addition, WIS does not keep accurate records of the time Auditors

spend traveling to and from the job sites.

32.    After arriving at the inventory sites, Auditors—including Mr. Hose—have

been required to attend regular pre-shift meetings called "crew briefings" before the

start of the inventories.  WIS's policy is that the Auditor's compensable time begins at

the start of these crew briefings.  On the relatively few occasions where there is no

crew briefing, the Auditor's compensable time begins when the team begins counting

the inventory.

33.    WIS has required its Auditors—including Mr. Hose—to arrive at the job

site at least fifteen minutes before the crew briefing to unload and set up their

equipment.  In fact, because Auditors travel together in a WIS-provided vehicle, they

often arrive as a group well in advance of the fifteen minute deadline–sometimes as

much as an hour or more in advance of the crew briefings.  The geographic and

logistical constraints prevent Auditors from using the time they spend waiting for their

own benefit.  Nonetheless, WIS does not pay Auditors for the time they are waiting at

the site for the crew briefings and inventory counts to begin. Nor has WIS kept

accurate records of the time Auditors—including Mr. Hose—have spent waiting after

arriving at the site and before actually being clocked-in or credited for their work

time.

34.    During the uncompensated wait-time at the beginning of the shift, WIS

has also required its Auditors to engage in an array of productive, work-related tasks.

These tasks have included: unloading equipment (including, but not limited to,

computers, printers, and ladders) from the WIS-provided vehicle; receiving and preparing their electronic scanners used for counting the inventory; setting up the equipment inside the store; and booting up the computer operating systems.  WIS has not paid its Auditors—including Mr. Hose—for this work.

35.    Mr. Hose and other similarly situated Auditors regularly have spent between 15 minutes and 1 hour or more per inventory in uncompensated time, performing prep work and otherwise engaged to be waiting for the crew briefing and/or inventory to start.

36.    As stated above, WIS's policy has been to pay Plaintiff and the other Auditors "crew briefing" time at minimum wage and to pay counting time at a higher hourly rate.  However, WIS has not contemporaneously or individually recorded the amount of time the Auditors spend in the crew briefings, or the time that the crew briefings and the inventory counting begins.  Instead, WIS has predetermined the time that the Auditors will be credited for the crew briefings and has uniformly applied that time to the Auditors as a group regardless of the amount of time actually spent in the crew briefings.  In fact, Auditors actually begin their counting work before the predetermined crew briefing time ends.   As a result, WIS has compensated Auditors—including Mr. Hose—at a rate lower than their regular rate while they perform their regular inventory counting duties.

37.    WIS's policy and practice has been for the Auditors—including Mr. Hose—to be off-the-clock after completing the inventory counts.  However, this does not account for the time Auditors must spend shutting down and repacking their work gear and equipment, and returning them to designated stock rooms or the company-provided vehicles—a process that routinely takes 10-20 minutes or more per inventory.  All this time is off-the-clock and uncompensated as well.

38.    Auditors also must wait additional time off-the-clock for their supervisors to conduct "wrap-up" tasks and meetings.  These "wrap-up" tasks include: verifying the work performed by the Auditors during the day; completing paperwork; inputting the Auditors' work time for payroll purposes; printing voluminous reports showing the details of the inventories; submitting these voluminous reports to WIS's corporate headquarters and management personnel at the client retail store; and meeting with the retail store managers regarding discrepancies between the day's count and the stores' inventory estimates.  Auditors, most of whom are beholden to company transportation, must wait for their supervisors to complete this wrap-up process, including the meetings with the retail store managers, before they can leave.  During this waiting time, the Auditors also are subject to being called back by their supervisors for assistance.  In fact, Auditors frequently perform additional scanning and counting while off-the-clock as a result of information gained during the "wrap-up" process and meetings with the retail managers.  Also during this time, WIS requires Auditors to remove inventory tags previously attached to store shelves during the physical inventory counts.  The wrap-up meetings and tasks often result in 1-2 hours or more of off-the-clock time per inventory for Mr. Hose and the other similarly situated Auditors.

39.    WIS often has not provided a physical time clock at the job sites or in the company-provided vehicles.  WIS has relied on its audit supervisors to keep track of the Auditors' hours worked at job sites where no physical time clock is present, and during travel time.  The audit supervisors have not had a process for tracking the Auditors' time individually or accurately, but instead have recorded the compensable time as estimates for the group as a whole.  Moreover, WIS has rewarded audit supervisors for faster overall inventory counts, and disciplines them for slower overall inventory counts.  As a result of this policy, audit supervisors regularly have

1  underreported the working hours of Mr. Hose and the other similarly situated

2  Auditors.

3      40.  For some inventories, WIS has provided a timekeeping mechanism that

4  allows Auditors to clock themselves in and out, although not until after performing the

5  pre-shift work described above, and before performing the post-shift work described

6  above.  Even then, WIS often has located the time clock such a long distance from the

7  entrance of the large retail stores (where the Auditors are performing their pre-shift

8  activities and otherwise waiting for the opportunity to clock-in) that the Auditors have

9  regularly had to walk for several more minutes after their pre-shift set-up and waiting

10 time just to clock in.  This is the case even if the crew briefing and inventory counting

11 takes place closer to the entrance.  At the end of the day, the Auditors have again had

12 to spend additional time off-the-clock walking from the time-clocks at the back of the

13 stores to the exit, in addition to the other time spent packing up their equipment as

14 described above.  Also, because of the large number of Auditors at the work site, the

15 first Auditors who have clocked out have often had to wait significant time off-the-

16 clock for the remaining Auditors to clock out, before they can all leave the work site

17 together in the company-provided vehicles.  WIS has not compensated Plaintiff and

18 its Auditors for this additional walking and waiting time at the start or end of the shift.

19      41.  In sum, WIS has regularly required and/or suffered and permitted Mr.

20 Hose and other similarly situated Auditors to perform the following tasks off-the-

21 clock, for each inventory they work:  Up to 2 hours or more of group travel time

22 between designated meet sites and inventory sites in WIS-provided vehicles; 15

23 minutes to an hour of time prepping the inventories and otherwise engaged to be

24 waiting for them to begin; 10-20 or more minutes of post-inventory clean-up time;

25 several minutes walking through the retail stores to clock in and out; and up to and

26 sometimes over 2 hours having to wait for the supervisor to conduct their wrap-up

27

THIRD AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT
*Richard Hose v. WIS International, Inc.*

activities, and the additional inventory tasks that often occur after the wrap-up. Accordingly, the Auditors—including Mr. Hose—routinely have worked up to and sometimes over 4 hours off-the-clock during each inventory.

42.    Mr. Hose and similarly situated Auditors have worked an approximate range of 3 to 7 inventories per week.  Accordingly, WIS has suffered and permitted them to work up to and over 12 to 28 hours off-the-clock each week.

**C. Uncompensated overtime hours**

43.    WIS's standard operating policy and practice has been to require, and/or suffer and permit, Mr. Hose and the other similarly situated auditors to perform these work activities off-the-clock on a regular basis for each inventory.  In addition to this off-the-clock work, there have been numerous weeks during which Mr. Hose and other similarly situated auditors have actually recorded 40 or more hours of work on-the-clock.  For example, the pay stubs currently in Mr. Hose's possession show that he recorded over 40 hours during the following weeks: July 26 through August 1, 2013; August 23-29, 2013, September 6-12, 2013; September 27, 2013 through October 3, 2013; and October 4-10, 2013.  This does not include the numerous other weeks in which Mr. Hose recorded over 40 hours of work, but for which he does not currently possess paystubs.  The off-the-clock time worked by Mr. Hose and other similarly situated auditors during such weeks was uncompensated overtime.  The specific workweeks identified above are only illustrations. There are many additional workweeks during which Plaintiff and other similarly situated Auditors logged 40 or more hours of work, and then had to work additional hours off-the-clock.

44.    There also have been workweeks during which Mr. Hose and other similarly situated auditors have logged less than 40 hours per week, but nonetheless have worked well over 40 hours during the week due to the high number of off-the-clock hours,  For example, Mr. Hose's paystubs indicate that he recorded: 67.5 on-

the-clock hours during the two-week pay period covering August 16-29, 2013; 71.6 on-the-clock hours during the two-week pay period covering August 30, 2013 through September 12, 2013; and 61.1 on-the-clock hours during the two-week pay period covering September 13-26, 2013.  Given that Mr. Hose regularly spent 12-28 hours off-the-clock each week, as described above, his total hours during these two-week pay periods exceeded 80 hours, and his total hours worked during each week within each of these two-week pay periods exceeded 40.  Many of these hours worked—including both those worked before reaching the 40-hour mark and those worked after reaching the 40-hour mark—were spent off-the-clock and uncompensated.  Again, these are only examples based on the pay stubs currently in Mr. Hose's possession.

### D. Uncompensated straight time hours

45.    Even during weeks in which the Auditors have not worked 40 or more hours, WIS has still failed to compensate them at their regular rate of compensation for all the hours they work, due to the regular off-the-clock work described above. WIS has been unjustly enriched by obtaining the benefit of this labor without paying Plaintiff and Class members for the full value of their services.  Moreover, WIS's failure to pay even straight time wages for this off-the-clock work violates the terms and promises made to its Auditors in the company's standardized employee manuals and policies.

46.    In its standardized employee manuals and policies, WIS makes a uniform commitment to its Auditors that they will be compensated for all "time worked." WIS defines "time worked" in these manuals and policies as "all time that an employee is required to perform work for the company."  While this definition of "time worked" is narrower than the "suffer and permit" standard under the FLSA, WIS regularly fails to pay the auditors for this time by requiring them to perform the off-the-clock work described above.

47.     WIS has regularly required its Auditors—including Mr. Hose—to work off-the-clock performing the tasks described above, including loading and unloading of equipment before the inventory start time; waiting at meet sites and inventory sites for supervisors to arrive and perform their tasks; uncompensated travel and transportation of equipment; and equipment loading and other wrap-up activities after the recorded end time for the inventories.

48.     WIS's failure to pay the Auditors for these work activities violates the representations and promises made to them in WIS's standardized employee manuals and written policies, which WIS distributes and posts on the company intranet, regardless of whether the employees have worked more or less than 40 hours in the workweek.

49.      For those weeks during which the Auditors have worked fewer than 40 hours, WIS owes them straight-time compensation for all time worked while off-the-clock.

**E.  Effective pay rates falling below minimum wage**

50.     Because the Auditors—including Mr. Hose—have regularly worked so many hours per week without compensation, their hourly rates have often fallen below the minimum wage rate mandated by the FLSA.  For example, Mr. Hose's paystubs indicate that he recorded 61.1 hours and compensated with $482.21 during the pay period covering September 13-26, 2013.  This works out to an hourly rate of $7.89.  During that pay period, Mr. Hose worked 7 inventories, and estimates that he worked at least 4 hours per inventory off-the-clock.  This works out to 28 hours of unpaid, off-the-clock work during the two-week pay period.  When combined with the 61.1 hours of recorded time, Mr. Hose actually worked approximately 89.1 hours during this two-week pay period.  Accordingly, Mr. Hose's effective hourly rate during that pay period (his net pay of $482.21 divided by his 82.1 total hours of work)

was just $5.41 per hour, which fell well below the applicable federal minimum wage rate of $7.25 per hour.  This is just one of numerous instances in which the effective hourly rate of Plaintiff and the other similarly situated Auditors fell below the minimum wage.

### E. Summary of WIS's conduct

51.   WIS has known and/or acted with reckless disregard that its timekeeping policies and procedures have caused its Plaintiff and similarly situated Auditors to not be compensated for all hours worked, but nonetheless has failed to change its policies and provide its Auditors with the wages to which they are entitled by law.  WIS has been put on notice of the unlawfulness of its policies, and yet it has proceeded with a uniform policy of failing to compensate its Auditors for all hours worked in the face of analogous challenges made in other prior and pending lawsuits.  In fact, WIS has demonstrated a pattern of paying millions of dollars to settle previous litigation on this very issue, rather than bringing its policies and practices into compliance with applicable law.

52.   WIS also has mislead Plaintiff and similarly situated Auditors into believing that they have been properly compensated.  Throughout all relevant times, WIS has assured the Auditors that they are being properly compensated.  WIS also has failed to provide information to the Auditors regarding their rights under the FLSA.

53.   WIS, in the past and currently, has failed to compensate its Auditors—including Mr. Hose—for all hours worked.

54.   WIS is engaged in commerce.

55.   Plaintiff and similarly situated Auditors have been either (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) employed in an enterprise engaged in commerce or in the production of goods for commerce.

56.    Plaintiff and similarly situated Auditors have been employees whose job duties do not meet any of the exemptions set forth in the FLSA.  Therefore, their jobs have been, in fact and law, not exempt from the minimum wage and overtime requirements of the FLSA.

57.    WIS has directed and/or suffered and permitted Auditors—including Mr. Hose—to work in excess of forty (40) hours per week throughout the course of their employment.

WIS has failed to pay the Auditors—including Mr. Hose—a minimum wage and overtime pay at a rate of one and one-half times their regular rate for hours worked in excess of forty (40) hours during a workweek.

## V.    COLLECTIVE AND CLASS ACTION ALLEGATIONS

58.    Plaintiff brings counts I and III as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b), on behalf of himself and a proposed Collective of similarly situated employees defined as:

> "All individuals currently or formerly employed by WIS as an Auditor, inventory associate, or other equivalent hourly position in the United States at any time from three years before the filing of this Complaint through resolution of this action, and: (a) who did not file a timely consent to join form in Berte v. WIS Holding Corp, et al., Case No. 3:07-cv-01932, or (b) who filed a timely consent to join form in Berte, but whose claims here nonetheless accrued after the settlement period in that case (i.e., after March 24, 2014)." (the "Collective").

59.    Plaintiff, individually, and on behalf of other similarly situated employees defined above, seeks relief on a collective basis challenging WIS's policy and practice of failing to compensate Plaintiff and other hourly, non-exempt Auditors for work Defendant suffers and permits them to perform for its own benefit, including overtime and minimum wage compensation.  The number and identity of other similarly situated persons yet to opt-in and consent to be party-plaintiffs may be determined

from the records of WIS, and potential opt-ins may be easily and quickly notified of the pendency of this action.

60.    Plaintiff brings Counts IV through VI as a class action on behalf of himself and all others similarly situated pursuant to Federal Rule of Civil Procedure 23.  The Class that Plaintiff seeks to represent is composed of and defined as follows:

> "All individuals currently or formerly employed by WIS as an Auditor, inventory associate, or other equivalent hourly position in the United States at any time during the applicable statutes of limitations. (the "Class")

61.   **Numerosity**.   WIS has employed thousands of Auditors in the United States from 2011 through the present.  Class members are therefore far too numerous to be individually joined in this lawsuit.

62.   **Existence and Predominance of Common Questions**.  Common questions of law and/or fact exist as to the members of the California Class and, in addition, common questions of law and/or fact predominate over questions affecting only individual members of the California Class.  The common questions include the following:

(a) Whether WIS has entered into standard employment contracts with its auditors;

(b) Whether WIS is contractually obligated to compensate Auditors for all the hours it requires them to work, including during weeks in which they do not work 40 or more hours;

(c) Whether WIS has breached its standard employment contracts with the Auditors by failing to pay them for all the hours they work;

(d) Whether WIS's payroll, timekeeping, and compensation policies have caused it to be unjustly enriched;

(e) Whether Plaintiff and the Class are entitled to damages and equitable relief, including, but not limited to, restitution and a preliminary and/or

permanent injunction, and if so, the proper measure and formulation of such relief.

63.   **Typicality**.  Plaintiffs' claims are typical of the claims of the Class. WIS's common course of conduct in violation of law as alleged herein has caused Plaintiff and the proposed Class to sustain the same or similar injuries and damages. Plaintiff's claims are thereby representative of and co-extensive with the claims of the proposed Class.

64.   **Adequacy**.  Plaintiffs who have filed and/or will file a consent to join form pursuant to 29 U.S.C. § 216(b) notice process may also be adequate representatives of the Class because their interests do not conflict with the interests of the members of the class they seek to represent.  Plaintiffs have retained counsel competent and experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously.  Plaintiffs and their counsel will fairly and adequately protect the interests of members of the Class.

65.   **Superiority**.  The class action is superior to other available means for the fair and efficient adjudication of this dispute.  The injury suffered by each member of the Class, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against WIS economically feasible. Individualized litigation increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

66.   In the alternative, the Class may be certified because:

(a) the prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to

individual members of the Class which would establish incompatible standards of conduct for WIS; and

(b) WIS has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

## VI.    CAUSES OF ACTION

### COUNT I
**(Against All Defendants)**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT,**
**29 U.S.C. § 201, et seq. FAILURE TO PAY MINIMUM WAGES**

67.    Plaintiff, on behalf of himself and all others similarly situated, realleges as if fully set forth, each and every allegation set forth herein.

68.    At all times relevant to this action, WIS was an "employer" under the FLSA, 29 U.S.C. § 203(d), subject to the provisions of 29 U.S.C. § 201, *et seq*.

69.    At all times relevant to this action, the Auditors—including Mr. Hose—have been "employees" of WIS within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

70.    The FLSA requires that employers whose employees are engaged in commerce, engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce pay employees at least the minimum wage for all time worked.  29 U.S.C. § 206(a).

71.    At all times relevant to this action, WIS has been subject to the requirements of the FLSA because it is an enterprise engaged in commerce and its employees are engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 206(a)(1).

72.    At all times relevant to this action, the Auditors—including Mr. Hose—have been entitled to the rights, protections, and benefits provided under the FLSA

because they are engaged in commerce or employed in an enterprise engaged in commerce, within the meaning of the FLSA, 29 U.S.C. §§ 201, *et seq.*

73.    At all times material herein, the federal minimum wage has been $7.25/hour.

74.    Plaintiff and all similarly situated employees are victims of a uniform and company-wide compensation policy that systematically denies Auditors their statutorily mandated minimum wages.  WIS has failed to pay Plaintiff and similarly situated Auditors the minimum wages required by 29 U.S.C. § 206 because WIS required the Auditors to perform work without pay, which caused their regular rate for all hours worked to fall below the minimum wage rate mandated by the FLSA.  This uniform policy, in violation of the FLSA, has been applied to all Auditors employed by WIS throughout the United States.

75.    For example, the pay stubs currently in Mr. Hose's possession indicate that he recorded 61.1 hours and was compensated with $482.21 during the pay period covering September 13, 2013 to September 26, 2013, but Mr. Hose estimates that he worked at least 28 hours off-the-clock during that two-week pay period.  This works out to approximately 89.1 hours worked during this two-week pay period.  Accordingly, Mr. Hose's effective hourly rate during that pay period (his net pay of $482.21 divided by his 89.1 total hours of work) was just $5.41 per hour, which fell well below the applicable federal minimum wage rate of $7.25 per hour.  Again, this is only one of numerous instances in which the effective hourly rate of Plaintiff and the other similarly situated Auditors fell below the minimum wage.

76.    Plaintiff and the Collective are entitled to the full statutory minimum wages required by 29 U.S.C. §§ 206 for all periods in which they worked for WIS in the three years preceding the filing of this Complaint, along with all applicable penalties, liquidated damages, and other relief.

77.    Plaintiff and all similarly situated employees are victims of a uniform and company-wide compensation policy that systematically denies Auditors their statutorily mandated minimum wages.  This uniform policy, in violation of the FLSA, has been applied to all Auditors employed by WIS throughout the United States.

78.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).  WIS knew or showed reckless disregard for whether its conduct was prohibited by the FLSA.  Plaintiff and all similarly situated employees are therefore entitled to all damages for the limitations period beginning three years preceding the filing of this Complaint, plus periods of equitable tolling.

79.    The FLSA provides that a private action may be brought by an employee or employees for the payment of federal minimum wages and for an equal amount in liquidated damages in any court of competent jurisdiction.  29 U.S.C. § 216(b). Moreover, Plaintiff may recover attorneys' fees and costs incurred in enforcing his rights.  *Id.*

80.    Employers subject to the FLSA must "make, keep, and preserve" accurate records of all hours worked and the wages, hours, and other conditions and practices of employment.  29 U.S.C. § 211(c).  It is unlawful for any person to violate § 211(c). 29 U.S.C. § 215(a)(5).

81.    29 C.F.R. § 516.2 and 29 C.F.R. § 825.500 further require that every employer shall maintain and preserve payroll or other records containing, without limitation, the total hours worked by each employee each workday and total hours worked by each employee each workweek.

82.    WIS has failed to maintain records accurately, as required by the aforementioned statutes and regulations, and failed to furnish Plaintiff and similarly

situated Auditors statements accurately showing the hours they worked during the relevant time period.

83.   Where an employer's records are inaccurate or inadequate, employees need only produce sufficient evidence to show the amount and extent of the work as a matter of just and reasonable inference in order to prove they were improperly compensated.  *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946).  If an employer is unable to rebut the reasonableness of this inference, the court may award damages to the employee, even if the result "be only approximate."  *Id.*

84.   Plaintiff and the Collective are entitled to their minimum wages plus an additional equal amount in liquidated damages, costs, and reasonable attorneys' fees. 29 U.S.C. § 216(b).

## COUNT II
### (Against All Defendants)
### VIOLATION OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201, et seq. FAILURE TO PAY OVERTIME WAGES

85.   Plaintiff, on behalf of himself and all others similarly situated, realleges as if fully set forth, each and every allegation set forth herein.

86.   The FLSA requires that employers whose employees are engaged in commerce, engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce pay employees overtime wages at one and one-half their regular rate for hours worked in excess of forty (40) hours during a workweek.  29 U.S.C. § 207.

87.   WIS violated the FLSA by failing to pay Auditors—including Mr. Hose—for all time worked, including overtime pay, because WIS required its Auditors to perform work without being compensated, and Auditors regularly work in excess of forty (40) hours per week.

88.   For example, the paystubs in Mr. Hose's possession indicate that he actually recorded over 40 hours during numerous weeks, including the weeks of: July

26 through August 1, 2013; August 23-29, 2013, September 6-12, 2013; September 27, 2013 through October 3, 2013; and October 4-10, 2013.  This does not include the 12-28 hours of off-the-clock work that Mr. Hose estimates WIS required and/or suffered and permitted him to work each workweek.  Again, these are merely illustrations; there are many additional workweeks during which Plaintiff and other similarly situated Auditors logged 40 or more hours of work, and then had to work additional hours off-the-clock.

89.    During other weeks, Plaintiff and other Auditors recorded fewer than 40 hours, but actually worked over 40 hours because of the approximately 12-28 off-the-clock hours they worked per week.  For example, the pay stubs in Mr. Hose's possession indicate that he recorded the following amounts of hours during the following two-week pay periods: 67.5 on-the-clock hours during the two-week pay period covering August 16 through August 29; 71.6 on-the-clock hours during the two-week pay period covering August 30, 2013 through September 12, 2013; and 61.1 on-the-clock hours during the two-week pay period covering September 13, 2013 through September 26, 2013, among other pay periods.  Because Mr. Hose regularly spent as many as 12-28 hours performing work off-the-clock each week, as described above, his total hours during each of these two-week pay periods exceeded 80 hours, and his total hours during each week within each of these two-week pay periods exceeded 40.  Mr. Hose was not compensated for any of the overtime hours he worked during these two-week pay periods, among others.  Again, these are only examples based on the pay stubs currently in Mr. Hose's possession.

90.    Plaintiff and all similarly situated employees are victims of a uniform and company-wide compensation policy that systematically denies Auditors their statutorily mandated overtime premium pay.  This uniform policy, in violation of the

FLSA, has been applied to all Auditors employed by WIS throughout the United States.

91.   The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).  WIS knew or showed reckless disregard for whether its conduct was prohibited by the FLSA.  Therefore, Plaintiff and all similarly situated employees are entitled to all damages owed for the limitations period beginning three years preceding the filing of this Complaint, plus periods of equitable tolling.

92.   Plaintiff and other similarly situated employees are entitled to recover an award in the amount of their unpaid overtime compensation.

93.    Plaintiff and other similarly situated employees are entitled to recover an additional award of liquidated damages in an amount equal to the amount of unpaid overtime pay, and/or prejudgment interest at the applicable rate.  29 U.S.C. § 216(b).

94.   Employers subject to the FLSA must "make, keep, and preserve" accurate records of all hours worked and the wages, hours, and other conditions and practices of employment.  29 U.S.C. § 211(c).  It is unlawful for any person to violate § 211(c).  29 U.S.C. § 215(a)(5).

95.   29 C.F.R. § 516.2 and 29 C.F.R. § 825.500 further require that every employer shall maintain and preserve payroll or other records containing, without limitation, the total hours worked by each employee each workday and total hours worked by each employee each workweek.

96.   WIS has failed to maintain records accurately, as required by the aforementioned statutes and regulations, and failed to furnish Plaintiff and similarly situated Auditors with statements accurately showing the hours they worked during the relevant time period.

97.    Where an employer's records are inaccurate or inadequate, employees need only produce sufficient evidence to show the amount and extent of the work as a matter of just and reasonable inference in order to prove they were improperly compensated. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946).  If an employer is unable to rebut the reasonableness of this inference, the court may award damages to the employee, even if the result "be only approximate." *Id.*

98.    The Auditors—including Plaintiff—are entitled to their unpaid overtime wages plus an additional equal amount in liquidated damages, costs, and reasonable attorneys' fees.  29 U.S.C. § 216(b).

**COUNT III**
**(Against All Defendants)**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT,**
**29 U.S.C. § 201, et seq. FAILURE TO COMPENSATE FOR ALL HOURS WORKED**

99.    Plaintiff, on behalf of himself and all others similarly situated, realleges as if fully set forth, each and every allegation set forth herein.

100.  The FLSA requires that employers whose employees are engaged in commerce, engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce pay employees overtime wages at one and one-half their regular rate for hours worked in excess of forty (40) hours during a workweek.  29 U.S.C. § 207.

101.  The FLSA further requires that employers compensate employees for all straight time compensation at the employees' regular rate of pay for non-overtime hours worked, in addition to paying employees overtime wages at one and one-half their regular rate for hours worked in excess of forty (40) hours during the workweek.

102.  WIS has required that Mr. Hose and other similarly situated Auditors regularly work in excess of forty (40) hours per week, even during those weeks in which WIS only scheduled them to work less than 40 hours and recorded less than 40

hours of time for them.  During such weeks, Mr. Hose and other similarly situated auditors still would work more than 40 hours because of the approximately 12-28 hours of time spent off-the-clock per week.  This included off-the-clock work before reaching the 40-hour mark as well as off-the-clock work after reaching the 40-hour mark.

103.  At all times relevant to this action, WIS has engaged, and continues to engage, in a willful policy, pattern, or practice of requiring or permitting the Auditors—including Mr. Hose—to perform work without compensation, in the form of spending time and conducting activities for the benefit of WIS and that is an integral and indispensable part of the principal activities for which the Auditors are employed.

104.  As a result, WIS has failed to compensate the Auditors—including Mr. Hose—for all hours worked, in violation of the FLSA, 29 U.S.C. §§ 206, 207, and 215(a), and 29 C.F.R. § 778.315.

105.  Plaintiff, on behalf of himself and the Collective, seeks damages in the amount of their respective unpaid hours worked, plus liquidated damages, as provided by the FLSA, 29 U.S.C. § 216(b), and such other legal and equitable relief as the Court deems just and proper.

106.  Plaintiff, on behalf of himself and the Collective, seeks recovery of his attorneys' fees and costs of action from WIS, as provided by the FLSA, 29 U.S.C. § 216(b).

**COUNT IV**
**(Against All Defendants)**
**BREACH OF CONTRACT**
**(Common Law)**

107.  Plaintiff, on behalf of himself and all others similarly situated, realleges as if fully set forth, each and every allegation set forth herein.

108.  Defendant offered, and Plaintiff and those similarly situated accepted employment with Defendant pursuant to  the promises and terms set forth in WIS's standardized employee manuals and policies, creating a standardized contract of employment that applies equally to all Class Members.

109.  Concurrently with offering employment to Plaintiff and those similarly situated, Defendant provided standard employee handbooks and policies setting forth, among other things, a uniform promise and commitment by WIS to compensate Plaintiff and those similarly situated for all the hours it required them to work.

110.  Nevertheless, Defendant has not compensated Plaintiff and those similarly situated for all the hours it has required them to work.

111.  Plaintiff and Class members, by accepting employment and working for Defendant pursuant to the terms of the standardized written employment agreements, performed all conditions precedent to performance by Defendant.

112.  Defendant breached the contract by failing to comply with its terms.

113.  Plaintiff and Class members were damaged by Defendant's breach in that they were not compensated for all the hours they worked.

114.  Plaintiff and those similarly situated are entitled to recover all wages to which they are owed under the employment contract, and all other damages resulting from this breach of contract.

115.  Plaintiff, on behalf of himself and all others similarly situated, seeks all unpaid compensation, damages, penalties, interest and attorneys' fees and costs, recoverable under applicable law set forth below.

## COUNT V
### (Against All Defendants)
## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING
### (Common Law)

116.  Plaintiff, on behalf of himself and all others similarly situated, realleges as if fully set forth, each and every allegation set forth herein.

117.  Defendant offered, and Plaintiff and those similarly situated accepted employment with Defendant, creating a contract of employment.

118.  The contracts for employment were also memorialized in standardized, written documents, including the uniform employee manual and other standardized policies, which provided an explanation of the agreed-upon payment terms.  These documents set forth WIS's contractual commitment to compensate its Auditors for all the hours it requires them to work.

119.  In every contract or agreement there is an implied promise of good faith and fair dealing.  This means that that each party promises not do anything to unfairly interfere with the right of any other party to receive the benefits of the contract.

120.  Plaintiff and Class members, by accepting employment and working for WIS pursuant to the terms of the written employment contract, performed all conditions precedent to performance by Defendant.

121.  Contrary to WIS's uniform contractual commitment to compensate all Class Members for all the hours WIS requires them to work, WIS has not fully compensated Plaintiff and the other similarly situated Auditors for all  this time.  Accordingly, Defendant interfered with Plaintiff and its other Auditors' right to receive the benefits of the contract.

122.  Plaintiff and Class members were damaged by Defendant's breach in that they were not compensated for all the hours that WIS required them to work.

123.  Plaintiff and those similarly situated are entitled to recover all wages to which they are owed under the employment contract, and all other damages resulting from this breach of the implied covenant of good faith and fair dealing.

124.  Plaintiff, on behalf of himself and all others similarly situated, seeks all unpaid compensation, damages, penalties, interest and attorneys' fees and costs, recoverable under applicable law set forth below.

**COUNT VI**
**(Against All Defendants)**
**UNJUST ENRICHMENT**
**(Common Law)**

125.  Plaintiff, on behalf of himself and all others similarly situated, realleges as if fully set forth, each and every allegation set forth herein.

126.  Plaintiff and Class members conferred on Defendant the benefit of their labor.

127.  Defendant has appreciated the benefit of this labor without paying Plaintiff and Class members for the full value of their services.

128.  Defendant's acceptance of this benefit without paying Plaintiff and Class members for the full value of their services is inequitable under the circumstances detailed herein.

129.  Plaintiff and Class members are entitled to recover the reasonable value of their services, including all wages owed, and all other damages arising out of Defendant's failure to pay Plaintiff and Class members the full value of their services.

130.  Plaintiff, on behalf of himself and all others similarly situated, seeks all unpaid compensation, damages, penalties, interest and attorneys' fees and costs, recoverable under applicable law set forth below.

**COUNT VII**
**(Against Defendants Retail Services WIS and Centre Lane Partners)**
**SUCCESSOR LIABILITY**
**(Common Law)**

131.  Plaintiff, on behalf of himself and all others similarly situated, realleges as if fully set forth, each and every allegation set forth herein.

132.  Plaintiff is informed and believes that Defendant Retail Services WIS is a Delaware Corporation.

133.  Plaintiff is informed and believes and based thereon alleges that Defendant Centre Lane Partners is a New York-based private equity firm engaged in

credit and distressed investing, corporate finance, mergers & acquisitions, restructuring and operations.

134. Plaintiff is informed and believes and based thereon alleges that after months of negotiations and conducting due diligence, on or around June 8, 2017, Defendant Centre Lane Partners purchased Defendant Washington Inventory Service and formed Defendant Retail Services WIS.

135. Plaintiff is further informed and believes and based thereon alleges that on or around June 8, 2017 Washington Inventory Service terminated the employment of its employees including a number of the members of the collective, who were then rehired by Retail Services WIS/Centre Lane Partners the very next on June 9, 2017. Plaintiff is also informed and believes and based thereon alleges that that Retail Services WIS/Centre Lane Partners informed these members of the collective that upon rehiring "business would continue as usual" and that business in fact did continue as usual.

136. Plaintiff is informed and believes and based thereon alleges that that there is and at all relevant times has been a substantial continuity of business between the operations of Retail Services WIS/Centre Lane Partners and Washington Inventory Service. Specifically, Plaintiff alleges, among other facts, that (a) Retail Services WIS/Centre Lane Partners WIS have and continue to use the same facilities previously used by Washington Inventory Service; (b) Retail Services WIS/Centre Lane Partners have and continue to use the same workforce used by Washington Inventory Service who perform the same job as they performed for Washington Inventory Service; (c) Retail Services WIS/Centre Lane Partners have and continue to use the same managers and supervisors as previously used by Washington Inventory Service; (d) Retail Services WIS/Centre Lane Partners have and continue to use the equipment and provide the same services as those of Washington Inventory Service to

the former customers of Washington Inventory Service. In sum, Retail Services WIS/Centre Lane Partners retain the same managers / supervisors, business model, employees, equipment and facilities and provides the same services to the same clients as their predecessor, Washington Inventory Service.

137.  Plaintiff is informed and believes and based thereon alleges that prior to purchasing Washington Inventory Service, Retail Services WIS/Centre Lane Partners obtained notice of this litigation through, among other means, conducting due diligence evaluations. Plaintiff alleges that Retail Services WIS/Centre Lane Partners therefore had notice of potential liability when it acquired Washington Inventory Service. Retail Services WIS/Centre Lane Partners were therefore aware of the potential liabilities for the FLSA violations of Washington Inventory Service.

138.  Plaintiff is further informed and believes and based thereon alleges that Defendant and predecessor Washington Inventory Service is unable to provide relief directly for the violations of law alleged in this action. Indeed, in light of representations made by counsel for each Defendant herein, Washington Inventory Service no longer possesses assets capable of providing relief sufficient to make Plaintiff and the opt-ins whole.

139.  Additionally, the overall equities support the imposition of successor liability in this action. Plaintiff and the more than 14,000 opt-ins are low wage workers who have been denied their statutory rights to minimum wage and overtime under the FLSA. The successorship-doctrine's roots "lie in equity," and consequently "'fairness is a prime consideration in [its] application.' " *Steinbach v. Hubbard*, 51 F.3d 843, 846 (9th Cir. 1995) (quoting *Criswell v. Delta Air Lines, Inc.*, 868 F.2d 1093, 1094 (9th Cir. 1989)). Thus, "courts have recognized that extending liability to successors will sometimes be necessary in order to vindicate important statutory policies favoring employee protection." *Id.* at 845. Indeed, "[w]here employee

protections are concerned, 'judicial importation of the concept of successor liability is essential to avoid undercutting Congressional purpose by parsimony in provision of effective remedies.' " *Id.* (quoting *Wheeler v. Snyder Buick, Inc.*, 794 F.2d 1228, 1237 (7th Cir. 1986)); *Lowenthal v. Quicklegal, Inc.* 2016 WL 5462499, at *7 (N.D. Cal., Sept. 28, 2016).

140.   Accordingly, Plaintiff alleges that Retail Services WIS and Centre Lane Partners, are successors in interest of Washington Inventory Service and are therefore liable for the liabilities of Washington Inventory Service. Plaintiff seeks damages in the amount of his and the opt-ins' respective unpaid hours worked, including overtime, plus liquidated damages, as provided by the FLSA, 29 U.S.C. § 216(b) along with court costs, interest, and such other legal and equitable relief as the Court deems just and proper.

## VII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the proposed Collective he seeks to represent in this action, requests the following relief:

a)   For an order certifying that Counts I through III in this Complaint may be maintained as a collective action pursuant to 29 U.S.C. § 216(b) and that prompt notice of this action be issued to potential members of the Collective, apprising them of the pendency of this action, and permitting them to assert their FLSA claims;

b)   For an order equitably tolling the statute of limitations for the potential members of the Collective;

c)   For an order awarding Plaintiff and the Collective compensatory and statutory damages, including lost wages, earnings, and all other sums of money owed to Plaintiff and members of the Collective, together with interest on these amounts;

d)  For an order awarding Plaintiff and the Collective liquidated damages as provided under the FLSA;

e)  For an order certifying that Counts IV through VI of this Complaint be maintained as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of a class of WIS Auditors employed in the United States during the applicable statutes of limitations; and that notice of the pendency of this action be provided to members of the Class;

f)  For an order awarding Plaintiff and the Class compensatory and statutory damages, including lost wages, earnings, and all other sums of money owed to Plaintiff and members of the Class, together with interest on these amounts

g)  For an order directing WIS to identify, locate and restore to all current and former Auditors the restitution they are due for lost wages, earnings, and other sums of money, together with interest on these amounts;

h)  For a declaratory judgment that WIS has violated the terms of its standardized employment agreements and has been unjustly enriched as alleged herein;

i)  For pre- and post-judgment interest;

j)  For an award of reasonable attorneys' fees as provided by the FLSA;

k)  For all costs of suit; and

l)  For such other and further relief as this Court deems just and proper.

Respectfully submitted,

Dated:  August 7, 2017                      SCHNEIDER WALLACE
                                            COTTRELL KONECKY WOTKYNS LLP

                              By:    _____ /s/ Joshua Konecky _____
                                     JOSHUA KONECKY
                                     Attorney for Plaintiff Richard Hose and the
                                     Proposed Collective and Class

## **<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff Richard Hose, by and through his attorney, hereby demands a jury trial on all claims and issues for which Plaintiff, the Collective, and the Class are entitled to a jury.

Respectfully submitted,

Dated:  August 7, 2017

SCHNEIDER WALLACE
COTTRELL KONECKY WOTKYNS LLP

By:      /s/ *Joshua Konecky*
JOSHUA KONECKY
Attorney for Plaintiff Richard Hose and the
Proposed Collective and Class

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the attached document with the Clerk of the Court for the United States District Court, Southern District of California, by using the Court's CM/ECF system on August 7, 2017.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the Court's CM/ECF system.

Date: August 7, 2017                    Respectfully Submitted,


                                        /s/ *Joshua Konecky*
                                        Joshua Konecky (SBN 182897)
                                        SCHNEIDER WALLACE
                                        COTTRELL KONECKY WOTKYNS LLP
                                        2000 Powell Street, Suite 1400
                                        Emeryville, California 94608
                                        Telephone: (415) 421-7100
                                        Facsimile:  (415) 421-7105
                                        ccottrell@schneiderwallace.com

                                        Attorney for Plaintiffs