UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD HOSE, on his behalf, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WASHINGTON INVENTORY SERVICE, INC., d/b/a WIS INTERNATIONAL, a California corporation; RETAIL SERVICES WIS, INC., a Delaware Corporation; and CENTRE LANE PARTNERS, LLC, a New York Limited Liability Company,<br><br>Defendants. | Case No.: 14-cv-2869-WQH-AGS<br><br>**ORDER** |

HAYES, Judge:

The matters before the Court are Plaintiffs' Motion for Declaratory Relief and Sanctions (ECF No. 215); Plaintiffs' Applications to File Documents Under Seal (ECF Nos. 216, 228); and Defendants Retail Services WIS, Corporation (RSW) and Centre Lane Partners, LLC's (CLP) Joint Application to File Documents Under Seal (ECF No. 222).

**I.     Procedural Background**

On December 4, 2014, Plaintiff Richard Hose initiated this action by filing the Collective Action Complaint pursuant to the Fair Labor Standards Act ("FLSA") on behalf

of himself and others similarly situated against Defendant Washington Inventory Service Inc. (WIS). (ECF No. 1). On July 19, 2017, the Court granted in part and denied in part WIS's Motion to Compel Arbitration. (ECF No. 189). On August 7, 2017, Plaintiffs filed a Third Amended Complaint, adding RSW and CLP as Defendants. (ECF No. 194). The Third Amended Complaint, which is currently the operative complaint, asserts three claims for FLSA violations against all Defendants: (1) failure to pay minimum wages; (2) failure to pay overtime wages; and (3) failure to compensate for all hours worked; and four common law claims: (1) breach of contract; (2) breach of covenant of good faith and fair dealing; (3) unjust enrichment; and (4) successor liability against Defendants RSW and CLP. *Id.* On July 2, 2018, Defendant WIS filed for bankruptcy, and on July 3, 2018 a Notice of Automatic Stay pursuant to 11 U.S.C. § 362 was filed in this matter. (ECF No. 214).

On July 9, 2018, Plaintiffs filed a Motion for (1) Declaratory Relief in Light of AAA Request That Parties Seek Judicial Intervention on Questions Concerning Refusal by Defendants Retail Services WIS and Centre Lane Partners to Participate in Court Ordered Arbitrations and (2) Sanctions. (ECF No. 215). On July 9, 2018, Plaintiffs filed an accompanying Application to File Documents Under Seal. (ECF No. 216). On July 30, 2018, Defendants RSW and CLP filed Opposition (ECF No. 221) with an accompanying Application to File Documents Under Seal (ECF No. 222). On August 6, 2018, Plaintiffs filed a Reply (ECF No. 227) and an additional Application to File Documents Under Seal (ECF No. 228).

**II.    Plaintiffs' Motion for Declaratory Relief and Sanctions**

   **a. Facts**

Pursuant to this Court's July 19, 2017 Order compelling arbitration between Plaintiffs and WIS (ECF No. 189), Plaintiffs began submitting their individual arbitration demands to the American Arbitration Association (AAA) in April 2018. On July 2, 2018,

all claims as to Defendant WIS were stayed due to WIS's Chapter 11 bankruptcy filing.[1] RSW and CLP, added to this action after the Court's July 19, 2017 Order, have notified Plaintiffs of their position that RSW and CLP cannot be compelled to arbitration because they "are not covered by any arbitration order" (ECF No. 215-10). Plaintiffs now seek a court order:

> (1) [D]eclaring that Retail Services WIS and Centre Lane parties are bound as successors, affiliates, parents and/or subsidiaries of WIS under the arbitration agreements, and (2) ordering Retail Services WIS and Centre Lane Partners to follow the orders and determinations of AAA, including the payment of filing fees necessary to commence the individual arbitrations their predecessor compelled.

(ECF No. 215-1 at 7). Plaintiffs further request that:

> [S]hould the Court find that the arbitrations cannot proceed, Plaintiffs respectfully request that the Court set a hearing for a new scheduling order so that Plaintiffs can conduct discovery as to the claims of the 13,830 opt-ins (discovery earlier withheld by WIS on the grounds that it had to occur in arbitration) and set a hearing to determine sanctions against Retail Services WIS and/or Centre Lane Partners for attorneys' fees and costs incurred by Plaintiffs in opposing the motions to compel arbitration, as well as in preparing and submitting the individual arbitrations to AAA.

*Id.*

The parties have entered into the record certain details regarding the relationship between WIS, RSW and CLP. RSW was incorporated on April 11, 2017, in the state of Delaware. (ECF No. 215-4 at 2). CLP has a 55% ownership interest in RSW. (ECF No. 217-3 at 52). On June 8, 2017, WIS's assets were transferred to RSW pursuant to a foreclosure sale and asset purchase agreement. (ECF No. 223-2). Through the asset purchase agreement, WIS transferred its employees, managers, property, equipment, customers and business operations to RSW. (ECF Nos. 217-2, 217-3, 217-4, 223-2). This

---

[1] Plaintiffs contend that Retail Services WIS and Centre Lane Partners "are not Debtors in the bankruptcy proceeding and are not subject to the automatic stay." (ECF No. 215-1 at 5).

transfer included CEO James Rose and CFO Tom Compogiannis. (ECF Nos. 217-2, 215-18 at 2–3). A separate 2017 settlement agreement between WIS, CLP, and a third party describes the transfer of assets: "holder of WIS's first lien . . . will foreclose upon substantially all of the assets of WIS and sell those assets to Retail Services WIS Corporation, an affiliate of CLP created solely for the purpose of acquiring such assets . . . ." (ECF No. 217-1 at 2).

Describing the resulting relationship between the parties, RSW CFO Tom Compogiannis states in his declaration that "RSW is not currently and has never been a parent, subsidiary, affiliate, or agent of WIS." (Compogiannis Decl., ECF No. 223-1 ¶ 4). Compogiannis states in his declaration that "[a]s part of the Foreclosure Sale and Asset Purchase Agreement, RSW expressly did not assume any of the employee agreements or liabilities, including WIS's Dispute Resolution Agreement, that are the subject of Plaintiffs' Motion." (Compogiannis Decl., ECF No. 223-1 ¶ 5).

Mayank Singh, a Managing Director of CLP, declares that CLP "is not currently and has never been a parent, subsidiary, affiliate, or agent of WIS and has no contractual connection to WIS." (Singh Decl., ECF No. 221-8 ¶ 5). Singh declares that CLP "holds an ownership interest in an investment vehicle that holds a partial ownership interest in one of the ultimate indirect parent entities of RSW" but CLP "does not operate RSW's business and has no day-to-day involvement with the management of RSW's employees, clients, or operations." *Id.* ¶¶ 3, 6. CLP does, however, have a contract with RSW through which CLP provides RSW with "management services," including "participation in business and strategic planning . . . identifying and/or communicating with potential strategic partners . . . management strategy sessions regarding acquisitions or financings . . . [and] strategy and implementation of the growth activities of the Company . . . ." (ECF No. 217-5 at 2).

### b. Contentions of the Parties

Plaintiffs contend that Defendants RSW and CLP are bound by the WIS arbitration agreements and must participate in arbitration because the arbitration agreements "explicitly apply to claims between the opt-in Plaintiffs and WIS's affiliates, successors,

subsidiaries and/or parent companies." (ECF No. 215-1 at 17).[2] Plaintiffs contend that this Court should utilize the Black's Law Dictionary definition of the relative terms, and find that both RSW and CLP are an "affiliate[], successor[], subsidiar[y] and/or parent compan[y]" of WIS for the purposes of the arbitration agreements at issue.

Plaintiffs contend RSW is an affiliate and successor to WIS. Plaintiffs assert that RSW is an affiliate of WIS "by virtue of having acquired the assets of WIS under the ownership and control of [CLP]." (ECF No. 215-1 at 18). In support of their contention that RSW is a successor of WIS, Plaintiffs assert that after the sale, WIS transferred its employees, managers, property, equipment, customers and business operations to RSW pursuant to an asset purchase agreement. *See* ECF Nos. 217-2, 217-3, 217-4. Plaintiffs maintain that RSW "continues to carry out the business operations of WIS, is managed by [CLP] . . . [and] also performs the duties of the earlier WIS Corporation." (ECF No. 215-1 at 20).

Plaintiffs contend that CLP is an affiliate, parent, and successor of WIS. Plaintiffs assert that CLP is an affiliate or parent of WIS because "Centre Lane Partners purchased WIS in June 2017 and since at least that date, by virtue of this ownership, has had control over WIS. As just one example, Centre Lane Partners is a party to and engineer of the transition of the WIS business and assets to Retail Services WIS." *Id.* at 18. Plaintiffs assert that the arbitration agreements at issue were "'[a]ssets' under the terms of the sales agreement with WIS, [and CLP and RSW] were on full notice before and during the sale that WIS was using these contracts (as an asset) to compel the opt-in Plaintiffs to arbitration." (ECF No. 229 at 3). Plaintiffs also contend CLP is a successor to WIS because CLP "assumed WIS's interests through purchasing WIS's assets and are vested with the rights and duties of WIS." (ECF No. 217 at 19).

---

[2] The arbitration agreements state in relevant part: "This Agreement applies to Employee and Washington Inventory Service, Inc. dba WIS International, including its affiliates, successors, subsidiaries and/or parent companies ("Company") and survives the termination of Employee's employment with the Company." (ECF No. 215-6 at 2).

Defendants RSW and CLP contend that they "are not signatories" to the arbitration agreements signed by WIS, and are thus not bound by the WIS arbitration agreements. (ECF No. 221 at 9). Defendants contend that a party who "has not executed or explicitly assumed an arbitration agreement" cannot be "compelled to arbitrate based on the allegation that it is subject to successor liability for an FLSA claim." *Id.* at 10. RSW contends that it "is not currently and has never been a parent, subsidiary, affiliate, or agent of WIS." (Compogiannis Decl., ECF No. 223-1 ¶ 4). RSW contends that "the evidence cited by Plaintiff does not support a finding of successor status." (ECF No. 221 at 11). CLP contends that it "is not currently and has never been a parent, subsidiary, affiliate, or agent of WIS and has no contractual connection to WIS." (Singh Decl., ECF No. 221-8 ¶ 5). Mayank Singh declares that CLP "does not operate RSW's business and has no day-to-day involvement with the management of RSW's employees, clients, or operations." *Id.* ¶¶ 3, 6.

### c. Legal Standard

The Federal Arbitration Act ("FAA") permits "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States District Court . . . for an order directing that . . . arbitration proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4; *Chiron Corp. v. Ortho Diagnostic Sys., Inc.,* 207 F.3d 1126, 1130 (9th Cir. 2000). By its terms, the Act "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985). "The court's role under the Act is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp.*, 207 F.3d at 1130. "If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms." *Id.*

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Tech's, Inc. v. Commc'ns. Workers,* 475 U.S. 643, 648 (1986) (citation omitted). "In determining whether parties have agreed to arbitrate a dispute, [courts] apply 'general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration.'" *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1044 (9th Cir. 2009) (quoting *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir.1996)). "[N]onsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles." *Letizia v. Prudential Bache Sec., Inc.*, 802 F.2d 1185, 1187 (9th Cir. 1986); *see, e.g., Adams v. AT&T Mobility, LLC*, 524 F. App'x. 322, 324 (9th Cir. 2013) (affirming lower court's holding that nonsignatory could compel arbitration under an agreement limited to "assignees, parent companies, successors, subsidiaries, and affiliates.").

The Supreme Court has interpreted the term "successor" for the purposes of determining whether a nonsignatory was bound by the arbitration agreements signed by a prior owner in analogous labor contexts. *See Howard Johnson Co., Inc. v. Detroit Local Joint Exec. Bd.*, 417 U.S. 249, 251 (1974); *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543 (1964). In *Howard Johnson Co.*, a labor union sought to compel a "bona fide purchaser of the assets of a restaurant and motor lodge" to arbitration under an arbitration provision in a collective bargaining agreement signed by the previous owner that by its terms bound "successors, assigns, purchasers, lessees or transferees." 417 U.S. at 251. As a term of the purchase, the buyer explicitly did not "assume any obligations or liabilities of the Sellers resulting from any labor agreements . . . ." *Id.* at 252. In determining whether the purchaser was bound by the "successor" term in the arbitration agreement, the Court stated: "The mere existence of the successorship clauses in the bargaining agreements between the [plaintiff] and the [signatory] however, cannot bind [nonsignatory defendant] either to the substantive terms of the agreements or to the arbitration clauses thereof, absent the continuity required by *Wiley*, when it is perfectly clear the Company refused to assume any

obligations under the agreements." *Id.* at 257 n.3. In *Wiley*, the Supreme Court determined there was "substantial continuity of identity in the business enterprise" after a merger in which the new owner maintained "relevant similarity and continuity of [business] operation[s]" and executed a "wholesale transfer of . . . employees to the [new] plant, apparently without difficulty." 376 U.S. at 551.

In *Steinbach v. Hubbard*, the Ninth Circuit defined the term "bona fide successor" for the FLSA context. 51 F.3d 843, 846 (9th Cir. 1995). In *Steinbach*, in determining whether a buyer was a bona fide successor, the court considered "the internal workings of the business," including that the buyer "hired the same employees, operated out of the same office, provided the same general services, kept the same operational supervisor, and used the same or similar equipment." *Id.*; *Cf. NLRB v. Jeffries Lithograph Co.*, 752 F.2d 459, 464–65 (9th Cir.1985) (finding continuity where successor retained essentially same workforce in same plant doing same jobs under same supervisor with some of the same equipment, providing similar services).

### d. Discussion

#### i. Obligations of RSW and CLP Under WIS Arbitration Agreements

The Court first addresses the threshold question of whether RSW and CLP can be compelled to participate in arbitration with Plaintiffs pursuant to the arbitration agreements signed by WIS. The WIS arbitration agreements entered into between Plaintiff and WIS state in relevant part: "This Agreement applies to Employee and Washington Inventory Service, Inc. dba WIS International, including its affiliates, successors, subsidiaries and/or parent companies ("Company") and survives the termination of Employee's employment with the Company." (ECF No. 215-6 at 2). On July 19, 2017, the Court held that the arbitration agreements were valid and enforceable as to Plaintiffs and WIS. (ECF No. 189).

In *Howard Johnson Co.*, the Supreme Court counseled against drawing "artificial division[s]" between the term "successor" for the purposes of successor clauses in arbitration agreements and the ultimate question of successor liability. The Court stated,

"[S]uccessor' is simply not meaningful in the abstract . . . the real question in

> each of these 'successorship' cases is, on the particular facts, what are the legal obligations of the new employer to the employees of the former owner or their representative? The answer to this inquiry requires analysis of the interests of the new employer and the employees and of the policies of the labor laws in light of the facts of each case and the particular legal obligation which is at issue, whether it be the duty to recognize and bargain with the union, the duty to remedy unfair labor practices, the duty to arbitrate, etc. There is, and can be, no single definition of 'successor' which is applicable in every legal context. A new employer, in other words, may be a successor for some purposes and not for others.

*Howard Johnson Co.*, 417 U.S. at 262 n.9. This Court finds it appropriate to utilize the definition of "bona fide successor" from *Steinbach* for the purposes of determining whether RSW and CLP are "successors" bound by the terms of the WIS arbitration agreements.[3] *See Steinbach*, 51 F.3d at 846 (In determining whether the buyer was a "bona fide successor" under the FLSA, the court considered whether the buyer "hired the same employees, operated out of the same office, provided the same general services, kept the same operational supervisor, and used the same or similar equipment.").

Plaintiffs have provided evidence that RSW acquired WIS's assets, operates substantially the same business, and employs the same employees. *See* ECF Nos. 217-1, 217-2, 217-3, 217-4; *see also* ECF No. 217-1 at 2 (2017 settlement agreement between WIS, CLP, and a third party stating: "holder of WIS's first lien . . . will foreclose upon substantially all of the assets of WIS and sell those assets to Retail Services WIS Corporation, an affiliate of CLP created solely for the purpose of acquiring such assets . . . ."). Plaintiffs have provided evidence that RSW is managed by the same corporate executives and management, including CEO James Rose and CFO Tom Compogiannis, s*ee* ECF Nos. 217-2, 215-18 at 2–3. The Court finds that Plaintiffs have demonstrated a

---

[3] Plaintiffs assert that the Court should apply the Black's Law Dictionary definitions of "affiliates, successors, subsidiaries and/or parent companies" to RSW and CLP to determine if they are bound by the WIS arbitration agreements. On November 28, 2018, Defendants contended at oral argument that this Court should utilize the definition of the term "bona fide successor" from *Steinbach* for the purposes of interpreting the term "successor" on the WIS arbitration agreements.

substantial degree of business continuity from WIS to RSW. *See Steinbach*, 51 F.3d at 846 ("Whether an employer qualifies as a bona fide successor will hinge principally on the degree of business continuity between the successor and predecessor."). Applying the "federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration," *Mundi*, 555 F.3d at 1044, and the Ninth Circuit's maxim that "fairness is a prime consideration in [successorship's] application," *Steinbach*, 51 F.3d at 846, the Court finds that RSW is a successor for the purposes of WIS's arbitration agreements. The Court makes no findings with regard to the other two prongs of the *Steinbach* inquiry. *See* 51 F.3d at 846 (in addition to the "bona fide successor" determination, a court applying the ultimate successor liability test under the FLSA must determine 1) whether the subsequent employer had notice of potential liability; and 2) the extent to which the predecessor is able to provide adequate relief directly).

With regard to CLP, Plaintiffs provide evidence of a "management services" contract, under which CLP provides RSW with "participation in business and strategic planning" and "identifying and/or communicating with potential strategic partners . . . management strategy sessions regarding acquisitions or financings . . . [and] strategy and implementation of the growth activities of the Company . . . ." (ECF No. 217-5 at 2). Plaintiffs have not, however, provided any evidence that CLP has hired any of the same employees, operates out of WIS's former office, provides the services that WIS formerly provided, or used similar equipment. *See Steinbach*, 51 F.3d at 846; Singh Decl., ECF No. 221-8 ¶ 6 ("Centre Lane does not operate RSW's business and has no day-to-day involvement with the management of RSW's employees, clients, or operations."). Further, the balance of equities on these facts[4] does not tip in favor of a finding that CLP is a successor for the purposes of the WIS arbitration agreements.

---

[4] Plaintiffs assert that as of the time of briefing on this Motion, discovery with regard to "the full extent of the relationship between WIS, Centre Lane Partners, and Retail Services WIS" had been "limited." (ECF No. 217 at 17).

Plaintiffs would also have the Court assess whether CLP is an "affiliate," "subsidiary" or "parent company" to WIS under the WIS arbitration agreements. In this case, Plaintiffs have presented evidence that CLP was involved in the sale and transfer of WIS assets to RSW, and have presented evidence that CLP maintains certain relationships with RSW, but Plaintiffs have not demonstrated that CLP has any contractual relationship with WIS. *See* Singh Decl., ECF No. 221-8 ¶ 5 ("Centre Lane . . . has no contractual connection to WIS."). Plaintiffs have not presented sufficient evidence to support a finding that CLP is an affiliate, subsidiary, or parent company of WIS. Based upon the record before the Court, the Court finds that CLP is not bound to participate in arbitration by the WIS arbitration agreements.

### ii. Dispute as to Allocation of Arbitration Filing Fees

The filing fee for each individual arbitration is $2,200. Defendants do not dispute that they are responsible for paying $1,900 in fees for each individual arbitration. The WIS arbitration agreements state: "The Company shall pay all costs and expenses unique to arbitration, including without limitation the arbitrator's fees." (ECF No. 215-6 at 2). Defendants contend that Plaintiffs are responsible for paying the remaining $300 in fees in each arbitration. (ECF No. 221 at 15). Plaintiffs contend that they should only be obliged to make a single payment of $300—the amount Plaintiffs would have had to pay had they brought all claims together as a class action in Court. Plaintiffs contend that all other fees are "unique to arbitration" and must be borne by Defendants.

The Court is obliged to "rigorously . . . enforce arbitration agreements according to their terms, including terms that specify with whom the parties choose to arbitrate their disputes and the rules under which that arbitration will be conducted." *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (citing *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (internal quotations omitted). In this case, with respect to dispute resolution, the WIS arbitration agreements state:

> Employee and Company agree that any dispute or controversy covered by this Agreement or arising out of, relating to, or concerning the validity,

enforceability or breach of this Agreement, except as provided in Section 2 of this Agreement, shall be resolved by binding arbitration in accordance with the Employment Arbitration Rules of the American Arbitration Association ("AAA Rules") then in effect, and not by court or jury trial . . . .

(ECF No. 215-6 at 2). Interpretation of the term "unique to arbitration" is a "dispute or controversy" that "aris[es] out of" the WIS arbitration agreements. *See id.* The Court finds that pursuant to the explicit terms of the WIS arbitration agreement, the dispute as to the proper interpretation of the term "unique to arbitration" and subsequent allocation of fees is a dispute the parties agreed to submit to arbitration and is properly resolved by the arbitrator.

### III. Applications to File Documents Under Seal

Concurrent with the Motion for Declaratory Relief, Plaintiffs and Defendants both filed Applications to File Documents Under Seal. (ECF Nos. 216, 222, 228). Defendants assert that information contained in certain exhibits and the declarations of Mayank Singh and Tom Compogiannis would violate the Stipulation and Protective Order entered in this matter (ECF No. 55). Defendants further contend that the information the parties request to file under seal "includes non-public financial information regarding WIS and Defendants as well as highly sensitive proprietary business information and trade secrets that could harm Defendants if revealed to the public or to its competitors." (Hogue Decl., ECF No. 222-1 ¶ 4).

"A party seeking to seal a judicial record . . . bears the burden of overcoming [the] strong presumption [of access to court records] by meeting the 'compelling reasons' standard." *Kamakana v. Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). Under this stringent standard, a court may seal records only when it finds "a compelling reason and articulate[s] the factual basis for its ruling, without relying on hypothesis or conjecture." *Id.* at 1182 (internal citation omitted). What constitutes a "compelling reason" is "best left to the sound discretion of the trial court." *Nixon v. Warner Commnc'ns Inc.*, 435 U.S. 589, 599 (1978). Examples include when a court record might be used to "gratify private spite or promote public scandal," to circulate "libelous" statements, or "as

sources of business information that might harm a litigant's competitive standing." *Id.* at 598–99.

In this case, the Court has reviewed the exhibits and portions of the Singh and Compogiannis declarations the parties request to file under seal and finds that the statements and documents at issue contain non-public business and financial information that could harm Defendants' competitive standing if publicly disclosed. *See id.* The parties have shown compelling reasons that outweigh the public's interest in disclosure of these materials and justify filing the documents under seal at this stage in the proceedings. The Applications to File Documents Under Seal (ECF Nos. 216, 222, 228) are granted.[5]

## IV. Conclusion

IT IS HEREBY ORDERED that Plaintiffs' Motion for Declaratory Relief and Sanctions (ECF No. 215) is GRANTED IN PART AND DENIED IN PART. Defendant RSW shall participate in the ongoing arbitration with Plaintiffs and WIS pursuant to the WIS arbitration agreements. Pursuant to the text of the WIS arbitration agreements, the aforementioned dispute as to the allocation of filing fees is properly resolved by the arbitrator. Defendant CLP is not required to participate in arbitration under the WIS arbitration agreements. IT IS FURTHER ORDERED that the Applications to File Documents Under Seal (ECF Nos. 216, 222, 228) are GRANTED. The lodged documents, ECF Nos. 217, 223, 229, shall be filed under seal.

Dated: December 18, 2018

*[signature]*
Hon. William Q. Hayes
United States District Court

---

[5] The Court concludes that Defendants have failed to demonstrate compelling reasons to redact any of the references to sealed documents in this Order.