UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD HOSE (deceased); EVE STALLWORTH on her own behalf, and on behalf of all others similarly situated, | Case No.:  14-cv-2869-WQH-AGS |
| | **ORDER** |
|                                        Plaintiffs, | |
| v. | |
| WASHINGTON INVENTORY SERVICE, INC. d/b/a WIS INTERNATIONAL, a California Corporation; RETAIL SERVICES WIS, INC., a Delaware Corporation; and CENTRE LANE PARTNERS, LLC, a New York Limited Liability Company, | |
|                                        Defendants. | |

HAYES, Judge:

The matters before the Court are 1) the Motion for Service Awards (ECF No. 296); 2) the Motion for Attorneys' Fees (ECF No. 297); and 3) the Motion for Final Approval of Collective Action Settlement (ECF No. 298) filed by Plaintiff Eve Stallworth; and 4) the Joint Motion to Include Opt-ins Who Submit Untimely Claims Prior to Final Approval in the First Distribution of Settlement Funds filed by the parties (ECF No. 299).

# I.   PROCEDURAL BACKGROUND

On December 4, 2014, Plaintiff Richard Hose, on behalf of himself and all others similarly situated, filed a Collective Action Complaint against Defendants Washington Inventory Service, Inc. d/b/a WIS International ("WIS") and WIS Holdings Corp. ("WIS Holdings") under the Fair Labor Standards Act ("FLSA"). (ECF No. 1). This wage and hour action arises from Plaintiff Hose's former employment as an Inventory Associate for Defendant WIS, which employs "thousands" of people as "auditors, inventory associates, and/or other functionally equivalent hourly positions" to travel to retail stores and count inventory in those stores. (ECF No. 82 at ¶ 2).

On March 19, 2015, the Court issued an Order granting Defendant WIS's Motion to Dismiss the Complaint. (ECF No. 13). On May 29, 2015, Plaintiff Hose filed a First Amended Complaint ("FAC"). (ECF No. 26). On June 9, 2015, Plaintiff Hose dismissed the claims against Defendant WIS Holdings. (ECF No. 27). On June 15, 2015, Defendant WIS filed an Answer to the FAC. (ECF No. 29). The parties engaged in fact discovery. On March 14, 2016, Plaintiff Hose filed a Second Amended Complaint ("SAC"). (ECF No. 82). On March 30, 2016, Defendant WIS filed an Answer to the SAC. (ECF No. 86).

On June 7, 2016, the Court issued an Order granting Plaintiff Hose's Motion for Conditional Certification under the FLSA. (ECF No. 94). On June 14, 2016, the Court issued an Order approving the class definition and notice of collective action. (ECF No. 97). The Court conditionally certified a class of "[a]ll individuals currently or formerly employed by WIS as an Inventory Associate in the United States at any time from three years before the mailing of the notice of collective action who have not released all alleged claims that they still may pursue under the Fair Labor Standards Act during the applicable time period of this case." (ECF Nos. 95 at 2; 97). On June 23, 2016, the Court issued an Order approving the consent to join form, approving the procedures for distributing notice to the collective, and appointing Heffler Claims Group ("Heffler") as the notice administrator. (ECF No. 104).

2

On August 30, 2016, the Court issued an order granting Defendant's Motion to Compel Arbitration as to thirteen Opt-in Plaintiffs, directing that their claims proceed to arbitration and staying those claims in favor of arbitration. (ECF No. 119).

In June 2017, Retail Services WIS, Inc. ("RSW"), a company backed by private equity firm Centre Lane Partners, LLC ("CLP"), acquired Defendant WIS as part of a foreclosure sale of the WIS company.

On July 19, 2017, the Court issued an Order granting in part and denying in part Defendant's Motion for Summary Judgment and Motions to Compel Arbitration as to 13,830 Opt-in Plaintiffs. (ECF No. 189). The Court denied the Motion for Summary Judgment as to one Opt-in Plaintiff and granted the Motion as to 464 other Opt-in Plaintiffs. The Court denied the Motions to Compel Arbitration as to any Opt-in Plaintiffs who signed certain dispute resolution agreements and granted the Motions as to all other Opt-in Plaintiffs identified in the Motions, staying those claims in favor of arbitration.

On August 7, 2017, Plaintiff Hose filed a Third Amended Complaint ("TAC"), adding RSW and CLP as Defendants. (ECF No. 194). The TAC is the operative complaint in this matter. In the TAC, Plaintiff Hose asserts three claims for FLSA violations against all Defendants: (1) failure to pay minimum wages, (2) failure to pay overtime wages, and (3) failure to compensate for all hours worked; and three common law claims against all Defendants: (1) breach of contract, (2) breach of covenant of good faith and fair dealing, and (3) unjust enrichment; and one common law claim for successor liability against Defendants RSW and CLP.

On August 14, 2017, Defendant WIS filed an Answer to the TAC. (ECF No. 196). On May 30, 2018, Defendants RSW and CLP filed Answers to the TAC. (ECF Nos. 210, 211).

On July 2, 2018, Defendant WIS filed for Chapter 11 bankruptcy. On July 3, 2018, a Notice of Automatic Stay pursuant to 11 U.S.C. § 362 was filed as to debtor Defendant WIS. (ECF No. 214).

On December 18, 2018, the Court issued an Order granting in part and denying in part Plaintiff Hose's Motion for Declaratory Relief, ordering Defendant RSW to participate in the ongoing arbitration with the Opt-in Plaintiffs and Defendant WIS pursuant to the WIS arbitration agreements. (ECF No. 251).

On April 23, 2019, Defendants RSW and CLP filed a Motion for Summary Judgment and a Motion for Decertification. (ECF Nos. 271, 273). On May 28, 2019, the parties notified the Court that they had reached a settlement. (ECF No. 280). On October 30, 2019, Plaintiff Hose filed a Motion for Preliminary Approval of Collective Action Settlement. (ECF No. 290). On December 12, 2019, the Court issued an Order granting the Motion for Preliminary Approval. (ECF No. 292). The Court preliminarily approved the Settlement (Ex. 1, Decl. of Joshua G. Konecky ("Konecky Decl."), ECF No. 290-3 at 2-48) and the Notice of Collective Action Settlement ("Notice") (*id.* at 87-96); appointed Heffler as the settlement administrator; and set a schedule for dissemination of the Notice, submission of requests for exclusion and objections, and briefing on the motions for final approval, attorneys' fees and costs, and service awards. The Court further denied Defendants RSW and CLP's Motion for Summary Judgment and Motion for Decertification as moot.

On February 18, 2020, the Court issued an Order granting the parties' Joint Motion to Substitute Eve Stallworth as the Named Plaintiff for Recently Deceased Named Plaintiff Richard Hose. (ECF No. 295).

On March 5, 2020, Plaintiff Stallworth filed a Motion for Service Awards (ECF No. 296) and a Motion for Attorneys' Fees (ECF No. 297). On May 18, 2020, Plaintiff Stallworth filed a Motion for Final Approval of Collective Action Settlement. (ECF No. 298). On June 10, 2020, the parties filed a Joint Motion to Include Opt-Ins Who Submit Untimely Claims Prior to Final Approval in the First Distribution of Settlement Funds. (ECF No. 299). On June 12, 2020, Plaintiff Stallworth filed a Supplemental Declaration. (ECF No. 300).

14-cv-2869-WQH-AGS

1   Defendants did not file any opposition to the Motion for Service Awards, Motion

2   for Attorneys' Fees, or Motion for Final Approval of Collective Action Settlement.

3   On June 26, 2020, the Court held a final approval hearing. (ECF No. 302). No

4   member of the collective appeared.

5   On June 26, 2020, the parties filed a Stipulation and Joint Proposal Regarding

6   Language for Inclusion of Late Claimants in First Distribution of Settlement. (ECF No.

7   303).

8   **II.   TERMS OF THE PROPOSED SETTLEMENT**

9   The Settlement at issue in this case is a global settlement that resolves 1) the FLSA

10   claims made by Opt-in Plaintiffs in this case ("*Hose v. WIS*"); and 2) claims for civil

11   penalties under the Private Attorneys General Act in *Arispe v. Washington Inventory*

12   *Service, et al.*, RIC 1801185, currently pending in the Superior Court for the State of

13   California, County of Riverside ("*Arispe v. WIS*"). This Court is asked to approve the terms

14   of the Settlement pertaining to *Hose v. WIS*, and the superior court is asked to approve the

15   terms of the Settlement pertaining to *Arispe v. WIS*.

16   **a.   The Class**

17   The Settlement resolves the FLSA claims of the "Hose Plaintiffs:" "any inventory

18   associate employed by [WIS] on or after July 22, 2013, <u>and</u> who timely submitted a valid

19   opt-in consent form on or before September 19, 2016, in accordance with the notice

20   procedures set forth in the District Court's Order of June 23, 2016 [Dkt. 104] in [*Hose v.*

21   *WIS*]." (Settlement, Ex. A, Konecky Decl., ECF No. 290-3 at 11).

22   **b.   Class Benefits**

23   The total amount of the global settlement of *Hose v. WIS* and *Arispe v. WIS* is

24   $7,015,516.59—the sum of the "Gross Settlement Amount" of $6,615,500 plus an

25   additional $400,016.59 in "Rabbi Trust Reserve," sponsored by Defendant WIS. (*Id.* at 9).

26   The total amount available for settlement of *Hose v. WIS* is $6,565,516 (the "Hose Total

27   Settlement Amount"). The Hose Total Settlement Amount includes $6,165,500 of the

28   Gross Settlement Amount allocated to *Hose v. WIS* plus $400,016.59 in Rabbi Trust

Reserve. (*Id.* at 11). The $400,016.59 from Rabbi Trust Reserve is included in the Hose Total Settlement Amount on the condition that Defendant RSW remains solvent in June 2021, the deadline for RSW to deposit the $400,016.59 into the Qualified Settlement Fund. Following deductions to the Hose Total Settlement Amount for the Hose Class Representative Service Award, the Hose Attorneys' Fees and Costs Award, and Settlement Administration Costs allocated to *Hose v. WIS*, the remaining "Hose Net Settlement Amount" will be distributed to the Hose Plaintiffs.

Each "Hose Participating Plaintiff" will receive an "Individual Settlement Payment" from the Hose Net Settlement Amount based on the individual's proportionate share of "Adjusted Settlement Workweeks." (*Id.* at 16). Hose Participating Plaintiffs are defined in the Settlement as "Hose Plaintiffs who (a) do not submit timely and valid Requests for Exclusion on or before [April 7, 2020]; and (b) submit a timely and valid claim form on or before [April 7, 2020]." (*Id.* at 11). To determine the amount of each Individual Settlement Payment, Heffler first determines the number of actual weeks that the Hose Participating Plaintiff worked as an Inventory Associate for WIS from July 22, 2013, through December 12, 2019, the date this Court preliminarily approved the proposed settlement. (*Id.* at 11, 16). Heffler then calculates the number of Adjusted Settlement Workweeks by adjusting the number of actual workweeks upwards in the following two cases: (a) each actual workweek will be multiplied by three for a Hose Participating Plaintiff who was not compelled to arbitration and who either appeared for deposition or submitted substantive interrogatory responses in the case; and (b) each actual workweek will be multiplied by two for a Hose Participating Plaintiff who was compelled to arbitration and who substantially completed the written survey circulated via the website maintained by Plaintiffs' counsel. (16-17 ¶ 10). Heffler then divides the Hose Net Settlement Amount by the total number of Adjusted Settlement Workweeks, resulting in the "Hose Workweek Value." (*Id.* at 17). The Individual Settlement Payment for each Hose Participating Plaintiff is calculated by multiplying the Hose Workweek Value by the Hose Participating

Plaintiff's total number of Adjusted Settlement Workweeks. Each Individual Settlement Payment will be reduced by appropriate tax withholdings or deductions.

Hose Participating Plaintiffs will receive their Individual Settlement Payments in two distributions: "(1) one payment estimated to occur in or about the Third Quarter of 2020; and (2) a second payment estimated to occur in or about December of 2021." (ECF No. 298-1 at 8; *see* Settlement, Ex. A, Konecky Decl., ECF No. 290-3 at 32-33). The parties have stipulated, and seek approval from the Court, to include "108 opt-in plaintiffs who have submitted late claims as of June 19, 2020, as well as any additional opt-in plaintiffs who submit claim forms prior to two weeks before the date of the first distribution . . . as [Hose] Participating Plaintiffs to receive their proportionate share of the Hose Individual Settlement Payments from the first distribution . . . ." (ECF No. 303 at 2). All Hose Plaintiffs will receive a $50 "Hose Minimum Settlement Payment" as part of the second distribution, in addition to any Individual Settlement Payment. (Settlement, Ex. A, Konecky Decl., ECF No. 290-3 at 18, 34). After the second distribution, and after Heffler processes any late claims, remaining funds will be distributed to *cy pres* recipient Legal Aid at Work. (*Id.* at 34-35).

There are 14,676 Hose Plaintiffs. (*See* Decl. of Mark Rapazzini ("Rapazzini Decl."), ECF No. 298-2 ¶ 3). As of June 10, 2020, 5,977 Hose Plaintiffs submitted timely claim forms. (Supp. Decl. of Mark Rapazzini ("Rapazzini Supp. Decl."), ECF No. 300 ¶¶ 7-8). 108 Hose Plaintiffs submitted claim forms postmarked after the April 7, 2020, deadline. (*See* ECF No. 303 at 2).

### c. **Class Notice**

Mark Rapazzini, the Senior Director at Heffler, states in his Declaration that "[o]n January 9, 2020, Heffler received the class list from Defendants' counsel which included the following information from Defendants' records: each Hose Plaintiff's full name; most recent mailing address and telephone number; Social Security number; e-mail address (where available); and number of Workweeks as a Hose Plaintiff." (Rapazzini Decl., ECF No. 298-2 ¶ 3). "Heffler ran the class list through the Post Office's National Change of

7

Address database (NCOA) to obtain updated addresses." (*Id.* ¶ 4). "On February 7, 2020, Heffler printed and mailed the Court approved Notice and Claim Form to all Hose Plaintiffs." (*Id.*). "Heffler also emailed 14,203 Notice packages to those Hose class members for whom Heffler was provided an email address." (*Id.* ¶ 5).

As of June 10, 2020, Heffler "received 46 Notices returned by the USPS with a forwarding address. Heffler re-mailed all 46 Notices to the updated addresses provided by the USPS." (Rapazzini Supp. Decl., ECF No. 300 ¶ 5). As of June 10, 2020, Heffler "received 2,408 Notices returned by the USPS as undeliverable as addressed. Heffler ran 2,336 undeliverable records through an address trace process. The address-tracing produced 1,923 updated addresses. Heffler [ ] re-mailed Notices to the 1,923 updated addresses obtained from the trace process. Following the re-mail, 447 Notices [were] returned by the USPS as undeliverable a second time." (*Id.* ¶ 6).

### d. <u>Opt-Outs and Objections to Settlement</u>

The Notice informed the Hose Plaintiffs that they "had until April 7, 2020, to submit a Claim Form, object to the Settlement, request to be excluded from (opt-out of) the Settlement, and dispute Defendants' workweek records." (Rapazzini Decl., ECF No. 298-2 ¶ 4; *see* Notice, Ex. A, Rapazzini Decl., ECF No. 298-2 at 10-13). As of June 10, 2020, Heffler received 3,981 online claims through the settlement website and 1,996 timely paper claim forms, for a total of 5,977 timely claim forms. As of June 19, 2020, Heffler also received 108 claim forms that were postmarked after the claims filing deadline of April 7, 2020. (Rapazzini Supp. Decl., ECF No. 300 ¶ 8; ECF No. 303 at 2).

Heffler "received workweek disputes from nine (9) Hose Plaintiffs. Eight (8) of these individuals provided alternative workweek estimates, but none provided supporting documentation. Heffler reviewed all nine disputes after forwarding them to counsel for their comments. In each case, Heffler determined that the there was insufficient evidence to dispute workweek data previously submitted by Defendants." (Rapazzini Decl., ECF No. 298-2 ¶ 12).

As of June 10, 2020, Heffler "ha[d] not received any requests for exclusion [ ]or objections." (Rapazzini Supp. Decl., ECF No. 300 ¶ 9).

### e. Notice and Administration Costs

The Settlement provides:

> Subject to Court approval, the Settlement Administrator will be paid for the reasonable costs of administration of the Settlement and calculation and distribution of payments, which barring unusual or unforeseen circumstances, is not estimated to exceed Two Hundred Thirty Five Thousand Dollars $235,000 (the "Settlement Administration Costs"). The Parties agree that the Settlement Administrator has fairly and reasonably allocated Two Hundred Twenty Thousand ($220,000) of these Settlement Administration Costs to the Hose Lawsuit . . . These Settlement Administration Costs[ ] [ ] will be paid from the respective Total Settlement Amounts . . . .

(Settlement, Ex. A, Konecky Decl., ECF No. 290-3 at 21).

> Heffler's estimated fees and costs for administering this settlement are $220,370. This includes providing the mail and email notice to 14,676 opt-in Plaintiffs, performing the skip tracing and remailing of notices returned as undeliverable, providing phone and website support, and processing claim forms . . . . It also includes [Heffler's] projected costs for processing and mailing settlement awards, preparing and filing federal and state tax documentation, and maintaining the qualified settlement fund through December 2021 to manage all current and future payments.

(Rapazzini Decl., ECF No. 298-2 ¶ 14).

### f. Attorneys' Fees and Costs

Plaintiff Stallworth requests that the Court approve an award of attorneys' fees of $2,188,505.53 and litigation costs of $684,387.95. Attorney Joshua G. Konecky states in his Declaration that "[t]he $2,188,505.53 in attorneys' fees is one-third (1/3) the Hose Total Settlement Amount, but less than one-half (1/2) of the actual[ ] attorneys' fees incurred over the past five (5) years to effectively litigate this difficult and risk-laden[ ] case." (Decl. of Joshua G. Konecky in Support of Mot. for Attorneys' Fees ("Konecky Fees Decl."), ECF No. 297-2 ¶ 2). Attorney Konecky states that "[a]s of February 28,

2020, [the law firm of Schneider Wallace Cottrell Konecky Wotkyns LLP] has invested approximately 8,500.74 hours of work into this case, for a total lodestar of approximately $4,882,304 after removing all billing entries by individuals who recorded fewer than 10 hours on the case . . . ." (*Id.* ¶ 7). Attorney Konecky states that the requested fee award "would result in a 'negative' multiplier of approximately 0.44 of [the] lodestar. In addition, [the] total lodestar of $4,882,304 does not include the work [the law firm] will do after completion of [the Motion for Attorneys' Fees], such as working with the settlement administrator, preparing the motion for final approval, and communicating with the Opt-in Plaintiffs." (*Id.* ¶ 8). "Plaintiffs' Counsel also have incurred costs of suit of approximately of $684,387.95 through February 26, 2020." (*Id.* ¶ 82).

### g.  Incentive Award

Plaintiff Stallworth requests that the Court award approve service awards in the amount of $20,000 to the estate of deceased Plaintiff Hose and $5,000 to Plaintiff Stallworth "for their important contributions to the Collective in both the litigation and settlement of this matter." (ECF No. 296-1 at 5).

## III.  FAIRNESS OF THE SETTLEMENT

Plaintiff Stallworth asserts that the Settlement is fair and reasonable. Plaintiff Stallworth asserts that the parties reached the Settlement after "a lengthy mediation and follow-up with a well-respected mediator experienced in the area of wage and hour collective action cases," an in-person settlement meeting, and nine months of follow-up negotiations. (ECF No. 298-1 at 15-16). Plaintiff Stallworth asserts that the parties reached the Settlement "after substantial discovery, depositions and motion practice" by experienced legal counsel. (*Id.* at 16). Plaintiff Stallworth asserts that the absence of objections or exclusions to the Settlement is indicative of its fairness and value. Plaintiff Stallworth asserts that the $6,565,516.59 recovery achieved in the Settlement "represents a strong result" in light of "the WIS bankruptcy, the motion to compel thousands of individual arbitrations, and the need to prove successor liability." (*Id.* at 18).

"To guard against th[e] potential for class action abuse, Rule 23(e) of the Federal Rules of Civil Procedure requires court approval of all class action settlements, which may be granted only after a fairness hearing and a determination that the settlement taken as a whole is fair, reasonable, and adequate." *Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*, 654 F.3d 935, 946 (9th Cir. 2011) (citing Fed. R. Civ. P. 23(e)(2)). The Court of Appeals for the Ninth Circuit has a "strong judicial policy" in support of class action settlements. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). However, when presented with a motion to finally approve a class action settlement, "judges have the responsibility of ensuring fairness to all members of the class . . . ." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). Ultimately, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982).

Courts consider several factors in determining the fairness of a proposed settlement, including:

> the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (citation and internal quotation marks omitted); *see Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) (holding that only one factor was necessary to demonstrate that the district court was acting within its discretion in approving the settlement).

The parties litigated this case for four years before negotiating the Settlement. The parties investigated facts and claims; interviewed Hose Plaintiffs; propounded and responded to written discovery; conducted depositions; litigated discovery disputes and motions, including motions to dismiss, motions to compel arbitration, and motions for summary judgment; prepared and filed more than 1000 demands for individual arbitration; represented the Unsecured Creditor Committee in the WIS bankruptcy proceedings in the Bankruptcy Court of the District of Delaware; and engaged in settlement negotiations. (*See* Konecky Decl., ECF No. 290-2 ¶¶ 2-40).

Plaintiffs Hose and Stallworth faced significant challenges in litigating this case to settlement. After 13,781 Opt-in Plaintiffs were compelled to individual arbitration, only approximately 485 individuals remained in the action. Defendant WIS filed for Chapter 11 bankruptcy. Defendant WIS had approximately $3.5 million in total assets to distribute to its creditors in the bankruptcy and approximately $250 million in creditor claims. (*Id.* ¶ 59). Defendants RSW and CLP filed a Motion for Summary Judgment on successor liability and maintain that they are not liable as successors to Defendant WIS.

The parties attended an in-person mediation and lengthy follow-up "with Jeffrey Ross, Esq., an experienced employment and class action mediator." (*Id.* ¶ 23; *see In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d at 948 (explaining that participation of a mediator is not dispositive but is "a factor weighing in favor of a finding of non-collusiveness")). The mediation allowed the parties to assess the strengths and weaknesses of their claims and defenses, which laid the groundwork for the negotiations that followed and ultimately resulted in the Settlement.

"[T]he Settlement recovery of $6,565,516 is approximately 9.86% of the total theoretical exposure of $66 million that Plaintiffs originally asserted—approximately 9.24% even without the value of the Rabbi Trust claims that are scheduled to revert back to settlement fund for the benefit of the Hose Plaintiffs in June 2021." (Konecky Decl., ECF No. 290-2 ¶ 66). Every Hose Plaintiff will receive a minimum of $50 in the Settlement, even if they failed to submit a claim form. Following the anticipated deductions

of $25,000 in service awards, $2,188,505.53 in attorneys' fees, $684,387.95 in litigation costs, and $220,000 in administration costs, approximately $3,447,624 remains as the Net Settlement Amount to be distributed to the Hose Plaintiffs, with none of the Net Settlement Amount to revert to Defendants.

As of June 19, 2020, Heffler received a total of 6,085 claim forms. Heffler received workweek disputes from only nine Hose Plaintiffs. None of the Hose Plaintiffs have objected to the Settlement or requested exclusion. *See Mandujano v. Basic Vegetable Prods., Inc.*, 541 F.2d 832, 837 (9th Cir. 1976) ("The opposition of a significant number of the members of the class to a proposed settlement is a factor to be considered when approving a settlement." (citations omitted)); *see also Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 624 (N.D. Cal. 1979) (finding "persuasive" the fact that 84% of the class filed no opposition); *Shames v. Hertz Corp.*, No. 07-CV-2174-MMA(WMC), 2012 U.S. Dist. LEXIS 158577, at *25-26 (S.D. Cal. Nov. 5, 2012) (explaining that the absence of a large number of objectors supports the fairness, reasonableness, and adequacy of the settlement). Given the lack of objection by the Hose Plaintiffs and the risk, expense, complexity, and duration of further litigation, the Court finds that the amount and terms of the proposed monetary benefits to the Hose Plaintiffs are fair and reasonable.

Plaintiffs' counsel has extensive experience litigating and settling complex wage and hour class and collective actions. (Konecky Decl., ECF No. 290-2 ¶¶ 42, 72; *see generally* Firm Profile, Ex. 3, Konecky Decl., ECF No. 290-5). Plaintiffs' attorneys have a strong understanding of this case from litigating for over four years and from prior experience in similar cases. Plaintiffs' attorneys are well qualified to conduct this litigation and to assess its settlement value. The Court finds that the Hose Plaintiffs have been fairly and adequately represented during settlement negotiations. The Court finds that the Settlement is fundamentally "fair, adequate and reasonable" and that no evidence of collusion exists. Fed. R. Civ. P. 23(e).

///

///

## IV.  ATTORNEYS' FEES AND COSTS

Plaintiff Stallworth request that the Court award $2,188,505 in attorneys' fees, $684,387.95 in litigation costs, and $220,370 in administrative costs.

### a.  **Attorneys' Fees**

Plaintiff Stallworth requests that the Court award $2,188,505 in attorneys' fees. Rule 23(h) of the Federal Rules of Civil Procedure provides that, "[i]n a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Pursuant to the FLSA, when judgment is entered in a plaintiff's favor, the plaintiff may recover reasonable attorney's fees and costs of the action. *See* 29 U.S.C. § 216(b). The Settlement provides:

> Hose Counsel will seek an award of attorneys' fees of not more than one-third (1/3) of the Hose Total Settlement Amount, or two million, one hundred and eighty-eight thousand, five hundred and five dollars and fifty-three cents ($2,188,505.53), plus reasonable litigation costs (including any expert costs), currently estimated to be six hundred, sixty-four thousand, four hundred and fifty two dollars and sixty three cents ($664,452.63) . . . . All Attorneys' Fees and Costs will be paid from the Gross Settlement Amount . . . . If the applicable Court reduces the requested attorneys' fees, costs and expenses, any such reduction will be applied to the respective Net Settlement Amount(s).

(Settlement, Ex. A, Konecky Decl., ECF No. 290-3 at 19-20).

"Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 942. Under the percentage-of-recovery method, "courts typically calculate 25% of the fund as the 'benchmark' for a reason-able fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." *Id.* (quoting *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989)).

"The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reason-able hourly rate for the region and for the experience of the lawyer." *Id.* at 941 (citing *Staton*, 327 F.3d at 965). After computing the lodestar figure, the district court may then adjust the figure upward or downward taking into consideration twelve "reasonableness" factors: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Morales v. City of San Rafael*, 96 F.3d 359, 363 n. 8 (9th Cir. 1996). "The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), *superseded on other grounds by the Prison Litigation Reform Act*. However, trial courts may use "rough" estimations, so long as they apply the correct standard. *Fox v. Vice*, 563 U.S. 826, 838 (2011).

In this case, Plaintiffs' counsel submitted the 2019 billing rates for fourteen attorneys and twenty law clerks and paralegals from Schneider Wallace Cottrell Konecky Wotkyns LLP who worked more than ten hours on this case. Three attorneys from the law firm served as the lead counsel in this action. Joshua G. Konecky is a partner with 24 years' experience and an hourly rate of $925.00. Leslie H. Joyner is an eleventh-year associate with an hourly rate of $800. Nathan B. Piller is a sixth-year associate with an hourly rate of $680. The hourly rates of other associate and staff attorneys on this case range from $500 to $680 per hour. (*See* Konecky Fees Decl., ECF No. 297-2 ¶ 81 ($680/hour for associate attorneys Scott Gordon (a third-year attorney) and Abigail Laudick (a first-year attorney) and staff attorney Moises Jrade (a twenty-fourth-year attorney); $675/hour for

associate attorney Nicole Coon (an eighth-year attorney); $600/hour for staff attorneys Ryan Bonner (a fifth-year attorney), John Gaudette (an eighth-year attorney), and Benjamin Reumke (a ninth-year attorney); $550/hour for staff attorneys Justin Schultz (a fourth-year attorney) and Melissa Ruffalow (a fourth-year attorney); $500/hour for associate attorney Michael Hart (a fourth-year attorney) and staff attorney Krishna Desai (a third-year attorney)). Paralegal and law clerk billing rates range from $150 per hour to $350 per hour.

Plaintiffs' counsel submitted evidence that their rates have been approved in the past by numerous courts in the Northern District of California. (*See id.* ¶¶ 70, 71). The requested rates are slightly high for the Southern District of California. *See Hunter v. Nature's Way Prods., LLC*, No. 3:16-cv-532-WQH-AGS, 2020 U.S. Dist. LEXIS 1706, at *22 (S.D. Cal. Jan. 6, 2020) (finding hourly rates ranging from $500 to $750 reasonable); *Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*, No. 15-cv-595-BAS-MDD, 2016 U.S. Dist. LEXIS 52463, at *8 (S.D. Cal. Apr. 18, 2016) (finding hourly rates of $400 for a sixth-year associate and $725 for a thirty-fifth-year partner reasonable); *Makaeff v. Trump Univ., LLC*, No. 10cv1940 GPC (WVG), 2015 U.S. Dist. LEXIS 46749, at *17 (S.D. Cal. Apr. 9, 2015) (finding hourly rates ranging from $250 to $825 reasonable).

Plaintiffs' counsel submitted a summary of hours worked for each attorney, paralegal, or law clerk who worked more than ten hours on this case. In total, the law firm expended 8,500.74 hours on this case, for a total lodestar of $4,882,304. The requested $2,188,505.53 in attorneys' fees represents 33% of the Hose Total Settlement Amount and 44% of the lodestar. Although the billing rates are comparably high for the Southern District of California, the requested total fee award represents less than half of the fees actually incurred. No class member has objected to the requested attorney fee award. Courts in this circuit have routinely authorized awards representing a similar reduction in the lodestar. *See, e.g.*, *Shames*, 2012 U.S. Dist. LEXIS 158577, at *64 ("Plaintiffs' $5,123,336.00 fee request is reasonable, as it represents a *20% reduction* of the lodestar."); *Stuart v. RadioShack Corp.*, No. C-07-4499-EMC, 2010 U.S. Dist. LEXIS 92067, at *18

(N.D. Cal. Aug. 9, 2010) (finding 33% fee award "well within the range of percentages which courts have upheld as reasonable in other class action lawsuits"); *Rippee v. Bos. Mkt. Corp.*, No. 05cv1359 BTM (JMA), 2006 U.S. Dist. LEXIS 101136, at *11 (S.D. Cal. Oct. 10, 2006) (award of 40% of $3,750,000 wage and hour class action settlement).

Upon consideration of the Declarations and filings submitted by Plaintiffs' counsel, the attorneys' experience, the difficulty and uncertainty of this case, and other rates approved in this district, the Court finds that the requested fees are reasonable. The Court approves the award of attorneys' fees in the amount of $2,188,505.53.

### b. **Litigation Costs**

Plaintiff Stallworth requests that the Court award $684,387.95 in litigation costs. Class counsel is entitled to reimbursement of the out-of-pocket costs they reasonably incurred investigating and prosecuting this case. *See Staton*, 327 F.3d at 974. Plaintiffs' counsel has expended $684,387.95 in un-reimbursed expenses through February 26, 2020. Plaintiffs' counsel has provided a ledger identifying each individual charge, which include "costs related to depositions, travel, [and] mediation[;] filing and service fees[;] . . . over $211,000 in mailing and administration costs for the FLSA notice and opt in process; nearly $70,000 in costs to establish the Wis.claims website portal . . .; over $100,000 in eDiscovery fees . . .; and over $70,000 in expert fees." (Konecky Fees Decl., ECF No. 297-2 ¶ 83; *see generally* Ex. 3, Konecky Fees Decl., ECF No. 297-2 at 52-68). No class member has objected to the request for reimbursement of $684,387.95 in costs. The Court finds that Plaintiffs' counsel's out-of-pocket costs were reasonably incurred in connection with the prosecution of this litigation, were advanced for the benefit of the class, and shall be reimbursed in full in the amount requested. The Court approves the request for litigation costs and expenses in the amount of $684,387.95.

### c. **Administrative Costs**

Plaintiff Stallworth requests that the Court award $220,370 in administrative costs to Heffler, the appointed administrator. The Settlement provides:

Subject to Court approval, the Settlement Administrator will be paid for the

reasonable costs of administration of the Settlement and calculation and distribution of payments, which barring unusual or unforeseen circumstances, is not estimated to exceed Two Hundred Thirty Five Thousand Dollars $235,000 (the "Settlement Administration Costs"). The Parties agree that the Settlement Administrator has fairly and reasonably allocated Two Hundred Twenty Thousand ($220,000) of these Settlement Administration Costs to the Hose Lawsuit . . . . These Settlement Administration Costs[ ] [ ] will be paid from the respective Total Settlement Amounts . . . .

(Settlement, Ex. A, Konecky Decl., ECF No. 290-3 at 21). Mark Rapazzini, the Senior Director at Heffler, states in his Declaration:

Heffler's estimated fees and costs for administering this settlement are $220,370. This includes providing the mail and email notice to 14,676 opt-in Plaintiffs, performing the skip tracing and remailing of notices returned as undeliverable, providing phone and website support, and processing claim forms . . . . It also includes [Heffler's] projected costs for processing and mailing settlement awards, preparing and filing federal and state tax documentation, and maintaining the qualified settlement fund through December 2021 to manage all current and future payments.

(Rapazzini Decl., ECF No. 298-2 ¶ 14). Courts regularly award administrative costs associated with providing notice to the class. *See, e.g.*, *Odrick v. UnionBanCal Corp.*, No. C 10-5565 SBA, 2012 U.S. Dist. LEXIS 171413, at *17-18 (N.D. Cal. Dec. 3, 2012). However, Plaintiff Stallworth fails to provide evidence that an award of $370 above the $220,000 negotiated in the Settlement is warranted. The Court approves an award of administrative costs in the amount of $220,000.

## V.   INCENTIVE AWARD

Plaintiff Stallworth requests that the Court approve service awards in the amounts of $20,000 to the estate of deceased Plaintiff Richard Hose and $5,000 to Plaintiff Eve Stallworth. Incentive awards are "fairly typical" discretionary awards "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g*

*Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009) (emphasis omitted) (citations omitted). In assessing the reasonableness of an incentive award, several district courts in the Ninth Circuit have applied the five-factor test set forth in *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995), which analyzes (1) risk to the class representative in commencing a class action, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; (5) the personal benefit, or lack thereof, enjoyed by the class representative as a result of the litigation. *See, e.g.*, *Miller v. Wise Co.*, ED CV17-00616 JAK (PLAx), 2020 U.S. Dist. LEXIS 40032, at *37 (C.D. Cal. Feb. 11, 2020); *Hunter*, 2020 U.S. Dist. LEXIS 1706, at *25-26; *Rodriguez v. Penske Logistics, LLC*, No. 2:14-cv-02061-KJM-CKD, 2019 U.S. Dist. LEXIS 9441, at *39 (E.D. Cal. Jan. 17, 2019); *Vietnam Veterans of Am. v. CIA*, No. 09-cv-00037-CW, 2018 U.S. Dist. LEXIS 172135, at *3-4 (N.D. Cal. Oct. 4, 2018).

In this case, Plaintiff Hose provided information during lengthy interviews, responded to extensive written discovery, provided hundreds of pages of documents, and assisted counsel in preparing for depositions and seeking discovery. (Decl. of Joshua G. Konecky in Support of Mot. for Service Awards, ECF No. 296-3 ¶¶ 4-29). Plaintiff Hose prepared for and sat for his deposition, which required him to travel from Texas to California. (*Id.* ¶ 12). Plaintiff Hose assisted in preparing and evaluating the case for mediation and traveled from Texas to California to attend the mediation. (*Id.* ¶ 17). Plaintiff Hose further agreed to petition the United States Trustee to establish a Committee of Unsecured Creditors and protect Hose Plaintiffs in the bankruptcy proceedings, ultimately leading to settlement of this case. (*Id.* ¶¶ 20-23).

Plaintiff Stallworth provided information during lengthy interviews, responded to extensive written discovery, and produced 771 pages of documents. (Decl. of Eve Stallworth, ECF No. 296-2 ¶¶ 4, 11-12). Plaintiff Stallworth travelled to Atlanta to prepare for and sit for her deposition and provided information to Plaintiffs' counsel about the sale

of WIS, which led to the filing of the TAC. (*Id.* ¶ 12). Both Plaintiffs took risks in suing their former or current employer and participated in the case for four to five years.

The Plaintiffs have protected the interests of the class members and have participated in all aspects of the case. The Hose Plaintiffs have benefitted from these actions by receiving a settlement. No class member has objected to an incentive award of $20,000 for Plaintiff Hose and $5,000 for Plaintiff Stallworth. The proposed awards combined represent less than 0.4% of the Hose Total Settlement Amount. The incentive awards are within the acceptable range of approval and do not appear to be the result of collusion. *See, e.g.*, *Van Vranken,* 901 F. Supp. at 300 (approving an award of $50,000 for the named plaintiff); *Williams v. Costco Wholesale Corp.*, No. 02cv2003 IEG (AJB), 2010 U.S. Dist. LEXIS 67731, at *20 (S.D. Cal. Jul. 7, 2010) (approving a $5,000 award to a class representative in an antitrust case settling for $440,000). The Court finds that the requested incentive awards are reasonable.

## VI. CONCLUSION

Having received and considered the proposed Settlement, the supporting papers filed by the parties, and the evidence and argument received by the Court, the Court grants final approval of the Settlement. The Court HEREBY ORDERS AND MAKES THE FOLLOWING DETERMINATIONS:

1.    The parties litigated this case for more than five years before reaching the proposed collective action Settlement currently before the Court. During the litigation, the Court became very familiar with the claims, defenses, competing facts, and legal theories presented by the parties, as well as the work of counsel in presenting them. Among other things, the Court considered and decided three complex Motions to Compel Arbitration (involving supplemental briefing and a hearing), a Motion for Conditional Certification, a Motion for Summary Judgment, several Motions to Compel Discovery, and a Motion for Relief concerning the filing fees that would be assessed in arbitration. These motions presented complex and difficult issues. They also evidenced that the parties conducted

extensive discovery, depositions, and investigation to support and vet their positions during the case.

2.   With this history, the Court has now considered Plaintiffs' Motion for Final Approval of Collective Action Settlement, which weighs the strength of the case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining collective action status throughout the trial; the amount offered in settlement; and the extent of discovery completed, among other factors. The Court concludes based on these factors, as well as the terms of the Settlement itself and the history of the lengthy arms-length negotiations that resulted in an agreement of these terms, that the Settlement is "fair, adequate, and reasonable." *Staton*, 327 F.3d at 959.

3.   The Court finds that due and proper notice of the Settlement was provided to all members of the collective, including notice of the right to object to the proposed Settlement, the right to object to class counsel's Motion for Attorneys' Fees and Costs, the right to appear in person or by counsel at the final approval hearing and be heard, and the right to opt-out of the Settlement. The Court finds that the notice provided was the best means of providing notice to the members of the collective under the circumstances. The Court further finds that it was due and sufficient notice of the Settlement and the final approval hearing to all persons affected by and/or entitled to participate in the Settlement or the final approval hearing, in full compliance with the requirements of due process.

4.   The Court further finds that the Settlement is fair and reasonable, given the substantial benefits to the settlement class provided by the non-reversionary, $6,565,516 payment, and the risks associated with continued litigation.

5.   The Court finds that no class member has objected to the Settlement or the Motion for Attorneys' Fees and Costs.

6.   The Court finds that no class member has requested to opt-out of the Settlement.

14-cv-2869-WQH-AGS

7.   The Court finds that the award of $2,188,505.53 in attorneys' fees and $684,387.95 in costs is fair, reasonable, and appropriate, and approves the service awards of $5,000 to Plaintiff Eve Stallworth and $20,000 to the estate of Plaintiff Richard Hose).

8.   The Court approves payment to the settlement administrator, Heffler Claims Group LLC, of $220,000 based on the declaration of Mark Rapazzini verifying the administrator's reasonable costs in fulfilling the settlement administration in this case.

9.   The Court finds that the terms of the Settlement are fair, reasonable, and adequate; the Court hereby approves them on a final basis. Specifically, the Court approves in full the Settlement attached as Exhibit 1 to the Declaration of Joshua Konecky in Support of the Motion for Preliminary Approval (ECF No. 290-3). The parties shall comply with and implement the Settlement according to its terms.

10. Pursuant to the parties' stipulation, the 108 Opt-in Plaintiffs who have submitted late claims as of June 19, 2020, as well as any additional Opt-in Plaintiffs who submit late claim forms prior to two weeks before the date of the first distribution, shall be included as Hose Participating Plaintiffs to receive their proportionate share of the Hose Individual Settlement Payments from the first distribution, provided that they meet the definitional criteria of "Hose Plaintiffs" set forth in the Settlement.

11. The Court will separately enter a judgment and dismissal of this action, consistent with the terms of this Order.

 Dated:  July 2, 2020

*William Q. Hayes*

Hon. William Q. Hayes
United States District Court

14-cv-2869-WQH-AGS